1  BILL LOCKYER
   Attorney General of the State of California
2  THOMAS GREENE
   Chief Assistant Attorney General
3  KATHLEEN E. FOOTE
   Senior Assistant Attorney General
4  State Bar No. 65819
   EMILIO E. VARANINI
5  Deputy Attorney General
   State Bar No. 163952
6     455 Golden Gate Ave., Ste. 11000
      San Francisco, CA 94102
7     Telephone: (415) 703-5908
      Fax: (415) 703-5480
8     Email: emilio.varanini@doj.ca.gov
   Attorneys for Plaintiffs
9

10            IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF CALIFORNIA
11

12
   THE STATE OF CALIFORNIA et al.,          Case No.:  C 06-4333 PJH
13
                                            **PLAINTIFFS' OPPOSITION TO**
                              Plaintiffs,    **MOTION TO DISMISS FOR**
14                                          **FAILURE TO STATE A CLAIM**

15            v.                            ORAL ARGUMENT REQUESTED

   INFINEON TECHNOLOGIES AG et al.,
16                                          Hearing Date: February 7, 2007
                              Defendants.   Time: 9:00 a.m.
17                                          Courtroom: 3, 17th Floor
                                            Judge:  Hon. Phyllis J. Hamilton
18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**INTRODUCTION**.................................................................................................... 1

**ARGUMENT** ........................................................................................................... 1

    I.   *ILLINOIS BRICK* **DOES NOT BAR STATE INDIRECT PURCHASER CLAIMS** ........................................................................................... 1

    II.  **NEW HAMPSHIRE'S, OKLAHOMA'S AND SOUTH CAROLINA'S CLAIMS ARE TIMELY AND ANY MOTIONS BASED ON TIMELINESS ARE INAPPROPRIATE** ............................................. 18

    III. **THE STATE ATTORNEYS GENERAL HAVE PARENS PATRIAE AUTHORITY TO PROTECT THEIR STATES' CONSUMERS**................... 20

    IV. **THE MISSISSIPPI, TENNESE, WISCONSIN, MARYLAND AND ILLINOIS STATUTES APPLY TO ACTIVITIES IN INTERSTATE, AS WELL AS INTRASTATE, COMMERCE** ........................................... 33

    VI. **STATE ATTORNEYS GENERAL MAY BRING CLAIMS UNDER THE CALIFORNIA CARTWRIGHT ACT.** ................................................. 40

        A.  **California's Cartwright Act Allows State Attorneys General to File *Parens* Actions on Behalf of Out-of-State Citizens**....................... 41

        B.  **Out-of-State Government Entities Are "Persons" Entitled to Assert Claims Under the Cartwright Act** ................................................ 42

        C.  **The state Attorneys General have the power to file their Cartwright Act claims** ........................................................................................ 45

**CONCLUSION** ...................................................................................................... 55

1

## TABLE OF AUTHORITIES

2

### <u>Cases</u>

3

*AKA v. Jefferson Hosp. Ass'n*, 42 S.W.3d 508 (Ark. 2001). ......................................................... 5

4

*Archer v. F. Hoffman-La Roche, Ltd*, Civ. A. No. 99-C-327 (Cir. Ct. Kanawha Cty. 2002) ....... 17

5

*Bean v. Office of Child Support Enforcement*, 9 S.W.3d 520 (Ark. 2000) .................................... 4

6

*Beckley v. Cook*, 455 S.E.2d 817 (W. Va. 1995) ......................................................................... 17

7

*Blewett v. Abbot Laboratories*, 938 P.2d 842 (Wash. Ct. App. 1997) ......................................... 16

8

*Board of Commissioners v. Department of Natural Resources,* 496 So.2d 281 (La. 1986), ........ 23

9

*Bonniwell v. Flanders*, 62 N.W.2d 25 (N.D. 1954) ..................................................................... 48

10

*Bruno v. Superior Court*, 127 Cal. App. 3d 120 (Cal. Ct. App. 1981) ........................................ 41

11

*California v. ARC America Corp.,* 490 U.S. 93 (1989) .......................................................... 1, 21

12

*California v. Frito-Lay, Inc.*, 74 F.2d 774 (9th Cir. 1973) .......................................................... 27

13

*Campbell v. McGruder*, 580 F.2d 521 (D.C. Cir. 1976) ............................................................. 40

14

*Chattanooga Foundry & Pipe Works v. Atlanta*, 203 U.S. 390  (1906) ................................. 43, 50

15

*Cheshire v. Coca-Cola Bottling Affiliated, Inc.,* 758 F. Supp. 1098 (D.S.C. 1990) .................... 32

16

*City of Los Angeles v. City of San Fernando*, 14 Cal. 3d 199 (1975), *disapproved of on
    another point in City of Barstow v. Mojave Water Agency*, 23 Cal. 4th 1224, 1248
    (2000) ....................................................................................................................................... 43

17
18

*Comm'r of Internal Revenue v. Estate of Bosch*, 387 U.S. 456 (1967) ....................................... 37

19

*Commonwealth ex rel. Brashear v. ABAC Pest Control, Inc.,* 621 S.W.2d 705 (Ky. App.
    1981 ......................................................................................................................................... 47

20
21

*Commonwealth ex rel. Stephens v. N. Am. Van Lines, Inc.*, 600 S.W.2d 459 (Ky. App.
    1979) ........................................................................................................................................ 47

22
23

*Commonwealth v. Meadow Gold Dairies, Inc.*, 1993-2 Trade Cas. (CCH) ¶70  (W.D. Va.
    Aug. 19, 1993) ......................................................................................................................... 54

24

*Condon v. Hodges*, 349 S.C. 232, 562 S.E.2d 623,627 (2002) ............................................ 31, 32

25

*County of McLean v. Humphreys*, 104 Ill. 378 (1882) ............................................................... 22

26

*Craftsman Builder's Supply, Inc. v. Butler Mfg. Co.*, 974 P.2d 1194 (Utah 1999) ..................... 53

27

*Davidson v. Microsoft Corp.*, 792 A.2d 336 (Md. Ct. Spec. App. 2002) .............................. 11, 12

28

*Dep't of Mental Health v. Coty*, 38 Ill. 2d 602, 232 N.E.2d 686  (1967) ..................................... 22

*Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036 (1999) ............................. 42

*Dunbar v. Carlson*, 341 S.C. 261, 533 S.E.2d 913 (S.C. Ct. App. 2000).................................... 20

*E. & J. Gallo Winery v. EnCana Energy Servs.*, 2004 U.S. Dist. LEXIS 29384 (E.D. Cal. 2004) ............................................................................................................................................... 14

*Ex parte Corliss*, 16 N.D. 470, 114 N.W. 962 (1907) ............................................................... 30

*Exxon Corp. v. Governor of Maryland*, 437 U.S. 117 (1978) .................................................... 21

*Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266 (5th Cir. 1976), *cert. denied*, 429 U.S. 829 (1976).................................................................................................................................... 54

*Free v. Abbott Laboratories, Inc.*, 176 F.3d 298 (5th Cir. 1999) ............................................... 10

*Freeman Ind., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512 (Tenn. 2005) .......................... 34, 35

*FTC v. Gem Merch.*, 87 F.3d 466 (11th Cir. 1996) .................................................................... 39

*FTC v. Motion Picture Adv. Serv. Co*, 344 U.S. 392 (1953) ...................................................... 10

*FTC v. MTK Mktg., Inc.,* 149 F.3d 1036 (9th Cir. 1998)......................................................... 42, 43

*FTC v. Mylan Laboratories, Inc.*, 62 F. Supp. 2d 25 (D.D.C. 1999)........................ 14, 16, 18, 33

*FTC v. Mylan Laboratories, Inc.*, 99 F. Supp. 2d 1 (D.D.C. 1999)........................................ passim

*Gandy v. Reserve Life Ins. Co.*, 279 So.2d 648, 649 (Miss.1973) ............................................. 24

*Georgia v. Evans*, 316 U.S. 159 (1942).................................................................................. 43, 50

*Glanton v. AdvancePCS, Inc.*, 465 F.3d 1123 (9th Cir. 2006).................................................... 20

*Grassmeyer v. Beeson*, 18 Tex. 753, 1857 WL 5028 (1875)....................................................... 40

*Gray v. Marshall County Board of Education*, 367 S.E.2d 751 (W. Va. 1988) .......................... 17

*Grillo v. Speedrite Prods., Inc.*, 340 S.C. 498, 532 S.E.2d 1 (S.C. Ct. App. 2000) ................... 20

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425 (3d Cir. 1993)......... 14

*Hoyt v. Bd. of Civil Service Comm'n,* 21 Cal. 3d 399 (1942)..................................................... 43

*Illinois Brick v. Illinois*, 431 U.S. 720 (1977)....................................................................... passim

*Illinois v. Bristol-Myers Co.*, 470 F.2d 1276 (D.C. Cir. 1972) ............................................. 22, 46

*In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508 (D. Mich. 2003) ......................... passim

*In re Compact Disc Minimum Advertised Price Antitrust Litigation*, No. MDL 1361, 2003 WL 21685581 (D. Me. July 18, 2003) ................................................................. 24

*In re Insurance Antitrust Litigation*, 938 F.2d 919 (9th Cir. 1991) .............................. 21

*In re Lorazepam & Clorazepate Antitrust Litigation*, 205 F.R.D. 369 (D.D.C. 2002) ......... passim

*In re Microsoft Corp. Antitrust Litig.*, MDL No. 1332, 2003 WL 22070561, 2003-2 Trade Cases P 74,138 (D.Md. Aug.22, 2003) ................................................................. 34

*In Re New Motor Vehicle Canadian Export Antitrust Litigation*, 350 F. Supp. 2d 160 (D. Maine 2005) ................................................................................................... passim

*In re Relafen Antitrust Litigation*, 225 F.R.D. 14 (D. Mass. 2004) .............................. 4, 5, 12, 29

*In re Seman*, 3 N. Mar. I. 57, 1992 WL 135878 (N. Mar. I.1992) ................................. 48

*In re Terazosin Hydrochloride Antitrust Litigation*, 160 F. Supp. 2d 1365 (S.D. Fla. 2001) ...... 16

*In re Volpert*, 175 B.R. 247 (Bankr. N.D. Ill. 1994) .................................................. 22

*J.P. Morgan v. Superior Court*, 113 Cal. App. 4th 195 (Cal. Ct. App. 2003) .................. 42

*Jeffs v. Stubbs*, 970 P.2d 1234 (Utah 1998), *cert. denied*, 526 U.S. 1130 (1999) ............ 53

*Jim Hood, Attorney General v. Microsoft Corp.*, CA No. 3:04-cv-800WS (S.D. Miss. 2004) ................................................................................................................ 24

*Jim Hood, Attorney General vs. Microsoft Corp.*, CA No. 3:04-cv-800WS (S.D.Miss.2004) .......................................................................................... 24, 25

*Johnson v. Microsoft Corp.*, 834 N.E.2d 791 (Ohio 2005) ......................................... 13, 14

*Kelleher v. Marvin Lumber and Cedar Co.*, 152 N.H. 813 (2005) ................................ 19

*Lokey v. Griffin*, 45 Tenn. App. 236, 322 S.W.2d 239 (Tenn. Ct. App. 1958) ................ 33

*Louisiana, ex rel. Ieyoub v. Borden, Inc.*, No. 94-3640, 1995 WL 59548 (E.D. La. Feb. 10, 1995) ............................................................................................................ 24

*LP&L v. United Gas Pipeline Co.*, 493 So. 2d 1149 (La. 1986) .................................. 9

*Mack v. Bristol-Myers Squibb Co.*, 673 So. 2d 100 (Fla. Dist. Ct. App. 1996) ............... 6

*Maricopa County Cause No. MH 90-00566*, 840 P.2d 1042 (Ariz. Ct. App. 1992) ........... 21

*Maryland v. Philip Morris Inc.*, 934 F. Supp. 173 (D. Md. 1996) ................................ 38

*Maryland v. Philip Morris, Inc.*, 1997 WL 540913 (Md. Cir. Ct. May 21, 1997) .............. 38

*Matanuska Maid, Inc. v. State*, 620 P.2d 182, 185 (Alaska 1980) ................................ 3

*McIntire v. Borofsky*, 95 N.H. 174  (1948) ................................................................. 28

*Meyers v. Bayer AG*, 718 N.W.2d 251, *petition for review granted* (July 25, 2006) (No. 2003AP2840) ........................................................................................................ 36

*Moore ex rel. Mississippi v. Abbott Labs.*, 900 F. Supp. 26, 31 (S.D. Miss. 1995)............... 25, 34

*Mountain Home Sch. Dist. v. T.M.J. Builders*, 858 S.W.2d 74 (Ark. 1993) ................................. 4

*Mr. Frank, Inc. v. Waste Mgmt., Inc.*, 591 F. Supp. 859 (N.D. Ill. 1984) .................................. 39

*Myers v. Richland County*, 429 F.3d 740 (8th Cir. 2005)................................................... 20

*New Mexico v. Scott & Fetzer Co.*, No. 81-054-JB, 1981 WL 2167, 1981-2 Trade Cases P 64, 439 (D.N.M. 1981) .................................................................................... 29

*New York v. Feldman*, 210 F. Supp. 2d 294 (S.D.N.Y. 2002)................................................ 11, 38

*NW. Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214 (Cal. Ct. App. 1999) ................... 42

*Oklahoma City Mun. Improvement Auth. v. HTTB, Inc.*, 769 P.2d 131 (Okla. 1988)................. 18

*Olstad v. Microsoft Corp.*, 700 N.W.2d 139 (Wis. 2005)................................................... 36, 37

*Pacific Gas & Electric Co. v. County of Stanislaus*, 16 Cal. 4th 1143 (1997) ................ 41, 44, 50

*People ex rel. Barrett v. Finnegan*, 378 Ill. 387, 38 N.E.2d 715 (1941) ..................................... 22

*People ex rel. Devine v. Time Consumer Mktg., Inc.*, 336 Ill. App. 3d 74, 782 N.E.2d 761 (Ill. App. Ct. 2002)........................................................................................ 23

*People v. Centr-O-Mart*, 34 Cal. 2d 702 (1950)................................................................ 43, 45

*Pfizer, Inc. v. Government of India*, 434 U.S. 308 (1978) ................................................... 43

*Porter v. Warner Holding Co.*, 328 U.S. 395 (1946)............................................................. 3, 39

*Prestwick Golf Club, Inc. v. Prestwick Ltd. P'ship*, 331, S.C. 385, 503 S.E.2d 184 (S.C. Ct. App. 1999) ........................................................................................... 19

*Puerto Rico v. Shell Co.*, 302 U.S. 253 (1937) ................................................................. 21

*Respass v. Commonwealth*, 131 Ky. 807, 115 S.W. 1131 (1909) ............................................. 47

*Richardson v. Blackburn*, 187 A.2d 823 (Del. Ch. 1963)................................................... 46

*Seth v. State*, 592 A.2d 436 (Del. 1991)........................................................................ 45, 46

*Standard Oil Co. v. State ex. rel. Attorney General*, 65 So. 468 (Miss. 1914).......................... 34

*State ex rel. Allain v. Miss. Pub. Serv. Comm'n*, 418 So.2d 779 (Miss.1982) ........................... 24

*State ex rel. Burgum v. Hooker*, 87 N.W.2d 337 (N.D. 1957) ................................................ 29, 30

*State ex rel. Harris v. PriceWaterhouseCoopers, LLP*, 39 Cal. 4th 1220 (2006) ........................ 45

*State ex rel. Inman v. Brock*, 622 S.W.2d 36 (Tenn. 1981) ...................................................... 32

*State ex rel. McGraw v. Abbott Labs.*, Civ. A. No. 01-C-180 (Cir. Ct. Wyoming Cty. 2005) .................................................................................................................................. 17

*State ex rel. McGraw v. GlaxoSmithKline*, Civ. A. No. 04-C-245-M (Cir. Ct. Marshall Cty. 2004) ............................................................................................................................. 17

*State ex rel. McGraw v. Kimberly-Clark*, Civ. A. No.: 99-C-2349 (Cir. Ct. Kanawha Cty. 2000) ..................................................................................................................................... 17

*State ex rel. McGraw v. VISA U.S.A., Inc. et al.*, Civ.A. No. 03-C-551 (Cir. Ct. Ohio Cty., 2005) ..................................................................................................................................... 17

*State ex rel. Moose v. Kansas City & Memphis Ry. & Bridge Co.*, 174 S.W. 248 (Ark. 1914) ....................................................................................................................................... 5

*State ex rel. Porterie v. Smith,* 182 La. 662, 162 So. 413 (1935) ................................................ 48

*State ex rel. Shriver v. Leech*, 612 S.W.2d 454 (Tenn. 1981) ...................................................... 32

*State of Washington v. American Tobacco Co.*, No. 96-2-15056-8, 1996 WL 931316 (Wash. Sup. Ct. Nov. 19, 1996) ......................................................................................... 15, 16

*State v. City of Dover*, 153 N.H. 181 (2006) ....................................................................... 27, 28

*State v. City of Oak Creek,* 605 N.W.2d 526 (Wis. 2000) ............................................................ 33

*State v. First Nat'l Bank of Anchorage,* 660 P.2d 406 (Alaska 1982) ........................................... 2

*State v. Haggerty*, 580 N.W.2d 139 (N.D. 1998) .......................................................................... 30

*State v. Heath*, 806 S.W.2d 535 (Tenn. Ct. App. 1990) ............................................................... 32

*State v. Jiminez*, 588 P.2d 707 (Utah 1978) .................................................................................. 52

*State v. Jonathan Logan, Inc.*, 482 A.2d 1 (Md. 1984) .................................................................. 11

*State v. Levi Strauss*, 41 Cal. 3d 460 (1986) ................................................................................ 41

*State v. R&A Inv. Co., Inc.*, 985 S.W.2d 299 (Ark. 1999) ............................................................. 6

*State v. Texaco*, 46 Cal. 3d 1147, 1164 (1988) ............................................................................ 43

*Syverson v. Int'l Bus. Machines Corp.*, 461 F.3d 1147 (9th Cir. 2006) ........................................ 20

*Szukalski v. Crompton Corp.*, 2006 WI App 195, No. 2003AP3132, 2006 WL 2729665 (Wis. Ct. App. Sept. 26, 2006) .................................................................................... 36, 37

*U.S. v. Exxon Corp.*, 561 F. Supp. 816 (D.D.C. 1983) ................................................ 40

*U.S. v. State of Texas*, 680 F.2d 356 (5th Cir. 1982) ................................................ 51

*United States ex rel Richards v. De Leon Guerrero*, No. 92-00001, 1992 WL 212237
   (D.N.M.I July 29, 1992) ( ................................................................................... 48

*W. Va. Health Care Cost Review Authority v. Boone Memorial Hosp.*, 472 S.E.2d 411 (W.
   Va. 1996) ............................................................................................................... 17

*Wells v. One2One Learning Found.*, 39 Cal. 4th 1164  (2006) .............................. 43

*Wershba v. Apple Computers, Inc.*, 91 Cal. App. 4th 224  (Cal. Ct. App. 2001) ......... 42

*Wood v. Ark. Dept. of Human Servs.*, 894 S.W.2d 573 (Ark. 1995) ............................ 4

## Statutes

142 C.S.R. § 9-2.1 ...................................................................................................... 17

15 Ill. Comp. Stat. § 205/4 (2006) ........................................................................... 22

15 U.S.C. § 1, *et seq.* ........................................................................................... 20, 43

15 U.S.C. § 12 ............................................................................................................ 43

4 N. Mar. I. Code § 5101 *et seq.* ............................................................................... 49

4 N. Mar. I. Code. § 5201 *et seq.* ............................................................................. 49

5 Ill. Comp. Stat. § 70/1.05 (2006) ........................................................................... 22

7 N. Mar. I. Code § 3401 ............................................................................................ 49

71 Pa. Stat. § 732-204 (c) .......................................................................................... 50

740 Ill. Comp. Stat. § 10/7(2) (2006) ....................................................................... 23

740 Ill. Comp. Stat. § 10/7.9 (2006) ......................................................................... 38

Alaska Stat. § 45.50.471 *et. seq.* ............................................................................ 2, 3

Alaska Stat. § 45.50.501(a) ......................................................................................... 2

Alaska Stat. § 45.50.501(b) ......................................................................................... 2

Alaska Stat. § 45.50.562-596 ....................................................................................... 2

Alaska Stat. § 45.50.580(b) .......................................................................................... 2

1

Ark. Code Ann. § 4-75-309 ........................................................................ 5

2

Ark. Code Ann. § 4-75-315 ..................................................................... 4, 5

3

Ark. Code Ann. § 4-75-315 *et seq.* ........................................................... 3

4

Ark. Code Ann. § 4-75-320(c) ................................................................... 3

5

Ark. Code Ann. §§ 4-88-101, *et seq.,* ...................................................... 5

6

Cal. Bus. & Prof. Code § 16702 ........................................................ 43, 50

7

Cal. Bus. & Prof. Code § 16720 ...................................................... passim

8

Cal. Bus. & Prof. Code § 16750(a) ........................................................ 50

9

Cal. Bus. & Prof. Code § 16750(e) ........................................................ 44

10

Cal. Bus. & Prof. Code § 16760 ............................................................ 41

11

Cal. Bus. & Prof. Code § 17511.12(c)(2) ............................................... 42

12

Del. Code Ann. tit. 29, § 2504(1) .......................................................... 45

13

Del. Code Ann. tit. 29, § 2504(3) .......................................................... 45

14

Fla. Stat. § 542.15 *et seq.* ...................................................................... 6

15

Haw. Rev Stat. § 480-14(b) .................................................................... 46

16

Haw. Rev Stat § 480-14 .......................................................................... 8

17

Haw. Rev. Stat. § 480-14(a) ............................................................... 8, 46

18

Ky. Rev. Stat. § 15.020 ........................................................................... 47

19

La. Civ. Code Ann. Art. 13 ...................................................................... 9

20

La. Rev. Stat. Ann. § 51:122 *et seq.* ..................................................... 10

21

La. Rev. Stat. Ann. § 51:132 .................................................................. 10

22

La. Rev. Stat. Ann. § 51:133 .................................................................. 10

23

La. Rev. Stat. Ann. § 51:1401 *et seq* .................................................... 10

24

La. Rev. Stat. Ann. § 51:1402(9) ............................................................. 9

25

Md. Code Ann. Com. Law § 11-202(a)(3) ............................................. 38

26

Md. Code Ann. Com. Law § 11-202(b) .................................................. 38

27

Md. Code Ann. Com. Law § 11-209(a)(4) ............................................. 12

28

Md. Code Ann. Com. Law § 11-201(f) ..................................................... 11

Md. Code Ann. Health-Gen. § 21-101(f) .................................................. 12

Md. Code Ann. Health-Gen. § 21-1114 .................................................... 12

Md. Code. Ann. Com. Law § 11-201 *et seq.* ............................. 10, 11, 12, 38

Md. Code. Ann. Com. Law § 11-209(a) ..................................................... 11

Md. Code. Ann. Com. Law § 11-209(a)(3) ................................................. 11

Md. Code. Ann. Com. Law § 11-209(b) ..................................................... 11

Md. Code. Ann. Com. Law § 11-209(b)(5) .................................................. 12

Miss. Code Ann. § 75-21-37 ................................................................... 26

Miss. Code Ann. § 75-24-3(a) ................................................................ 27

Miss. Code. Ann. § 75-21-29 ................................................................. 26

Miss. Code. Ann. § 75-21-7 ................................................................... 25

Miss. Code. Ann. § 75-21-9 ................................................................... 26

Miss. Code. Ann. § 75-24-9 ................................................................... 26

N.M. Stat § 8-5-2 (1978) ...................................................................... 28

Ohio Rev. Code § 109.81 ................................................................... 13, 49

Ohio Rev. Code § 1331.01, *et seq.* ..................................................... 13, 14

Okla. Stat. tit. § 74, 18b ...................................................................... 50

Okla. Stat. tit. § 79, 205(A)(1) ............................................................. 50

Okla. Stat. tit., § 15, 751 *et seq* .......................................................... 13

S.C. Code Ann. § 39-3-190 .................................................................... 32

S.C. Code Ann. § 39-5-10(a) ................................................................. 31

S.C. Code Ann. § 39-5-10, *et seq.* ................................................. 19, 31, 32

S.C. Code Ann. § 39-5-150 .................................................................... 19

S.C. Code Ann. § 39-5-50 ...................................................................... 31

Tenn. Code Ann. § 47-25-101 ................................................................. 35

Tenn. Code Ann. § 47-25-101 *et seq.* ..................................... 32, 33, 34, 35

Tenn. Code Ann. § 8-6-109 ................................................................. 32

Tex. Bus. & Com. § 15.21(b) ......................................................... 39, 40

Tex. Bus. & Com. Code § 15.21(b ....................................................... 39

Tex. Gov't Code § 402.021 ................................................................. 51

Tex. Rev. Civ. Stat. Art. 581-32(c) (2006) ......................................... 40

Utah Code Ann. § 76-10-916(3) .......................................................... 52

Utah Code Ann. § 76-10-916(3), ......................................................... 53

Utah Code Ann. §§ 76-10-911 *et seq.* ............................................... 51

Va. Code § 2.2-507 ............................................................................ 53

Va. Code Ann. § 2.2-507 .................................................................... 55

Va. Code Ann. § 59.1-9.1 *et seq.* (1974) ........................................... 14

W. Va. Code § 46A-6-101(1) .............................................................. 18

W. Va. Code § 46A-6-104 ................................................................... 18

W. Va. Code § 47-18-16 ..................................................................... 17

W. Va. Code § 47-18-9 ....................................................................... 17

Wash. Rev. Code § 19.86.080 ............................................................. 16

Wash. Rev. Code § 19.86.090 ........................................................ 14, 15

Wash. Rev. Code § 19.86.920 ............................................................. 15

Wis. Stat. § 133.01 ............................................................................. 36

Wis. Stat. § 133.16 ............................................................................. 33

Wis. Stat. § 133.17 ............................................................................. 33

## Constitutional Provisions

Ky. Const. § 91 .................................................................................. 47

La. Const. Art. II, § 2 ......................................................................... 23

La. Const. Art. IV, § 8 ................................................................... 23, 48

N. Mar. I. Const. Art. III, § 11 ........................................................... 49

N.D.Cent.Code § 54-12-02 ................................................................. 48

N.H. Const. Pt. 2, Art. 83 ............................................................................................. 28

Tenn. Const. Art. VI, § 5 ............................................................................................. 32

Tex. Const. Art. IV, § 22 ............................................................................................. 51

Utah Const. Art. I, § 11 ............................................................................................... 53

## **Other Authorities**

1961 Cal. Stats. c. 1023, West's Annotated Cal. Codes, Bus. & Prof. Code 16750, Historical and Statutory Notes ............................................................................... 44

21 Cong. Rec. 2457 (1890) .......................................................................................... 20

Ark. Sup. Ct. Rule 6-8 .................................................................................................. 5

*Exploring the Antitrust Operating System: State Enforcement of Federal Antitrust Law in the Remedies Phase of the Microsoft Case*, 11 Geo. Mason L. Rev. 37, 45-46 (2002) .......... 21

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 19

Hawaii House Bill No. 2668-80 ................................................................................... 7

Hawaii Sen. Standing Committee Report No. 971-80, 1980 Senate Journal, at 1494 (Haw. 1980) ......................................................................................................................... 7

II A.E. Dick Howard, Commentaries on the Constitution of Virginia 665-66 .............. 55

Kentucky Rule of Civil Procedure 76.28(4)(C) ........................................................... 9

Kevin J. O'Connor, *Is the Illinois Brick Wall Crumbling?*, 15 Antitrust 34 (2001) .......... 29

La. Senate Concurrent Resolution No. 39 ..................................................................... 9

W. Reynolds & J. Wright, "A Practitioner's Guide to the Maryland Antitrust Act," 36 Md. L. Rev. 323 (1976) ...................................................................................................... 38

1

## INTRODUCTION

Defendants' Motions to Dismiss for Failure to State a Claim (hereafter "Motions") are directed at certain claims of 27 States.   Defendants' motions generally are misplaced, conclusory, and fail to provide the court with each individual State's full legal authority.   It must be emphasized that except for limited common issues under California's antitrust statutes, Cal. Bus. & Prof. Code § 16720 (hereafter "Cartwright Act"), each State claim affected by these motions must be individually determined based upon the law of the respective state.

## ARGUMENT

## I.   *ILLINOIS BRICK* DOES NOT BAR STATE INDIRECT PURCHASER CLAIMS

Citing to *Illinois Brick v. Illinois*, 431 U.S. 720 (1977) ("*Illinois Brick*"), Defendants assert that the following Plaintiff states cannot make claims on behalf of indirect purchasers absent express statutory authority.  Defendants are wrong.  *Illinois Brick* is not an absolute bar to indirect purchaser claims.  In *California v. ARC America Corp.,* 490 U.S. 93 (1989) (hereinafter "*Arc America Corp.*"), the Supreme Court held that the federal rule barring antitrust recovery by indirect purchasers applies only to federal antitrust law.   It does not preempt state antitrust laws that allow recovery by indirect purchasers.  *Id. at* 101-03.

**Alaska:**  Alaska passed a specific statute allowing the Attorney General to bring claims on behalf of indirect purchasers in 2003.   Nonetheless, prior to the passage of this statute Alaska's antitrust and consumer protection laws were construed to allow recovery on behalf of indirect purchasers by the attorney general.

For Alaska, this question was answered in *FTC v. Mylan Laboratories, Inc.*, 99 F. Supp. 2d 1 (D.D.C. 1999) (hereinafter "*Mylan II*").   The court held that Alaska law conferred indirect purchaser authority for restitution claims brought by the attorney general.  In that case, the FTC and thirty-two states, including Alaska, claimed that defendants conspired to monopolize the market for two generic anti-anxiety prescription drugs.   The states brought

parens patriae (hereafter "*parens*") actions for treble damages and other equitable relief under federal law, including claims under state antitrust and consumer protection laws. On reconsideration, the court allowed indirect purchaser claims by several states without statutory repealers. For Alaska, the court reasoned:

> The Alaska [Unfair Trade Practices and Consumer Protection] Act empowers the Alaska Attorney General to bring unfair competition and consumer protection actions under § 45.50.471. That statute states that "[w]hen the attorney general has reason to believe that a person has used 'an act or practice declared unlawful in AS 45.50.471 the attorney general may bring an action in the name of the state against the person to restrain the act or practice.'" Alaska Stat. § 45.50.501(a). Alaska law further provides that "[i]n interpreting AS 45.50.471 due consideration and great weight should be given the interpretations of 15 U.S.C. § 45(a)(1) (§ 5(a)(1) of the Federal Trade Commission Act)." *Id.* § 45.50.545. Given this authority, the Court finds that Alaska is entitled to the full panoply of remedies that would be available to the FTC under the FTC Act. The Court will therefore reinstate Alaska's claim for restitution on behalf of indirect purchasers.

*Mylan II*, 99 F. Supp. 2d at 5. Thus, the only court to directly address claims under Alaska law for indirect purchasers found sufficient support in Alaska's Unfair Trade Practices and Consumer Protection Act ("UTPCPA"), Alaska Stat. 45.50.471 *et. seq.*, to support such claims, despite the fact Alaska had no *Illinois Brick* repealer at the time.

The Alaska Attorney General is empowered to bring *parens* actions under Alaska Stat. § 45.50.501(a). That statute provides "[w]hen the Attorney General has reason to believe that a person has used "an act or practice declared unlawful in AS 45.50.471 the Attorney General may bring an action in the name of the state against the person to restrain the act or practice." There is no language in this statute that limits the Attorney General's authority to only direct purchasers. In addition, the Alaska Supreme Court recognizes the state may bring suit even in the absence of express statutory authority. *State v. First Nat'l Bank of Anchorage,* 660 P.2d 406, 421 (Alaska 1982). Alaska's consumer protection and antitrust statutes (AS 45.50.580(b)) and AS 45.50.501(b)) provide that "[t]he court may make additional orders or judgments as may be necessary to restore to a person in interest any money or property . . . that may have been acquired by an act prohibited by [AS 45.50.562 through 45.50.596 and AS 45.50.471]."

1   These statutes places no restrictions on the type of recovery a court can award to remedy the

2   effects of the wrongful conduct, nor do they restrict claims only to direct purchasers.[1]

3        The Alaska Supreme Court has specifically held that antitrust violations under the

4   Alaska Restraint of Trade Act would also constitute violations of Alaska's UTPCPA since the

5   latter is much broader.  *Matanuska Maid, Inc. v. State*, 620 P.2d 182, 185 (Alaska 1980).

6   Thus, in Alaska, the defendant's claim that "Alaska cannot pursue indirect purchaser claims

7   under the guise of Alaska's Unfair Trade Practices and Consumer Protection Act"

8   (Defendants' Motion at 5) is simply wrong.  *Matanuska Maid* clearly provides that Alaska can.

9        **Arkansas:**   Contrary to Defendants' claims, the Arkansas indirect purchaser statute is

10  retroactive.   In 2003, the Arkansas Legislature passed Ark. Code Ann. § 4-75-315 *et seq.*,

11  which states that the Attorney General is authorized to recover actual damages or restitution on

12  behalf of indirect purchasers for violations of state and federal antitrust laws. By its express

13  language, this statute applies to all conduct from the date of enactment forward and to all

14  conduct that preceded its enactment so long as the Attorney General did not have "actual

15  knowledge" of the conduct at the time the statute was enacted.  Ark. Code Ann. § 4-75-320(c)

16  spells out the retroactive application of the statute: "This section is not intended to allow for

17  the commencement of any action by the Attorney General under the provisions of this

18  subchapter for events occurring prior to the enactment of this section, of which the Attorney

19  General had **actual knowledge**."  Ark. Code Ann. § 4-75-320(c) (emphasis added).

20       The application of that statutory language to the present case is plain.  The Arkansas

21  Attorney General did not have actual knowledge of the DRAM price fixing conspiracy at the

22  time the statute was enacted; no contention that the Attorney General had actual knowledge has

23  been made.  When statutes, such as Ark. Code Ann. § 4-75-320, are clear, they should be given

24

25  ---
    [1] The state of Alaska may also seek restitution based on common law authority.  *Porter v.
26  Warner Holding Co.,* 328 U.S. 395 (1946) (a trial court has inherent power to order restitution
    in actions brought by the State); *First Nat'l Bank of Anchorage*, 660 P.2d at 416.

their plain meaning.  "The first rule in considering the meaning of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language."  *Mountain Home Sch. Dist. v. T.M.J. Builders*, 858 S.W.2d 74, 76 (Ark. 1993).  Because the Attorney General did not have actual knowledge of the conduct at issue, the Attorney General is empowered to bring suit under this statute and to seek relief for Arkansas citizens and government entities who were purchasers of the Defendants' products.

The Defendants cite to a decision from a District Court in Massachusetts for the proposition that Ark. Code Ann. § 4-75-315 should only be given prospective application.  *In re Relafen Antitrust Litigation*, 225 F.R.D. 14, 26-27 (D. Mass. 2004) (hereinafter "*Relafen*").  The *Relafen* decision was incorrect and it would pile error upon error for this Court to rely upon.

The *Relafen* court's ruling contained at least two significant errors.  First, the court disregarded the plain wording of the statute, which expressed the Arkansas Legislature's intent for the statute to be applied retroactively.  "Retroactivity is a matter of legislative intent."  *Bean v. Office of Child Support Enforcement*, 9 S.W.3d 520, 526 (Ark. 2000).  The presumption of prospective application does not apply where the legislature has, in fact, indicated "clearly and unequivocally" that the statute should apply retroactively.  *Wood v. Ark. Dept. of Human Servs.*, 894 S.W.2d 573, 575 (Ark. 1995).  Despite the clear language of the Arkansas statute, the *Relafen* court did not conduct a meaningful analysis of the matter and thus overlooked the actual statement of the legislature's intent.

Second, the *Relafen* court also disregarded the remedial nature of Ark. Code Ann. § 4-75-315, presuming that only prospective application was proper despite the holdings of Arkansas' courts that remedial legislation does not carry the normal presumption of prospective application. Remedial statutes "should receive a more liberal construction, and should be given a retrospective effect whenever such seems to have been the intention of the Legislature."  *State ex rel. Moose v. Kansas City & Memphis Ry. & Bridge Co.*, 174 S.W. 248,

1   251 (Ark. 1914).  "[W]e have held that retroactive application is appropriate for remedial

2   statutes that 'do not disturb vested rights, or create new obligations, but only supply a new or

3   more appropriate remedy to enforce an existing right or obligation."  *AKA v. Jefferson Hosp.*

4   *Ass'n*, 42 S.W.3d 508, 518-19 (Ark. 2001).

5       Ark. Code Ann. § 4-75-315 is a classic example of remedial legislation that did not

6   create any new and greater legal obligations on the Defendants.  Before the statute came into

7   existence, the Defendants' conduct was already illegal under numerous provisions of Arkansas

8   law, including Ark. Code Ann. § 4-75-309 (prohibition against price fixing).  The Defendants

9   were already under an existing obligation to avoid price-fixing.  The only change Ark. Code

10  Ann. § 4-75-315 brought about is that the State now has an additional enforcement tool to seek

11  redress for the Defendants' breach of their longstanding legal obligations.[2]  For these reasons,

12  the decision of the Massachusetts federal court in *Relafen* was plainly incorrect in its

13  interpretation of Arkansas law and is entitled to no weight.

14      In their second argument, the Defendants assert that the Arkansas Deceptive Trade

15  Practices Act ("DTPA"), Ark. Code Ann. §§ 4-88-101 *et seq.,* has no application to this case

16  because some courts in other states (but notably not in Arkansas) have held that consumer

17  protection statutes do not apply to anticompetitive conduct.  There is neither any statute nor

18  any case law in Arkansas that would support Defendants' proposition.  Likewise, Arkansas

19  also has no case law precedents or statutory directive providing for the interpretation of its

20  state antitrust laws in accordance with federal antitrust guidelines.  Therefore, neither Arkansas

21  courts nor this Court is obligated to consider the ruling of *Illinois Brick* in its interpretation of

22  the DTPA.  The Arkansas Supreme Court has found the Arkansas Deceptive Trade Practices

23  Act to be remedial in nature, thus providing for a liberal interpretation of the Act in order to

24

25  [2]Although, as noted, the retroactive effect of Ark. Code Ann. § 4-75-315 appears plain, if
    necessary this Court should certify the question to the Arkansas Supreme Court, which may
26  answer questions of state law certified to it by a federal court.  *See* Ark. Sup. Ct. Rule 6-8.

1    effectuate its underlying purposes, which are to protect the interests of the State's consumers

2    and legitimate business activities.  *State v. R&A Inv. Co., Inc*., 985 S.W.2d 299 (Ark. 1999).

3    To give meaning to these statutory interests, the Act should be construed to permit recovery for

4    indirect purchasers, including those consumers and governmental entities that paid inflated

5    prices due to the Defendants' conduct.

6         At least two reported decisions have agreed that the Arkansas DTPA is applicable to

7    anticompetitive conduct.  *See Mylan II*, 99 F. Supp. 2d at 5; *see also In Re New Motor Vehicle*

8    *Canadian Export Antitrust Litigation*, 350 F. Supp. 2d 160, 177 (D. Maine 2005) (hereinafter

9    "*Canadian Export*").   In sum, the Defendants' arguments that this Court should give the

10   Arkansas Deceptive Trade Practices Act only a cramped and narrow reading are misconceived

11   and have not been accepted by any court.

12        **Florida:**   Defendants' argument that "Florida's claims for damages to indirect

13   purchasers under the Florida Antitrust Act should be dismissed" is inapposite.  Count Two of

14   the States' Complaint, which includes Florida as a Plaintiff, alleges that Florida state agency

15   and/or political subdivision Purchasers bought DRAM-containing personal computers and

16   servers from OEMs by means of "bid documents and/or purchasing agreements [which]

17   contained various assignment clauses which served to assign to Purchasers the right of OEMs

18   arising out of antitrust and/or unfair competition causes of action relating to DRAM."

19   Consequently, these assignment clauses provide Florida state agency and/or political

20   subdivision indirect purchasers with direct purchaser standing and entitle Florida to recover the

21   antitrust damages that the OEMs, as direct purchasers, would be entitled to recover absent the

22   assignment language.

23        In Florida, under the Florida Antitrust Act of 1980, Fla. Stat. § 542.15 *et seq*., direct

24   purchasers recover treble damages, as well as attorney's fees and costs.  Since the OEMs

25   would recover such damages under the Florida Antitrust Act as direct purchasers, *Mack v.*

26   *Bristol-Myers Squibb Co.*, 673 So. 2d 100 (Fla. Dist. Ct. App. 1996), therefore, Florida state

1   agency and/or political subdivision purchasers of DRAM-containing equipment would as well

2   by means of the assignment of their claims.   Therefore, Florida's claims are valid under the

3   Florida Antitrust Act.

4       **Hawaii:**  Defendants argue that Hawaii's claim in paragraph 140 of the Amended

5   Complaint should be dismissed because "the provision authorizing suits on behalf of

6   governmental agencies does not provide for recovery on behalf of indirect purchaser state

7   agencies," and that federal law does not allow indirect purchasers to sue.[3]  Hawaii is not using

8   federal law as a basis to recover damages on behalf of its state agencies who were indirect

9   purchasers of DRAM chips.  Hawaii seeks to recover damages exclusively pursuant to state

10  law.

11      Defendants' arguments are without merit and show that Defendants have failed to

12  appreciate the language of the statute.  Defendants have ignored what Hawaii did in the wake

13  of the ruling issued in *Illinois Brick*.

14      In Hawaii, recovery by indirect purchasers has been a part of the fabric of Hawaii's

15  antitrust law from its beginning, and the Hawaii State Legislature took steps to clarify the

16  rights of indirect purchasers in the wake of the ruling in *Illinois Brick*, and to dispel any

17  misconceptions as regards the right of indirect purchasers to recover.

18      In 1980, the Hawaii State Legislature deliberated on House Bill No. 2668-80.  The

19  bill's purpose was "to amend chapter 480, Hawaii Revised Statutes, relating to the bringing of

20  actions on behalf of indirect purchasers by the Attorney General."   *See* Sen. Standing

21  Committee Report No. 971-80, 1980 Senate Journal, at 1494 (Haw. 1980); a copy is attached

22  hereto as Exhibit 1).  The Legislature determined that it was appropriate to use the measure to

23  "clarify what was **originally intended** by the enactment of [the Hawaii antitrust laws]" in light

24  of the ruling issued in *Illinois Brick*.  Exhibit 1 at p. 1. (emphasis added.)

25  

26  [3] See Defendants' Motion at pp. 9-10.  Defendants' motion incorrectly states that paragraph 140 of the Amended Complaint references section 480-14(b).

First, the Legislature affirmed its commitment to the original basic concept that the antitrust laws were designed to benefit consumers "and others" injured by antitrust violators, and that such intent "**was and continues to be the intent of chapter 480.**" *Id.* (emphasis added.)

Second, the Legislature expressed its desire to dispel any possible misconception that may be read into the implications of *Illinois Brick* on the rights of indirect purchasers under Hawaii law, noting that "such right of consumers should be clarified as existing under chapter 480 irrespective of archaic notions of privity between (1) defendant manufacturers, and others and (2) indirect consumers." *Id.*

Third, the Legislature expressed its view that that "anyone" who has paid more than he should is "sufficient basis for invoking the protection intended by [Hawaii's] antitrust laws. *Id.*

Finally, the Legislature made it very clear that "indirect purchasers need simply show in some fashion that by reason of antitrust violation their purchase prices were elevated by the consequent illegal overcharge." *Id.*

These excerpts from the Hawaii legislative history following the ruling in *Illinois Brick* clearly show Hawaii law provides that **all** indirect purchasers, of whatever ilk, have a strong basis and right to invoke the protection of the Hawaii antitrust laws, notwithstanding the ruling in *Illinois Brick.*

The right to invoke the protection of the Hawaii antitrust laws extends to Hawaii state agencies.  Haw. Rev. Stat § 480-14(a) provides a broad remedy and clearly authorizes the State to sue if it is injured by anything forbidden or declared unlawful by chapter 480:

> (a) Whenever the State, any county, or city and county is injured in its business or property by reason of anything forbidden or declared unlawful by this chapter, it may sue to recover threefold the actual damages sustained by it.

Haw. Rev. Stat. § 480-14(a).  Section 480-14(b) empowers the Attorney General to sue on behalf of injured state agencies to recover damages provided by this section:

> (b) The Attorney General may bring an action on behalf of the State or any of

its political subdivisions or governmental agencies to recover the damages provided for by this section, or by any comparable provisions of federal law.

Haw. Rev. Stat. § 480-14(b).  If the State as an indirect purchaser "has paid more than [it] should and [its] property has been illegally diminished," the Legislature has declared that the State has "a sufficient basis for invoking the protection intended by [Hawaii's] antitrust laws."  Exhibit 1 at p. 1.

**Kentucky:**  Federal courts have recognized the authority of the Kentucky Attorney General to bring claims on behalf of its citizens under the Kentucky Consumer Protection Act.  *Mylan II*, 99 F. Supp. 2d at 6.  Defendants' motion against Kentucky cites two federal decisions which both rely upon one ***unreported, unpublished*** state court decision of the Kentucky Court of Appeals.  Kentucky Rule of Civil Procedure 76.28(4)(C) instead mandates: "Opinions that are not to be published shall not be cited *or used as authority* in any other case in any court of this state." (emphasis added.).  This Court should not rely upon this case to eliminate Kentucky consumers' ability to seek recovery from the Defendants for their illegal actions, and the Motion should be denied.

**Louisiana**:  Louisiana purchasers may recover their damages in this matter regardless of their perceived status as "direct" or "indirect" purchasers for several reasons.  The Louisiana Unfair Trade Act defines commerce as direct or indirect.  La. Rev. Stat. Ann. § 51:1402(9).  The Louisiana Civil Code requires that laws on the same subject matter be interpreted *in pari materia*.  La. Civ. Code Ann. Art. 13.  Louisiana courts use the decisions of the United States Supreme Court to interpret both the Louisiana Monopolies and the Unfair Trade Acts, although the decisions are not controlling.  *LP&L v. United Gas Pipeline Co.*, 493 So. 2d 1149, 1158 (La. 1986).  This jurisprudential law was followed by a legislative Senate Concurrent Resolution No. 39, in 1997, which expresses similar sentiments.  It provides that the Louisiana Supreme

1   Court cannot and should not allow the decisions of the United States Supreme Court to

2   replace its independent judgment in construing Louisiana law, which affords

3   Louisiana's citizens greater freedom and protection of individual liberties.  Decisions

4   such as *Illinois Brick* cannot be used as a bright line rule against Louisiana's chief and

5   constitutional legal officer, to twist the meaning of Louisiana laws.

6        Moreover, La. Rev. Stat. Ann. § 51:1401 *et seq.*, was meant to supplement and

7   bolster the Louisiana Monopolies Act, La. Rev. Stat. Ann. § 51:122 *et seq.*, and to

8   condemn existing violations of it vis-a-vis *FTC v. Motion Picture Adv. Serv. Co*, 344

9   U.S. 392 (1953) and its progeny.  As laws on the same subject matter, regulating trade

10  and commerce, they must be interpreted "in reference to each other," thus providing

11  that indirect purchasers may recover under both laws.  In any case, no Louisiana Court

12  would construe *Free v. Abbott Laboratories, Inc.*, 176 F.3d 298 (5th Cir. 1999), an

13  appellate decision containing no legal or factual analysis whatsoever, against the

14  Attorney General.  Louisiana Courts decide antitrust and unfair trade law cases on a

15  case-by-case basis, declining to follow a bright line rule.

16       Louisiana citizens possess an additional grant of legislative standing to recover

17  damages regardless of their status as direct or indirect purchasers, vis-a-vis La. Rev.

18  Stat. Ann. §§ 51:132-133, which apply to this matter in light of the guilty pleas entered

19  into the record of the criminal proceeding.

20       **Maryland**:  Maryland's Attorney General has brought an action on behalf of

21  the State, political subdivisions and, as *parens,* persons who purchased DRAM-

22  containing products, to recover all remedies permitted by the Maryland Antitrust Act,

23  Md. Code. Ann. Com. Law § 11-201 *et seq.*  ("MATA")

24       Defendants assert that Maryland law bars all indirect purchasers, except the

25  State itself, from recovering for illegal overcharges in violation of MATA.  This

26  assertion is incorrect.  The Maryland Antitrust Act explicitly distinguishes between

1   actions brought by the Attorney General in equity pursuant to MATA § 11-209(a) and

2   actions for damages pursuant to § 11-209(b).  The Maryland Attorney General properly

3   seeks (1) restitution for natural persons and commercial entities who suffered an

4   antitrust injury due to the Defendants' price fixing conspiracy; and (2) damages for the

5   State and local governmental entities and persons who purchased DRAM-containing

6   medical devices.

7          Under MATA § 11-209(a), the Attorney General has express authority to bring

8   actions in equity to obtain *restitution* and to prevent or restrain violations of the Act.

9   Under MATA § 11-209(a)(3), the Attorney General may seek restitution for "any

10  person" of "any money" acquired from that person by means of "any violation" of

11  MATA.[4]  The statutory language is clear and has no counterpart under federal law.

12  Indeed, MATA was amended in 1993 to change the existing state rule enunciated in

13  *State v. Jonathan Logan, Inc.*, 482 A.2d 1 (Md. 1984).  The General Assembly now has

14  given the Attorney General a broad restitutionary remedy beyond the scope of federal

15  law.

16         The *Illinois Brick* doctrine does not bar an indirect purchaser's right to recover

17  equitable relief pursuant to State law claims supplemental to a complaint filed in

18  federal court.  *Mylan II*, 99 F. Supp. 2d at 1 (States with appropriate statutes can

19  maintain actions for restitution on behalf of indirect purchasers with antitrust injuries)[5];

20  *see also New York v. Feldman*, 210 F. Supp. 2d 294, 304 (S.D.N.Y. 2002) (Maryland

21  Attorney General has broad authority to ask a court for "restitution for any person

22  injured by an antitrust violation," even including non-residents) (hereinafter

23  _____

    [4] Person includes an individual and all other legal or commercial entities.  Md. Code Ann.
24  Com. Law § 11-201(f).

    [5] *Davidson v. Microsoft Corp.*, 792 A.2d 336 (Md. Ct. Spec. App. 2002), cited by Defendants,
25  is a private class action brought for damages under MATA § 11-209(b).  It does not address the
    authority of the Attorney General to bring equitable actions for restitution under section 11-
26  209(a).

1   "*Feldman*").  So, too, here the Maryland Attorney General may seek restitution for

2   "any person," whether a direct or indirect purchaser.

3   Defendants acknowledge that the State of Maryland may maintain an action for

4   *damages* regardless of whether it dealt directly or indirectly with the person who

5   committed the antitrust violation.  However, MATA § 11-209(b)(2)(ii), explicitly

6   authorizes political subdivisions as well as the State to recover damages, even if they

7   are indirect purchasers.

8   Defendants concede that they cannot seek dismissal of claims made on behalf of

9   the State; under the plain reading of this statute they cannot seek dismissal of claims

10  made on behalf of Maryland's political subdivisions either.

11  The Attorney General also may bring a damages action as *parens* on behalf of

12  persons residing in the State.  MATA § 11-209(b)(5).  If such an action involves a

13  "medical device," or portion of the device,[6] the seller may not assert as a defense that

14  the persons did not deal directly with it.  Md. Code Ann. Health-Gen. § 21-1114 states

15  that in any antitrust action brought by the Attorney General, "a person that sells,

16  distributes or otherwise disposes of any . . . medical device: (1) May not assert as a

17  defense that the person did not deal directly with the person on whose behalf the action

18  was brought.  This statute was enacted in 2005, three years after *Davidson*, 792 A.2d

19  336, and one year after *Relafen*, 225 F.R.D. 14, the cases upon which Defendants rely,

20  and was intended to augment the existing restitution remedy.

21  In addition to each of these remedies, MATA provides that a court can assess a

22  civil penalty of $100,000 per violation, payable to the General Fund of Maryland.

23  MATA § 11-209(a)(4).  This civil penalty is unaffected by the *Illinois Brick* doctrine.

24

25  _____

    [6] Under Md. Code Ann. Health-Gen. § 21-101(f), "device" includes "*any part or accessory* of

26  an instrument, apparatus or contrivance that is intended: (1) for use in a diagnosis, care,
    mitigation, treatment or prevention of human disease."  (emphasis added).

**New Hampshire:**  New Hampshire's claims for relief are made pursuant to the Cartwright Act.  No claim is asserted under New Hampshire state law.

**Oklahoma:**  Oklahoma seeks relief, including damages, for state agencies who were indirect purchasers of DRAM under the Cartwright Act, not the Oklahoma Antitrust Reform act or the Oklahoma Consumer Protection Act.  Oklahoma seeks restitution and other equitable relief for natural persons and state agencies under the Oklahoma Protection Act, Okla. Stat. tit., § 15, 751 *et seq. See Mylan,* 99 F. Supp. 2d at 8-9.

**Ohio:**  The Ohio Attorney General, as the chief law enforcement officer of the State of Ohio, brings this case to enforce the provisions of Ohio Rev. Code §§ 109.81 and 1331.01, *et seq.* ("Valentine Act"), and asserts claims for proprietary damages suffered by Ohio and its agencies and political subdivisions, as well as to enjoin illegal conduct.  The Ohio Attorney General has the authority to act in any antitrust case for Ohio and to obtain equitable relief.  Defendants do not challenge the Ohio Attorney General's authority to enforce the Valentine Act.

Defendants mischaracterize the claims asserted by the Ohio Attorney General in arguing that Ohio's Valentine Act claims on behalf of indirect purchasers should be dismissed citing *Johnson v. Microsoft Corp.* 834 N.E.2d 791 (Ohio 2005).  Simply put, the Ohio Attorney General has asserted no such claims.  Ohio's Valentine Act claims are for direct purchases from Defendants to which *Johnson* is clearly inapposite.  Included are claims for which the right to recovery was contractually assigned to Ohio by a direct purchaser, and which are legally indistinguishable from direct claims.  The Attorney General has clear authority to recover for indirect purchases where causes of action were contractually assigned to state entities and political subdivisions, placing the State in the shoes of the direct purchaser.  It is well settled that "[u]nder controlling federal law antitrust claims are assignable." *Gulfstream III Assocs., Inc. v. Gulfstream*

1    *Aerospace Corp.*, 995 F.2d 425, 431 (3d Cir. 1993).[7]   The Ohio Supreme Court has

2    long followed federal law in the interpretation of the Valentine Act.  *Johnson*, 834

3    N.E.2d at 794-95.   Thus, the Attorney General has the authority to recover under the

4    Valentine Act for indirect purchases where direct purchasers contractually assign their

5    causes of action to state entities and political subdivisions.

6            The only non-assignment clause indirect claims set forth in the Attorney

7    General's complaint are brought under the Cartwright Act, not the Valentine Act.

8    Defendants' argument requesting dismissal of Ohio's claim on the basis of indirect

9    purchaser issues is without merit as it seeks dismissal of claims that do not exist.

10           **Virginia**:  The Virginia Attorney General has express state statutory authority

11   to represent Virginia indirect purchasers, such as consumers, in a capacity that is the

12   functional equivalent of *parens* authority pursuant to the Virginia Antitrust Act, Va.

13   Code Ann. § 59.1-9.1 *et seq.* (1974).  *See In re Cardizem CD Antitrust Litigation*, 218

14   F.R.D. 508, 522 (D. Mich. 2003) (citing *In re Lorazepam & Clorazepate Antitrust*

15   *Litigation*, 205 F.R.D. 369, 386 (D.D.C. 2002)) (hereinafter "*Cardizem*").

16           **Washington**:  The State of Washington has standing under its antitrust laws to

17   bring claims for relief on behalf of itself and its consumers for indirect purchases.

18   Wash. Rev. Code § 19.86.090.  In *FTC v. Mylan Laboratories, Inc.*, 62 F. Supp. 2d 25,

19   52 (D.D.C. 1999) (hereinafter "*Mylan*") the court affirmed Washington's standing to

20   represent consumer indirect purchasers to recover overcharges under the Unfair Trade

21   Practices & Consumer Protection Act ("CPA"), Wash. Rev. Code § 19.86 *et seq.*  The

22   *Mylan* court later upheld that standing, denying the defendants' *Illinois Brick* motion to

23   dismiss.  *Mylan II*, 99 F. Supp. 2d at 11.  Another Michigan District Court has also

24   found that Washington has standing to seek relief on behalf of its indirect purchaser

25   _____

26   [7] *See also E. & J. Gallo Winery v. EnCana Energy Servs.*, 2004 U.S. Dist. LEXIS 29384, *24
     (E.D. Cal. 2004)

1  consumers.  *Cardizem*, 218 F.R.D. at 521.  State law provides solid ground for these

2  decisions.  Harmonizing Washington's antitrust law with the *Illinois Brick* doctrine,

3  Washington courts have unequivocally granted the Attorney General standing in

4  indirect purchaser cases.

5      In *State of Washington v. American Tobacco Co.*, No. 96-2-15056-8, 1996 WL

6  931316 (Wash. Sup. Ct. Nov. 19, 1996), the court concluded that direct purchaser

7  standing analysis did <u>not</u> apply to a claim brought under Wash. Rev. Code § 19.86.090,

8  which authorizes damages actions by the State.  The court analyzed the CPA and the

9  policies that inform it, concluding that the broad language of Wash. Rev. Code §

10  19.86.090 mandated that the Washington Attorney General has indirect purchaser

11  standing.  Paragraph two of Wash. Rev. Code § 19.86.090 authorizes damage actions

12  by the State where the State is "injured," without any restriction as to the type of injury.

13  "This broader language recognizes that the State, with its wide-ranging responsibilities

14  for the health and welfare of its citizens, may incur substantial damages as a result of

15  anti-competitive activity even though the State is not actively engaged in the sphere of

16  business in which an antitrust violation occurred."  *American Tobacco Co.*, 1996 WL

17  931316 at *1.  Applying basic rules of statutory construction to this important

18  distinction, the court held that the State of Washington had broader standing to bring

19  damage claims than that accorded to private parties.  *Id.* at 3.

20      The court also considered Wash. Rev. Code § 19.86.920, which provides that

21  state courts should be "guided" by federal law and precedent when construing the CPA,

22  and that the CPA "shall be liberally construed that its beneficial purposes may be

23  served."  *Id.*  But long settled precedent established that Washington courts were not

24  conclusively bound by federal antitrust precedents.  *Id.* at 2 (citing *State v. Ralph*

25  *Williams' NW Chrysler Plymouth, Inc.*, 510 P.2d 233 (Wash. 1973)).  Since the

26

standing provision in the CPA for the State is different from the federal statute, the court ultimately ruled that the State had standing to proceed to trial.

Defendants' argument ignores this state and federal authority.  Defendants rely on *Blewett v. Abbot Laboratories*, 938 P.2d 842, 847 (Wash. Ct. App. 1997), asserting, "[a]s a federal court in Massachusetts recently noted, this dicta appears in a section of the opinion addressing injunctive relief, and refers to the Attorney General's statutory authority to 'restrain and prevent' antitrust violations."  Defendants' motion at 7.  But the *Blewett* decision was **not** limited only to injunctive relief, nor did the court so limit the Attorney General's authority.  The court cited Wash. Rev. Code § 19.86.080.  *Id*. at 847 n.22.  Only the first paragraph of this section speaks to injunctive relief.  The second paragraph states,

> The court may make such additional orders or judgments as may be necessary to restore to any person in interest any moneys or property, real or personal, which may have been acquired by means of any act herein prohibited or declared to be unlawful.

Wash. Rev. Code § 19.86.080.  The reference to "such additional orders or judgments" affords the State standing to obtain recoveries for indirect purchasers.  As in *American Tobacco*, there is no restriction in the statute on the nature of the additional orders or judgments that lie within the court's power.  Under Washington's law, such additional orders or judgments may include restitution and damages.

**West Virginia**:  Defendants claim that since West Virginia's Antitrust Act is almost identical to the Clayton Act, *Illinois Brick's* proscriptions against indirect purchasers recovering damages should apply.  Defendants' view is flawed and has not been followed by any court ruling on West Virginia's Antitrust Act.  *Canadian Export*, 350 F. Supp. 2d at 175; *In re Terazosin Hydrochloride Antitrust Litigation*, 160 F. Supp. 2d 1365, 1376 n.8 (S.D. Fla. 2001); *Mylan*, 62 F. Supp. 2d at 52-53.[8]

---

[8] Although not ruled upon by the West Virginia Supreme Court, a number of West Virginia

1      The Antitrust Act provides "any person who shall be injured in his business or property

2  by reason of a violation of the [Antitrust Act] may bring an action therefore . . . ." W. Va.

3  Code § 47-18-9. The Antitrust Act is further explained by a legislative rule promulgated by

4  the Attorney General and adopted by the West Virginia Legislature in 1990.[9]

5         Any person who is injured directly or indirectly by reason of a violation of the
       West Virginia Antitrust Act, Chapter 47, Article 18, Section 1 *et seq.* of the

6         Code may bring an action for damages under Chapter 47, Article 18, Section 9
       of the Code. The State and any of its political subdivisions shall be deemed a

7         person within the meaning of this Rule.

8      142 C.S.R. § 9-2.1 (attached hereto as Exhibit 2) ("Indirect Injury Rule").

9      The Indirect Injury Rule was constitutionally enacted.[10]   Secondly, the Attorney

10  General's interpretation of the Indirect Injury Rule is not arbitrary or capricious and is entitled

11  to deference. *See Canadian Export*, 350 F. Supp. 2d. at 175. Furthermore, great weight should

12  be given to the Attorney General's interpretation of the Antitrust Act and legislative rule unless

13  the interpretation is clearly erroneous. *Beckley v. Cook*, 455 S.E.2d 817 (W. Va. 1995).

14

15  trial courts have expressly or implicitly allowed indirectly injured persons to recover damages
under West Virginia's Antitrust Act. *See e.g., State ex rel. McGraw v. VISA U.S.A., Inc. et al.*,

16  Civ.A. No. 03-C-551 (Cir. Ct. Ohio Cty., 2005) (express determination the Attorney General is

17  authorized to bring an action to recover indirect damages arising from unlawful antitrust
behavior); *State ex rel. McGraw v. Abbott Labs.*, Civ. A. No. 01-C-180 (Cir. Ct. Wyoming Cty.

18  2005) (approval of antitrust settlement agreement); *State ex rel. McGraw v. GlaxoSmithKline*,
Civ. A. No. 04-C-245-M (Cir. Ct. Marshall Cty. 2004) (court approved antitrust settlement);

19  *State ex rel. McGraw v. Kimberly-Clark*, Civ. A. No.: 99-C-2349 (Cir. Ct. Kanawha Cty. 2000)

20  (court approved antitrust settlement); *Archer v. F. Hoffman-La Roche, Ltd*, Civ. A. No. 99-C-
327 (Cir. Ct. Kanawha Cty. 2002) (approval of antitrust settlement). Copies of the foregoing

21  decision are attached hereto, collectively as Exhibit 3.
[9] Under West Virginia law, a properly promulgated legislative rule has the force of law except

22  where (i) the agency has exceeded its constitutional authority and (ii) the rule is arbitrary and
capricious. *W. Va. Health Care Cost Review Authority v. Boone Memorial Hosp.*, 472 S.E.2d

23  411, 421 (W. Va. 1996).

24  [10] The Indirect Injury Rule was properly promulgated and approved by the WV Legislature.
Thus, Defendants' reliance on *Gray v. Marshall County Board of Education*, 367 S.E.2d 751

25  (W. Va. 1988), is misplaced. The case merely restates that the West Virginia Antitrust Act
"shall be construed liberally and in harmony with the ruling judicial interpretations of

26  comparable federal antitrust statutes." W. Va. Code § 47-18-16.

The Antitrust Act's "harmonization" statute does not require the State to follow *Illinois Brick.* U.S. District Court Judge Hornby held in *Canadian Export,* "The West Virginia harmonization principle (particularly in a sentence calling simultaneously for 'liberal' construction) is simply not a direct statement prohibiting indirect purchaser recovery." *Canadian Export,* 350 F. Supp. 2d at 174.  Judge Hornby's reasoning is sound. Therefore, <u>any</u> indirectly injured person in West Virginia can bring an action under the Antitrust Act.

Defendants claim the West Virginia Consumer Credit and Protection Act ("CCPA") cannot be used in an action to recover damages arising from antitrust violations.  However, West Virginia submits that bid-rigging is an unfair or deceptive act or practice.[11]

## II.   NEW HAMPSHIRE'S, OKLAHOMA'S AND SOUTH CAROLINA'S CLAIMS ARE TIMELY AND ANY MOTIONS BASED ON TIMELINESS ARE INAPPROPRIATE

**Oklahoma:**  Oklahoma brings this claim under the Oklahoma Consumer Protection Act to vindicate public rights because it seeks restitution for state agencies as well as natural persons.  The Oklahoma Supreme Court has held that "statutes of limitation shall not bar any suit by any government entity acting in its sovereign capacity to vindicate public rights." *Oklahoma City Mun. Improvement Auth. v. HTTB, Inc.,* 769 P.2d 131, 135 (Okla. 1988). Furthermore, once it became aware of the Department of Justice investigation, Oklahoma still had a duty to conduct its own investigation into the facts surrounding Defendants' conduct in order to determine the appropriate action to take.  Allowing time for a reasonable investigation and review of the evidence would put the accrual date for this claim well within the scope of the tolling agreement entered into on August 1, 2005.  Micron's June 2002 announcements did not provide the State of Oklahoma with sufficient information to file a complaint.

---

[11] "[U]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." W. Va. Code § 46A-6-104.  This statute is similar to Section 5 of the FTC Act which is used repeatedly seeking redress of antitrust violations. *See, e.g., Mylan,* 62 F. Supp. 2d at 25.  Moreover, the purpose of the CCPA is to compliment federal law providing similar remedies. W. Va. Code § 46A-6-101(1).

1  **New Hampshire:**  Defendants' claim that New Hampshire's action is untimely turns

2  on a question of fact not presented in the pleading, therefore it is not appropriate for a motion

3  to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  The date when New Hampshire became aware

4  of the facts underlying its claim is only relevant in context of the discovery rule.  "Under the

5  discovery rule exception, the statute of limitations does not accrue until. . .the plaintiff knows

6  or reasonably should have known of its injury and. . .the causal connection between the injury

7  and the alleged conduct of the defendant."  *Kelleher v. Marvin Lumber and Cedar Co.,* 152

8  N.H. 813, 824 (2005).  The question of when the plaintiff became aware, or should have

9  become aware, of the facts underlying the claim and the causal connection to the injury is a

10  question of fact.  *Id.* at 825 (citing *Black Bear Lodge v. Trillium Corp.*, 136 N.H. 635, 638

11  (1993)).  New Hampshire has not admitted that it became aware of the facts underlying its

12  complaint in June, 2002.  Only when Hynix actually pled guilty to violations of the Sherman

13  Antitrust Act on May 11, 2005, did New Hampshire became aware of the facts.  Therefore, the

14  earliest the statute of limitations began to run was on May 11, 2005, and New Hampshire's

15  action is timely.

16  **South Carolina:**  Defendants contend that the South Carolina Unfair Trade Practices

17  Act (SCUTPA), S.C. Code Ann. §§ 39-5-10, *et seq.*, cause of action should be dismissed as

18  being untimely filed.  However, S.C. Code Ann. § 39-5-150 provides, "No action may be

19  brought under this article more than three (3) years after discovery of the unlawful conduct

20  which is the subject of this suit."  The South Carolina Supreme Court has interpreted the

21  statute of limitations under the SCUTPA as being triggered within three years of discovery of

22  the unlawful conduct.  *See Prestwick Golf Club, Inc. v. Prestwick Ltd. P'ship*, 331, S.C. 385,

23  503 S.E.2d 184 (S.C. Ct. App. 1999).  Under this rule, the statute of limitations begins to run

24  "not merely by knowledge of an injury, but knowledge of facts, diligently acquired, sufficient

25  to put a person on notice of the existence of the cause of action against another and that this is

26  an objective, not subjective determination."  *Grillo v. Speedrite Prods., Inc.*, 340 S.C. 498, 532

1  S.E.2d 1 (S.C. Ct. App. 2000).   Contrary to Defendants' assertions, a mere retrospective

2  acknowledging by way of a chronology of the events does not trigger the SCUTPA.

3          In addition, the Motion to Dismiss should be denied because at the motion to dismiss

4  stage, the Complaint must be construed in a light most favorable to the plaintiff.   *See Syverson*

5  *v. Int'l Bus. Machines Corp.*, 461 F.3d 1147, 1151 (9th Cir. 2006).   Therefore, any

6  determination of the statute of limitations issue, which is a factual issue, would be premature in

7  that more than one inference could be drawn as to when a reasonable person would have been

8  on notice that the plaintiff might have had a cause of action against a defendant.   Here, a

9  genuine issue of material fact would exist as to when the statute of limitations was triggered.

10  Therefore, a jury issue would be presented as to the application of the statute of limitations in

11  this case.   *See Grillo*, 532 S.E.2d. at 6; *see also*, *Dunbar v. Carlson*, 341 S.C. 261, 533 S.E.2d

12  913 (S.C. Ct. App. 2000).

13  **III.   THE   STATE   ATTORNEYS   GENERAL   HAVE   PARENS   PATRIAE
       AUTHORITY TO PROTECT THEIR STATES' CONSUMERS**

14

15          Under principles of federalism, state law, not federal, controls when a State Attorney

16  General may bring a state common law *parens* state antitrust claim on behalf of his or her

17  State's citizens.   *Glanton v. AdvancePCS, Inc.*, 465 F.3d 1123, 1126 (9th Cir. 2006) (citing

18  *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592 (1982)

19  ("[G]overnmental entities have a concrete stake in the proper application of the laws of their

20  jurisdiction, giving them a sufficient basis for Article III standing in *parens patriae* cases.").[12]

21  In passing the Sherman Act, 15 U.S.C. § 1, *et seq.*, Congress intended the new federal law to

22  supplement, not to supersede, state antitrust laws, including both common and statutory laws.

23  *See, e.g.,* 21 Cong. Rec. 2457 (1890) (remarks of Sen. Sherman: the proposed legislation was

24  ───────────────
    [12] *Cf., e.g., Myers v. Richland County*, 429 F.3d 740, 749 (8th Cir. 2005) (standing to raise a

25  state claim is analyzed under state law); *Ohio v. United Transp.*, 506 F. Supp. 1278 at 1281,
    (S.D. Ohio 1981) ("[t]he role of the Attorney General of Ohio in protecting the state's interests

26  under the federal antitrust laws is an issue governed by Ohio statutory and common law.")
    (citing *Florida ex rel.  v. Shevin v. Exxon Corp.*, 526 F.2d 266, 275 (5th Cir. 1976)).

intended to "supplement the enforcement of the established rules of the common and statute law by the courts of the several states."). The United States Supreme Court has consistently declined to find that federal antitrust laws preempt state antitrust laws.[13] As one commentator has stated:

> Antitrust federalism has become an established part of the nation's antitrust enforcement regime. [Footnote omitted.] The core principles of antitrust federalism presuppose both that: (a) federal and state antitrust laws can differ in ways that matter; and that (b) federal and state enforcement decisions, in any given instance, will not necessarily be the same. . . . The mere fact that state antitrust law permits a result that could not be achieved under federal antitrust law should not be a basis for finding federal preemption.

J. Himes, *Exploring the Antitrust Operating System: State Enforcement of Federal Antitrust Law in the Remedies Phase of the Microsoft Case*, 11 Geo. Mason L. Rev. 37, 45-46 (2002).

The Ninth Circuit also recognizes states' *parens* interest in protecting the economic health of their residents by redressing violations of antitrust laws. In *In re Insurance Antitrust Litigation*, 938 F.2d 919, 927 (9th Cir. 1991) a case brought by the states, the Ninth Circuit held that the "states' interest in preventing harm to its citizens by antitrust violations, is indeed, a prime instance of the interest that the *parens patriae* can vindicate by obtaining damages and/or an injunction". Thus, as further demonstrated below, Defendants' challenges to certain state's authority should be rejected.

**Arizona:** The State of Arizona has common law *parens* authority to act for the benefit of its citizens. *Maricopa County Cause No. MH 90-00566,* 840 P.2d 1042, 1047 (Ariz. Ct. App. 1992). Two United States District Courts have ruled that Arizona has "specific authority to represent consumers and to settle and release their claims" because Arizona has "express statutory authority to represent consumers in a capacity which is the functional equivalent of

---

[13] *See, e.g., ARC America Corp.*, 490 U.S. at 93 (no preemption of state indirect purchaser statute); *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117 (1978) (no preemption of state law prohibiting oil company ownership of retail service stations and requiring uniform pricing terms); *Puerto Rico v. Shell Co.*, 302 U.S. 253 (1937) (no preemption of Puerto Rico's local antitrust law).

*parens patriae.*" *In re Lorazepam & Clorazepate Antitrust Litigation*, 205 F.R.D. 369, 386 (D.D.C. 2002) (hereinafter "*Lorazepam*"); *Cardizem*, 218 F.R.D. at 521.

**Illinois:**   The Attorney General of Illinois has *parens* authority under both Illinois Constitutional law and Illinois statutory law.  The powers of the Attorney General are not limited to those granted by the legislature.  Instead, the Illinois Constitution grants the Attorney General all of the powers of the office recognized at common law.

> In this State the constitution, by creating the office of Attorney General under its well-known common law designation and providing that he shall perform such duties as may be prescribed by law, ingrafted upon the office all the powers and duties of an Attorney General as known at the common law, and gave the General Assembly power to confer additional powers and impose additional duties upon him.  The legislature cannot, however, strip him of any of his common law powers and duties as the legal representative of the State.

*People ex rel. Barrett v. Finnegan*, 378 Ill. 387, 392-93, 38 N.E.2d 715, 717 (1941); *accord*, *Dep't of Mental Health v. Coty*, 38 Ill. 2d 602, 606, 232 N.E.2d 686, 689 (1967).

Among these Constitutionally-granted common law powers is the power to represent the people of the State as *parens*, as has been recognized continuously for over 120 years. *E.g.*, *In re Volpert*, 175 B.R. 247, 256 (Bankr. N.D. Ill. 1994); *County of McLean v. Humphreys*, 104 Ill. 378, 383 (1882).  This power enables the Attorney General to represent the citizens of Illinois under Illinois laws, including its Antitrust Act.  *Illinois v. Bristol-Myers Co.*, 470 F.2d 1276, 1278 (D.C. Cir. 1972) ("The State Supreme Court has repeatedly held that the Attorney General has common-law powers and duties wholly apart from those granted by statute.").[14]

---

[14] Defendants also assert that there needs to be statutory authority for the Attorney General to represent the businesses of Illinois.  No citation is provided for this assertion and no reason is offered to so limit the broad Constitutional powers of the Attorney General.  However, even a cursory reading of the Illinois Attorney General Act resolves the question.  The Act authorizes the Attorney General to "appear for and represent the people of the state."  15 Ill. Comp. Stat. § 205/4 (2006).  Businesses are expressly included in the definition of persons.  5 Ill. Comp. Stat. § 70/1.05 (2006).

Even were there not a constitutional grant of *parens* authority, the Illinois Antitrust Act grants its equivalent to the Attorney General for the representation of the state's indirect purchasers.  Indeed, the Act expressly provides that only the Attorney General may represent such indirect purchasers.  740 Ill. Comp. Stat. § 10/7(2) (2006).  Under Illinois law, there is a presumption that the grant of such statutory authority grants by implication the powers to wield such authority.  *People ex rel. Devine v. Time Consumer Mktg., Inc.*, 336 Ill. App. 3d 74, 81, 782 N.E.2d 761, 767 (Ill. App. Ct. 2002).  As a result, the courts have recognized that this statute grants the Attorney General the statutory equivalent of her common law *parens* authority.  *Cardizem*, 218 F.R.D. at 521; *Lorazepam*, 205 F.R.D. at 386.

**Louisiana:**  As noted above in *Board of Commissioners v. Department of Natural Resources,* 496 So.2d 281, 286 (La. 1986), a state's constitution provides limits on the otherwise plenary power of the people of a state.  Louisiana's constitution recognizes a separation of powers.[15]  It is elementary that the legal affairs of the state are matters appertaining exclusively to its chief legal officer, the Attorney General.  Art. IV, §8 of the Louisiana Constitution provides:

> As necessary of the assertion or protection of any right or interest of the state, the Attorney General shall have the authority (1) to institute, prosecute, or intervene in any civil action or proceeding;

The state has a quasi-sovereign interest in the economic well-being of its citizens.  If the state has an interest, the Attorney General has a right to assert it in the manner in which he deems necessary.  Nothing in the Louisiana Constitution, law or jurisprudence prevents him from bringing a claim on behalf of all of the states' citizens either as *parens patriae* or, as addressed below, under the Cartwright Act.

**Mississippi:**  Defendants claim the Mississippi Attorney General does not have *parens*

---

[15] La. Const. Art. II, § 2 ("Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others.").

authority solely based on the lack of the words "*parens patriae*" from the Mississippi Antitrust Act.  However, this meritless claim is in complete contradiction to the courts reviewing this issue of Mississippi constitutional law, statutory law and common law.[16]  Defendants argument also conflicts with consistent holdings by the Fifth Circuit Court of Appeals that hold that statutory language need not be an express grant of *parens* authority to provide for an Attorney General to bring an action on behalf of the state to recover *parens* damages."  *Louisiana, ex rel. Ieyoub v. Borden, Inc.*, No. 94-3640, 1995 WL 59548, at *3 (E.D. La. Feb. 10, 1995) (citing *Texas v. Scott & Fetzer Co.*, 709 F.2d 1024 (5th Cir. 1983)).  Furthermore, the Mississippi Constitution and statutory provisions provide a solid basis for *parens* authority by the Attorney General to represent its citizens' economic well being.  *Jim Hood, Attorney General vs. Microsoft Corp.*, CA No. 3:04-cv-800WS (S.D.Miss.2004) (hereinafter "*Microsoft*").

The Attorney General has the authority to "institute, conduct and maintain all suits necessary for the enforcement of the laws of the State, preservation of order and the protection of public rights.  *Gandy v. Reserve Life Ins. Co.*, 279 So. 2d 648, 649 (Miss.1973); *State ex rel. Allain v. Miss. Pub. Serv. Comm'n*, 418 So. 2d 779, 781 (Miss.1982).  The protection of a competitive marketplace free from unfair and deceptive trade practices falls well within the ambit of a "subject matter which is of statewide interest" and the "protection of public rights."

Furthermore, the Attorney General has statutory authorization within the Mississippi Antitrust Act ("MAA") to represent Mississippi citizens who are injured by an entity's illegal

---

[16] *Jim Hood, Attorney General v. Microsoft Corp.*, CA No. 3:04-cv-800WS (S.D. Miss. 2004) (Attorney General, acting as *parens*, sued Microsoft for violating Mississippi Antitrust Act and Mississippi Consumer Protection Act); *Cardizem*, 218 F.R.D. at 521 (The Attorney General has express statutory authority to represent consumers): *In re Compact Disc Minimum Advertised Price Antitrust Litigation*, No. MDL 1361, 2003 WL 21685581, at *8 (D. Me. July 18, 2003) (The Mississippi Attorney General has *parens* authority to represent Mississippi consumers); *Lorazepam*, 205 F.R.D. at 386 (The Mississippi Attorney General has express statutory authority to represent consumers).

1    collusive activities to injure competition.  In a case concerning a national conspiracy to fix

2    prices of baby formula, the Fifth Circuit Court of Appeals analyzed Miss. Code. Ann. § 75-21-

3    7 and concluded that it ". . .clearly gives the Attorney General of the State the authority to

4    bring suit in the name of the State for violations of Mississippi antitrust law."  *Moore ex rel.*

5    *Mississippi v. Abbott Labs*., 900 F. Supp. 26, 31 (S.D. Miss. 1995) (hereinafter "*Moore*").

6         The *Microsoft* case provides a synopsis of the Mississippi Attorney General's well-

7    founded authority to bring a *parens* action of the states' citizens for violations of its antitrust

8    and consumer protections laws and explains how it is applicable to the situation in the instant

9    case.  Characteristics of a *parens* case brought by the Attorney General under his common law

10   authority would include one in which the state has a "'quasi-sovereign interest' in the litigation

11   to sue which is a 'State's interest in the well-being of its populace.'"  *Microsoft* at 3 - 4 (citing

12   *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel., Barez*, 458 U.S. 592, 607 (1982)).  In

13   applying the Attorney General's *parens* authority to injury from violations of Mississippi's

14   antitrust law, the *Microsoft* court concluded that, "the State has a quasi-sovereign interest in the

15   economic well-being of its citizens, *which includes securing the integrity of the marketplace*."

16   *Id*. at 7 (emphasis added).

17        Finally, the Defendants surmise that the Mississippi Attorney General has no authority

18   to redress injury to businesses, but rather that his authority is only limited to "natural persons."

19   The Defendants rely on a poor and perfunctory reading of the statutes for this significant

20   restriction of the Attorney General's authority; and state that "the statutes under which

21   [Mississippi] purports to sue does not give the State authority to sue on behalf of businesses."

22   Defendants' motion at 14.  This assertion is incorrect.  Both the MAA and the Consumer

23   Protection Act provide the Attorney General with broad authority to bring actions on behalf of

24   violations of the statutes, and in no way limit such actions to "natural persons", nor exclude

25   businesses.

26        As addressed above, the MAA provides a broad grant of authority to the Attorney

1   General, stating that cases for recovery of penalties for violation of antitrust laws "shall be

2   recovered alone in the name of the state on the relation of the Attorney General", and that "[a]ll

3   enforcement proceedings of the civil features of the antitrust laws. . .shall be brought by and in

4   the name of the State of Mississippi upon the relation of the Attorney General." Miss. Code

5   Ann. § 75-21-37. There are no limitations concerning the type of civil proceedings that he may

6   bring nor the type of victim for which he may recover.  Rather, it is a broad granting of

7   authority for the Attorney General to bring proceedings for all violations of the statute and

8   recover for those violations.

9        Furthermore, the MAA clearly contemplates recovery for harm to Mississippi

10  businesses.  Miss. Code. Ann. § 75-21-9 provides that "[a]ny person, natural or artificial,

11  injured or damaged by a trust and combine as herein defined, or by its effects direct or indirect,

12  may recover all damages of every kind sustained by him or it and in addition to a penalty."

13  Finally, the legislative intent was that the MAA be liberally construed in all courts to the ends

14  that trusts and combines be suppressed and the benefits arising from competition in business

15  preserved to the people of this state.  Miss. Code. Ann. § 75-21-29.  The plain meaning of the

16  language of the statute and its specified legislative intent clearly provides authority both to the

17  Attorney General and any injured party - both "natural persons" and businesses - to bring suit

18  for violations of the statute.

19        Like the MAA, the Mississippi Consumer Protection Act also provides for Attorney

20  General-representation of businesses.  Section 75-24-9 provides:

21        "[W]henever the Attorney General has reason to believe that any person
          is using, has used, or is about to use any method, act or practice
22        prohibited by [the Act] and that proceedings would be in the public
          interest, he may bring an action in the name of the state against such
23        person to restrain by temporary or permanent injunction the use of such
          method, act or practice."
24

25  Miss. Code. Ann. § 75-24-9.  Then, in Section 75-24-11, the Act explicitly provides that "the

26  Court may make such additional orders or judgments, including restitution, as may be

1   necessary to *restore to any person in interest* any monies or property, real or personal, which

2   may have been acquired by means of any practice prohibited by this chapter..." *Id.* § 75-24-11.

3   The statute defines persons as "natural persons, corporations, trusts, partnerships, incorporated

4   and unincorporated associations, and any other legal entity."  *Id.* § 75-24-3(a) (emphasis

5   added).  When these sections are read together, the plain meaning of the statute obviously

6   grants the Attorney General with authority to sue for violations of the Act and ask for

7   restitution on behalf of businesses. Accordingly, the Defendants' Motion to Dismiss as to

8   Mississippi should be denied.

9      **New Hampshire:**  Defendants assert that a specific grant of *parens* authority is

10   required before New Hampshire may bring an action pursuant to that doctrine. In support of

11   this claim, Defendants rely on the *California v. Frito-Lay, Inc.*, 74 F.2d 774 (9th Cir. 1973).

12   The case cited is inapposite, is not controlling, and is contrary to New Hampshire Supreme

13   Court.  Rather, under New Hampshire law, before it can exercise its *parens* authority, the State

14   must establish two criteria: first, that the State seeks to protect a "quasi-sovereign" interest, and

15   second, that a substantial segment of the population is threatened by the challenged conduct.

16   *State v. City of Dover*, 153 N.H. 181, 186-87 (2006) (citing *Alfred L. Snapp & Son,* 458 U.S. at

17   607.

18      To elaborate, New Hampshire law explicitly recognizes *parens* authority when the

19   State acts to protect "quasi-sovereign" interests.  Among such interests, the New Hampshire

20   Supreme Court has explicitly identified the "general economy of the state." *City of Dover*, 153

21   N.H. at 186 (citing *Bull v. HN Info. Sys.,* 16 F. Supp. 2d 90, 96 (D. Mass. 1998)).

22      Furthermore, the New Hampshire Supreme Court has held that the State has a quasi-

23   sovereign interest in protecting the economic health of its residents as well as that of the State.

24   ("[T]he State has a quasi-sovereign interest in protecting the health and well-being, both

25   physical and economic, of its residents...").  *Id.*  In this matter, the State of New Hampshire

26   seeks to ensure that a free market characterized by robust competition exists in the State, as

1   such is necessary for the economic health of the State and its residents.  Thus, the State has

2   entered into this action to protect its quasi-sovereign interests, and the first prong of the *City of*

3   *Dover* test is met.

4          Under New Hampshire law, the State must also show that a "sufficiently substantial

5   segment of the population is affected by the challenged conduct."  *Id.* at 187 (citing *Bull HN*

6   *Info. Sys.*, 16 F. Supp. 2d at 98).   While avoiding a strict numerical threshold for this

7   calculation, the New Hampshire Supreme Court held that the State needs to be more than

8   merely a nominal party and do more than simply identify a group of residents who were

9   harmed.  However, the State may show, and the Court must consider, the indirect effects of the

10  injury when determining the magnitude of injury to the population of the State.  *Id.* (citing

11  *Alfred L. Snapp & Son, Inc.,* 458 U.S. at 607).

12         Defendants claim that since the State of New Hampshire may not sue in the name of

13  indirect purchasers under its Combinations and Monopolies Act, it may not exercise its *parens*

14  authority to protect indirect purchasers from violations of that Act.  This is wrong for two

15  reasons.   First, New Hampshire seeks, through its *parens* action, to restore a competitive

16  marketplace for DRAM products.  N.H. Const. Pt. 2, Art. 83 ("Free and fair competition in the

17  trades and industries is an inherent and essential right of the people and should be protected

18  against all monopolies and conspiracies which tend to hinder or destroy it."); *see also McIntire*

19  *v. Borofsky,* 95 N.H. 174, 178 (1948).  Furthermore, to the extent direct purchasers in New

20  Hampshire were harmed by the defendant's actions, New Hampshire's *parens* claim should

21  stand.

22         **New Mexico:**  New Mexico's Attorney General relies on the powers granted to her by

23  the Legislature.  Defendants fail to consider the Legislature's grant of authority.  The broad

24  authority bestowed upon the Attorney General is set forth in N.M. Stat § 8-5-2 (1978), in two

25  subsections, providing that the Attorney General shall:

26

(B) prosecute and defend in any other court or tribunal all actions and proceedings, civil or criminal, in which the state may be a party or interested when, in [her] judgment, the interest of the state requires such action.

(C) appear before local, state and federal courts . . . to represent and to be heard on behalf of the state when, in [her] judgment, the public interest of the state requires such action.

U.S. District Court Judge Burciaga considered these two sections in *New Mexico v. Scott & Fetzer Co.,* No. 81-054-JB, 1981 WL 2167, 1981-2 Trade Cases P 64, 439 (D.N.M. 1981). He noted that the legislature neither included nor excluded *parens*. It observed that:

> The statutes authorize suits in the name of the State. This action is brought in the name of the State, and nothing in the statutes indicate that the fact that the State is suing on behalf of others renders such a suit beyond the pale of the Attorney General's statutory authority. Such a reading of the statutes would mean that the Attorney General could never bring or defend a suit in the State's name on behalf of others. This result could not have been what the New Mexico legislature intended.

*Id.* at *2.

Judge Burciaga also considered the *parens* authority granted in the Clayton Act, 15 U.S.C.A. § 15h, and determined that "[t]he New Mexico legislature has not acted to deprive the Attorney General of this authority. This indicates that the legislature has no objection to the exercise of this authority." *Id.* Other courts have since accepted the *parens* authority of New Mexico's Attorney General. *Lorazepam*, 205 F.R.D. at 369 (D.D.C. 2002); *Relafen*, 221 F.R.D. 260 (D. Mass. 2004); *see also* Kevin J. O'Connor, *Is the Illinois Brick Wall Crumbling?*, 15 Antitrust 34, 36 & nn.21-22 (2001). The Attorney General may represent the citizens of New Mexico.

**North Dakota:**  North Dakota has long recognized that the Attorney General, acting on behalf of the State, has broad authority, independent of statute, to institute legal proceedings to protect the public interest and the general welfare of the people of the State. *State ex rel. Burgum v. Hooker*, 87 N.W.2d 337 (N.D. 1957). In *Hooker*, the Attorney General, on behalf of the State of North Dakota, brought an action to enjoin the Defendants from conducting a usurious, small loan business. *Id.* at 339. The Defendants argued the State did not have

authority to bring an action on behalf of citizens of the State.  The court rejected that argument and explained: "It has been repeatedly held that the state has the right, independent of any statutory provision, to institute a suit in any of its courts when it is required for the general welfare of its people.  'It possesses this right both in its sovereign capacity and by virtue of its corporate rights.'"  *Hooker*, 87 N.W.2d at 340 (citations omitted).  More recently, in *State v. Haggerty*, 580 N.W.2d 139, 147 (N.D. 1998), the North Dakota Supreme Court stated: "Not every aspect of the powers of a constitutional officer like the Attorney General may be conveniently spelled out by statute, and the Legislature has not attempted to do so." As such, contrary to Defendants' argument, the statutes under which North Dakota brings this action need not include a specific legislative grant of *parens* authority for the Attorney General to represent North Dakota citizens.  As the Court in *Haggerty* said:

> "[T]he legislature has no constitutional power to abridge the inherent powers of the Attorney General despite the fact that the constitution provides that the 'duties of the * * * Attorney General * * * shall be as prescribed by law.' (Const.Sec.83); *State v. Erickson*, 72 N.D. 417, 422, 7 N.W.2d 865, 867 (1943). The Legislature may not strip officers "'imbedded in the Constitution' of a portion of their inherent functions."

*Ex parte Corliss*, 16 N.D. 470, 476-77, 114 N.W. 962, 965 (1907) (quoting *State ex rel. Fausett v. Harris*, 1 N.D. 190, 194, 45 N.W. 1101, 1102 (1890)).  *Haggerty*, 580 N.W.2d at 146-47.  Defendants' motion to dismiss as to the state of North Dakota should be denied.

**Pennsylvania:**  Not only does the Pennsylvania Attorney General have the authority to represent the Commonwealth and its citizens in any action brought for the violation of the antitrust laws of the United States and the Commonwealth, it may also do so under common law.  In addition, as further described below, the California Cartwright Act allows for actions to be filed by out-of-state governmental entities and there is no statute that prohibits the Pennsylvania Attorney General from doing so.

**South Carolina:**  Defendants contend that the Attorney General of South Carolina's claims on behalf of the state, its agencies and consumers should be dismissed because (a) the

1    Attorney General is not authorized to sue as *parens* on behalf of natural persons, (b) the South

2    Carolina Attorney General is not authorized to bring a *parens* action claim under California

3    Cartwright Act, and if so, the Attorney General cannot collect damages; and (c) the Attorney

4    General is not authorized to bring a *parens* claim for damages, citing South Carolina antitrust

5    law.  The Defendants' motion to dismiss should be denied.  Defendants' parens arguments will

6    be addressed here and their Cartwright Act argument will be addressed *infra*.

7         The South Carolina Supreme Court recently stated that "[a]s the chief law officer of the

8    State, [the Attorney General] may, in the absence of some express legislative restriction to the

9    contrary, exercise all such *power and authority as public interests may from time to time*

10    *require*, and may institute, conduct and maintain all such suits and *proceedings as he deems*

11    *necessary for the enforcement of the laws of the State, the preservation of order*, and the

12    *protection of public rights*."  *Condon v. Hodges*, 349 S.C. 232, 239, 562 S.E.2d 623,627 (2002)

13    (citing *State ex rel. Daniel v. Broad River Power Co.*, 157 S.C. 1, 68, 153 S.E. 537, 560

14    (1929), *aff'd*, 282 U.S. 187 (1930) (citation omitted and italics added by *Daniel* court)).  The

15    United States District Court in *Cardizem* cited the *Condon v. Hodges* case as an interpretation

16    by our state court that the South Carolina Attorney General possesses *parens* authority, or its

17    functional equivalent, as a matter of common law.  *Cardizem*, 218 F.R.D. at 521.

18         Additionally, the SCUTPA provides the Attorney General with *parens* authority in a

19    statutory context by allowing the Attorney General to initiate proceedings that are in the public

20    interest, and, further to request that the court issue orders or judgments that may be necessary

21    to restore any *person* who has suffered any ascertainable loss of monies or real or personal

22    property that have been acquired by means or practices that are in violation of SCUTPA.  *See*

23    S.C. Code Ann. § 39-5-50.  Section 39-5-10 of SCUTPA defines "person" as follows:

24    "'Person' shall include natural persons, corporations, trusts, partnerships, incorporated or

25    unincorporated associations and any other legal entity."  S.C. Code Ann. § 39-5-10(a).

26         Further, Defendants contend by citing a provision of the South Carolina's antitrust

1   laws, specifically S.C. Code Ann. § 39-3-190, that the South Carolina laws do not authorize the

2   Attorney General to bring *parens* claims for damages allegedly sustained by its state residents

3   and otherwise would limit the types of antitrust enforcement of our state antitrust laws.  South

4   Carolina is not proceeding in this action pursuant to its state antitrust laws, but pursuant to its

5   common law *parens* authority, *see Condon*, 349 S.C. at 232, 562 S.E.2d at 623, and its

6   statutory *parens* authority as set forth in SCUTPA.  The United States District Court in South

7   Carolina has interpreted our antitrust laws to be limited to intrastate activity while SCUTPA is

8   not limited to in-state conduct.  *See Cheshire v. Coca-Cola Bottling Affiliated, Inc.,* 758 F.

9   Supp. 1098 (D.S.C. 1990).

10      **Tennessee:**  Defendants' contention that Tennessee has no authority to bring a *parens*

11  action is without merit.  The Attorney General of Tennessee is a constitutional officer, 1870

12  Tenn. Const. Art. VI, § 5, with duties and powers also set forth by statute, Tenn. Code Ann. §

13  8-6-109, and all common law powers of an Attorney General.  *State v. Heath*, 806 S.W.2d 535,

14  537 (Tenn. Ct. App. 1990); *see also State ex rel. Inman v. Brock*, 622 S.W.2d 36, 41 (Tenn.

15  1981) ("A broad discretion is vested in this officer in determining what matters may . . . be of

16  interest to the people . . . the office of Attorney General is ancient in its origin . . . has a wide

17  range of powers at common law . . . in addition to his statutory powers.")

18      Tennessee's public policy against anticompetitive behavior is in its Constitution and,

19  since 1891, in the Tennessee Trade Practices Act, Tenn. Code Ann. § 47-25-101 *et seq*.

20  ("TTPA").  Tennessee courts have held that the Attorney General has implied authority to

21  investigate violations of the Act, even though not mentioned expressly.  *State ex rel. Shriver v.*

22  *Leech*, 612 S.W.2d 454, 457 (Tenn. 1981).   Tennessee's clear public policy against

23  anticompetitive behavior and the implied power to investigate require a conclusion that its

24  Attorney General has authority to bring a *parens* action to vindicate the public interest

25  including seeking disgorgement of ill-gotten gain.  That neither the constitution nor the TTPA

26  specifically refers to "*parens patriae*" authority does not limit this authority because the words

"*parens patriae*" are not used in statutes granting such authority to state officials.[17]  Federal district courts have also recognized the Tennessee Attorney General's authority to bring a *parens* action on behalf of Tennessee consumers under the TTPA.[18]

**Wisconsin:**  The Attorney General of Wisconsin alleges its claims on behalf of consumers pursuant to Wis. Stat. §§ 133.16-133.17, which grant the Wisconsin Attorney General broad authority to prosecute antitrust cases.  Generally, the Wisconsin Attorney General has no authority to prosecute litigation on behalf of Wisconsin citizens unless a statute grants such authority.  *State v. City of Oak Creek,* 605 N.W.2d 526, 533 (Wis. 2000).  The Wisconsin antitrust statute, however, specifically empowers the Wisconsin Attorney General to prosecute any and all violations of state antitrust law, regardless of who the victims of these violations may be.  *See* Wis. Stat. § 133.17 (conferring authority upon the Attorney General to "institute, manage, control and direct . . . all prosecutions for violations of [the Wisconsin antitrust statute]").  The broad powers conferred by the Wisconsin legislature authorize the Attorney General to seek redress for consumers harmed by a violation of the Wisconsin antitrust statute, as the Complaint alleges here.  *See Lorazepam*, 205 F.R.D. at 386 ("Wisconsin. . .ha[s] express statutory authority to represent consumers in a capacity which is the functional equivalent of *parens patriae*.").  Defendants' motion to dismiss as to Wisconsin should be denied.

## IV.    THE MISSISSIPPI, TENNESSE, WISCONSIN, MARYLAND AND ILLINOIS STATUTES APPLY TO ACTIVITIES IN INTERSTATE, AS WELL AS INTRASTATE, COMMERCE

Defendants contend that claims by certain states fail to allege the required "intrastate" component because the Complaint states, "Defendants and their co-conspirators engaged in the

---

[17] *E.g.*, statutes governing children are recognized as vesting juvenile courts with *parens* authority.  *Lokey v. Griffin*, 45 Tenn. App. 236, 322 S.W.2d 239 (Tenn. Ct. App. 1958).

[18] *Cardizem*, 218 F.R.D. at 508; *Lorazepam*, 205 F.R.D. at 386 (recognizing that *Heath*, 806 S.W.2d 535, suggests that the Attorney General has authority to bring a *parens* action under the TTPA).  *But see Mylan*, 62 F. Supp. 2d at 51.

1   business of marketing and selling DRAM *throughout the United States*."  Defendants' Brief at

2   pg. 25 (emphasis added.)  However, all of the challenged states allow claims for antitrust

3   activity occurring outside their state boundaries.

4        **Mississippi:**  The Mississippi Antitrust Act, a broad statute encompassing interstate

5   actions, has been applied many times to nationwide conspiracies.  *See Moore*, 900 F. Supp. at

6   32; *Canadian Export*, 350 F. Supp. 2d at 171.  As explained in *Moore* and *Canadian Export*,

7   there is no Supreme Court case holding that Mississippi's Act is solely applicable to intrastate

8   issues.  In fact, in *Canadian Export*, the court notes "[b]oth sides point to Standard Oil. . . in

9   support of their respective positions . . . ."  350 F. Supp. 2d at 171. The *Microsoft* case cited by

10  Defendants also acknowledges that the Supreme Court has not ruled that "Mississippi antitrust

11  law is limited to intrastate conspiracies*." In re Microsoft Corp. Antitrust Litig.*, MDL No.

12  1332, 2003 WL 22070561, at *2, n.4, 2003-2 Trade Cases P 74,138 (D.Md. Aug.22, 2003).

13        Defendants' reliance on *Standard Oil Co. v. State ex. rel. Attorney General,* 65 So. 468

14  (Miss. 1914) is misplaced.  In that case, the court describes sales and distribution within

15  Mississippi as intrastate in character when made "after the. . .products [have] been received. .

16  .in this state and . . . incorporated into the general mass of property therein."  *Standard Oil*, 65

17  So. at 470.  Applying *Standard Oil,* the *Canadian Export* court also found goods imported into

18  Mississippi to be intrastate in character because some sales of the end product would occur

19  wholly within Mississippi, after the end product had been "incorporated into the general mass

20  of property" in the state, thereby falling within the compass of the Mississippi antitrust

21  statute." *Canadian Export*, 350 F. Supp. at 171.

22        **Tennessee:**  Defendants mistakenly rely on *Freeman Ind., LLC v. Eastman Chem. Co.*,

23  172 S.W.3d 512 (Tenn. 2005).  In *Freeman*, the Tennessee Supreme Court held that indirect

24  purchasers, including out of state indirect purchasers, may sue under the TTPA.  *Id.* at 520.

25  "According to its plain language, the TTPA prohibits arrangements that decrease competition

26  or affect the prices of goods even if those goods arrived in Tennessee through interstate

commerce. The act does not contain any language indicating that the legislature intended that the scope of the act be limited to intrastate commerce." *Id.* at 522. The Court specifically refused to apply any standard focusing on anticompetitive *conduct,* instead placing the focus on the "*effect* of the anticompetitive conduct on Tennessee trade or commerce" to determine applicability. *Id.* Thus, Tennessee is not required to allege any anticompetitive conduct taking place in the State of Tennessee.

The Court then considered the proper impact to support a claim under the TTPA, holding that the appropriate standard is whether "the alleged anticompetitive conduct affects Tennessee trade or commerce to a substantial degree." *Id.* at 523. Only then did the Court look to see if the plaintiff had stated a claim. *Freeman* is easily distinguished from this case. The plaintiff was **not** a Tennessee citizen or consumer but a New York corporation that was an "end-user of food products containing sorbates and purchases these products at supermarkets in New York". *Id. at 516.* There was no proof that the sorbates contained in the products purchased by the plaintiff in New York were manufactured by the lone Tennessee defendant corporation. *Id.* at 524. The significance of *Freeman* is the fact that Freeman paid higher prices *in New York* did not establish an impact on Tennessee's economy sufficient to survive summary judgment. In fact, the Court notes,

> The determination of whether an effect is substantial does not involve "mathematical nicety." Rather, the test is pragmatic, turning upon the particular facts of the case. The anticompetitive conduct, however, need not threaten the demise of Tennessee businesses or affect market prices to substantially affect intrastate commerce.

*Id.* at 523-24.(internal citations omitted). In addition, the TTPA itself makes clear that paying higher prices is itself an injury under the TTPA. Tenn. Code Ann. § 47-25-101. The Complaint in this action alleges that consumers in every state paid higher prices for DRAM and DRAM-containing goods than they would have paid absent the price-fixing agreements. This clearly establishes a claim under the TTPA.

**Wisconsin:** The Defendants claim that Wisconsin law requires plaintiffs to allege

particularized conduct and effects within Wisconsin to allege jurisdiction under the Wisconsin antitrust statute. The Wisconsin Supreme Court has held to the contrary. *Olstad v. Microsoft Corp.*, 700 N.W.2d 139, 158 (Wis. 2005). In *Olstad*, the Wisconsin Supreme Court held that a plaintiff may allege a claim based entirely on conduct occurring outside Wisconsin, so long as the plaintiff alleges that the conduct "substantially affects" Wisconsin. *See id.* The Court never implied that the plaintiff must further allege that these effects were somehow specially focused on Wisconsin as compared to other states. *See id.*

Wisconsin law requires courts to interpret the Wisconsin antitrust statute with "the most liberal construction to achieve the aim of competition." Wis. Stat. § 133.01. Only two reported Wisconsin Court of Appeals cases have interpreted the *Olstad* holding in light of this legislative command. *See Meyers v. Bayer AG,* 718 N.W.2d 251, 254, *petition for review granted* (July 25, 2006) (No. 2003AP2840); *Szukalski v. Crompton Corp.*, 2006 WI App 195, No. 2003AP3132, 2006 WL 2729665 (Wis. Ct. App. Sept. 26, 2006). The Defendants cite the *Szukalski* case, but omit any reference to the *Meyers* case, which is currently on appeal to the Wisconsin Supreme Court and is contrary to the Defendants' position.

In *Meyers*, the Wisconsin Court of Appeals held that a class of indirect purchasers adequately alleged a claim under the Wisconsin antitrust statute when they pleaded that the drug manufacturers' conduct (all of which occurred outside of Wisconsin) caused plaintiffs to pay higher prices for products they purchased in Wisconsin. *Meyers*, 718 N.W.2d at 256. The plaintiffs made no claim that the effect on prices in Wisconsin was somehow different than the effect on prices across the nation. The court noted that the "people of Wisconsin are substantially affected if the price of a product is fixed as a result of illegal practices." *Id.* at 255-56. The court further noted that Wisconsin residents who purchased the product "were forced to pay increased prices and this caused an economic loss to the class members" and that no more specific allegation was necessary. *Id.* at 256.

In contrast, the standard articulated in the *Szukalski* case cited by the Defendants,

1   attempts to compare the harm allegedly caused in Wisconsin with the harm caused elsewhere.

2   *Szukalski*, 2006 WI App 195 at ¶ 24.   In *Olstad*, however, the Wisconsin Supreme Court

3   focused solely on the harm caused in Wisconsin.   *Olstad*, 700 N.W.2d at 158.   Harm that the

4   defendants also may have caused in other states was simply not part of the analysis, nor should

5   it have been.  *See id.*

6          Yet the Defendants argue that Wisconsin should have to plead some sort of special

7   injury compared to other states.  *See, e.g.*, Defendants' Motion at 16 (arguing that effects in

8   Wisconsin must be different than national effects).   Under this approach, a defendant that

9   focuses its harm in Wisconsin would be subject to treble damages under Wisconsin law, while

10  the same defendant causing equal (or even greater) harm in Wisconsin would be immune from

11  suit under Wisconsin law so long as the defendant also caused widespread harm across the

12  country.  That result is illogical and the Court should reject it.

13         Understandably, the reasoning employed by the Defendants is found nowhere in the

14  *Olstad* opinion.   Moreover, the analysis contravenes the language of the Wisconsin antitrust

15  statute itself, which directs courts to interpret the statute as broadly as possible.  *See* Wis. Stat.

16  § 133.01.  Accordingly, the Court should reject the Defendants' analysis and follow instead the

17  clear command of the Wisconsin Supreme Court in *Olstad*.  *See Comm'r of Internal Revenue*

18  *v. Estate of Bosch*, 387 U.S. 456 (1967) (even in a non-diversity case, federal court should

19  follow "state law as announced by the highest court of the State").

20         All that *Olstad* requires is that the State of Wisconsin allege that Defendants' conduct

21  "substantially affected" Wisconsin.  *Olstad*, 700 N.W.2d at 158.  The Complaint alleges that as

22  a result of Defendants' price-fixing conspiracy consumers in Wisconsin (and elsewhere) have

23  paid more for DRAM purchased from the Defendants. The complaint further alleges that

24  "[t]hese violations substantially affected the people of Wisconsin and had impacts within the

25  State of Wisconsin."   Compl. ¶ 176.   Plainly, these allegations are sufficient to assert

26  jurisdiction under *Olstad*.

1      **Maryland:** The MATA states that in determining whether a violation has occurred,

2  "the relevant market or effective area of competition may *not be limited by the boundaries of*

3  *the State*." Md. Code Ann. Com. Law § 11-202(a)(3) (emphasis added). MATA is to be

4  "liberally construed to serve its beneficial purposes." Md. Code Ann. Com. Law §11-202(b).

5  From its inception MATA has been interpreted to assert jurisdiction over activities in interstate

6  commerce. *See* W. Reynolds & J. Wright, *A Practitioner's Guide to the Maryland Antitrust*

7  *Act*, 36 Md. L. Rev. 323, 340 (1976).

8      Heeding these statutory admonitions, in *Maryland v. Philip Morris, Inc.*, 1997 WL

9  540913 (Md. Cir. Ct. May 21, 1997) the court found that an antitrust count was properly filed

10  against nineteen multinational tobacco companies and others to recover money expended by

11  the State through its Medicaid program to treat its citizens for smoking-related illnesses. After

12  quoting MATA § 11-202 (a), the court stated that the action was "consistent with the broad

13  purpose set forth by the statute, as liberally construed pursuant to the requirements of the

14  General Assembly." *Id.* at *19; *cf. Feldman*, 210 F. Supp. 2d at 294; *Maryland v. Philip*

15  *Morris Inc.*, 934 F. Supp. 173 (D. Md. 1996). Here, ¶ 29 of the Complaint, alleging

16  "marketing and selling DRAM throughout the United States" sufficiently expresses a nexus

17  with commerce in Maryland to assert jurisdiction under MATA.

18      **Illinois:** Defendants assert that "[c]ourts have consistently held that Illinois's antitrust

19  laws apply only to intrastate commerce and do not apply to interstate commerce," citing two

20  cases dating from the 1950's and 1960's. What they fail to tell this Court is that after those

21  cases were decided, the Illinois legislature amended the Illinois Antitrust Act ("IAA") in 1969

22  to address this very issue. Since then the statute has provided, "No action under this Act shall

23  be barred on the grounds that the activities or conduct complained of in any way affects or

24  involves interstate or foreign commerce." 740 Ill. Comp. Stat. § 10/7.9 (2006). This

25  amendment put to rest any question as to the IAA's applicability to acts that occur in interstate

26  or foreign commerce. For example, Illinois courts have allowed a claim of a multi-state

conspiracy, noting that "[p]rice increases in a market which encompasses part of Illinois are a sufficiently substantial effect on Illinois commerce for [the plaintiff] to seek relief under the Illinois Antitrust Act." *Mr. Frank, Inc. v. Waste Mgmt., Inc.*, 591 F. Supp. 859, 869 (N.D. Ill. 1984). A federal district court held that the IAA encompassed a national conspiracy, holding that it is "not limited to the geographical boundaries of the State of Illinois." *Lorazepam*, 295 F. Supp. 2d at 48.

## V.   TEXAS LAW PERMITS DISGORGEMENT, RESTITUTION AND DAMAGES

Section 15.21(b) of the Texas Free Enterprise and Antitrust Act of 1983 grants the statutory authority to issue an injunction and, necessarily with it, the full range of equitable remedies, including the power to grant restitution and compel disgorgement of damages. Tex. Bus. & Com. Code § 15.21(b). The statute is a non-exclusive grant of judicial authority: "In any such suit, the court shall apply the same principles as those generally applied by courts of equity in suits for injunctive relief against threatened conduct that would cause injury to business or property." *Id.* Case law dictates that this intent be read broadly to include disgorgement and restitution, as well as injunctive relief.

As the United States Supreme Court has made clear:

> [An order for recovery and restitution] may be considered as an equitable adjunct to an injunction decree. Nothing is more clearly part of the subject matter of a suit for injunction than the recovery of that which has been illegally acquired and which has given rise to the necessity for injunctive relief.

*Porter*, 328 U.S. at 399. The 11th Circuit has more recently affirmed this ruling: "As *Porter* makes plain, absent a clear command to the contrary, the district court's equitable powers are extensive. Among the equitable powers of a court is the power to grant restitution and disgorgement." *FTC v. Gem Merch.*, 87 F.3d 466, 469 (11th Cir. 1996). The Court in *Porter* further held that these broad powers remain intact unless there is a statute that specifically or inferentially restricts the court's jurisdiction in equity:

> The comprehensiveness of this equitable jurisdiction is not to be denied

> or limited in the absence of a clear and valid legislative command. Unless a statute in so many words or by a necessary and inescapable inference restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.   The great principles of equity, securing complete justice, should not be yielded to light inferences or doubtful construction.

*Porter*, 328 U.S. at 398.  The Supreme Court of Texas has from the earliest days of statehood held that the courts should use the jurisdiction of equity "to furnish a plain, complete and adequate remedy."   *Grassmeyer v. Beeson*, 18 Tex. 753, 1857 WL 5028, at *9 (1875). Therefore, a statute encompassing injunctive relief, and not expressly addressing other types of equitable relief, is presumed to authorize all inherent equitable powers to formulate a complete remedy.   And since section 15.21(b) textually expands the court's authority from simply issuing an injunction to the broader authority to issue relief "generally applied by courts of equity," the statute does not necessarily exclude the availability of restitution or disgorgement. Tex. Bus. & Com. § 15.21(b), *see also* Tex. Rev. Civ. Stat. art. 581-32(c) (2006) (Texas Securities Act recognizes that injunctive relief incorporates restitution as an equitable remedy).

Lastly, when the public interest is involved in a matter, such as in this case, the court's equitable powers assume an even broader and more flexible character than when only a private controversy is at stake.  *See Campbell v. McGruder*, 580 F.2d 521, 543 (D.C. Cir. 1976) ("It is a familiar doctrine that the extent to which a court of equity may grant or withhold its aid, and in the manner of molding its remedies, may be affected by the public interest involved."); *U.S. v. Exxon Corp.*, 561 F. Supp. 816, 856-857 (D.D.C. 1983) (Court interpreted an environmental pollution statute to order disgorgement "in the exercise of its broad equitable powers to order restitution").

## VI.   STATE ATTORNEYS GENERAL MAY BRING CLAIMS UNDER THE CALIFORNIA CARTWRIGHT ACT.

State Attorneys General may bring *parens* clams, class action claims and other representational claims under the Cartwright Act as long as their own state laws do not mandate otherwise.

**A.   California's Cartwright Act Allows State Attorneys General to File *Parens* Actions on Behalf of Out-of-State Citizens**

State Attorneys General can bring *parens* claims on behalf of their citizens under the Cartwright Act as long as their own state laws do not forbid them from doing so.  California generally allows out-of-state residents to file class action/single lawsuits in California courts asserting California claims.  Moreover, section 16750(a) provides that "any person" may bring a claim under the Cartwright Act.  Nowhere does the Cartwright Act purport to limit the procedural devices by which that person may bring his or her claim; for example, that person may bring a class action even though the Cartwright Act itself contains no provisions providing for class actions.  *See Bruno v. Superior Court*, 127 Cal. App. 3d 120, 134-35 (Cal. Ct. App. 1981).  There, the state appellate court rejected the notion that section 16760(a)(1) operated to preclude class actions, reasoning that there were no indicia of legislative intent that this section was to have exclusionary effect.  *Id.* (discussing fluid recovery via class action); *see also State v. Levi Strauss*, 41 Cal. 3d 460, 478 (1986).  By analogy, nothing in section 16760(a)(1) indicates that *parens* actions, as opposed to *class* actions, are precluded.

Further, just as *Pacific Gas & Electric Co. v. County of Stanislaus*, 16 Cal. 4th 1143, 1153 (1997), suggests that other State Attorneys General may represent out-of-state government agencies, that case also suggests that other State Attorneys General can bring actions on behalf of natural persons from their States.

California Business & Professions Code section 16760(f) states that "[t]he powers of this section are in addition to and not in derogation of the powers granted to the Attorney General by common law with respect to bringing actions *parens patriae*."  Cal. Bus. & Prof. Code § 16760.  Nothing about this subdivision suggests that the California Legislature intended to, or did, exclude common law *parens* actions by other State Attorneys General.

Finally, section 16750(e) of the Cartwright Act constitutes a recognition by the California Legislature that sister States may bring *parens* claims under that Act on behalf of

1   their own natural persons, just as the California Attorney General may bring *parens* claims

2   under that Act on behalf of California's natural persons, that may need to be pooled together.

3   Consequently, Defendants' Motion to Dismiss as to the out-of-state *parens* claims brought

4   under the Cartwright Act should be denied.

5   **B. Out-of-State Government Entities Are "Persons" Entitled to Assert Claims**

6   **Under the Cartwright Act**

7   The Cartwright Act allows the State Attorneys General to file actions on behalf of out-

8   of-state governmental entities. California allows out-of-state residents to file class action/single

9   lawsuits in California courts asserting California claims as long as there is a sufficient nexus to

10  the State, e.g., as long as a substantial amount of injury-producing conduct occurred in

11  California.[19]   Here, Defendants' motion does not challenge the nexus with the State of

12  California.

13  Out-of-state governmental agencies are "persons" under section 16750 (a) and treated

14  the same as out-of-state residents.  Section 16750(a) provides:

15
16          Any *person* who is injured in his or her business or property by reason of anything
            forbidden or declared unlawful by this chapter, may sue therefore in any court having
17          jurisdiction in the county where the defendant resides or is found, or any agent resides
            or is found, or where service may be obtained regardless of whether such injured
18          person dealt directly or indirectly with the defendant."

19  Cal. Bus. & Prof. Code § 16750(a) (emphasis added.).   California treats out-of-state

20  government plaintiffs exactly as it does any other plaintiff in granting them the right to sue

21  where a statute refers to a "person" or "persons."[20]

22  [19] *See, e.g., Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036, 1059-60,
23  1062-65 (1999); *NW. Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 225-27 & n.17
    (Cal. Ct. App. 1999); *J.P. Morgan v. Superior Court*, 113 Cal. App. 4th 195, 221 (Cal. Ct.
24  App. 2003); *Wershba v. Apple Computers, Inc.*, 91 Cal. App. 4th 224, 241-44 (Cal. Ct. App.
    2001).

25  [20] *See FTC v. MTK Mktg. Inc.*, 149 F.3d 1036, 1039-40 (9th Cir. 1998) (FTC had standing as a
    plaintiff to enforce California's bond requirement for telephonic sellers where Cal. Bus. &
26  Prof. Code § 17511.12(c)(2) granted such standing to the "Attorney General, district attorney,

California views the Sherman Act as being helpful when interpreting the reach and scope of the Cartwright Act. *See, e.g., State v. Texaco*, 46 Cal. 3d 1147, 1164 (1988). Similar Sherman Act language has universally been held to include state agencies and political subdivisions.[21]  *See, e.g., Georgia v. Evans*, 316 U.S. 159 (1942) (a state is a person); *Chattanooga Foundry & Pipe Works v. Atlanta*, 203 U.S. 390, 396 (1906) (political subdivision is a person). In *Pfizer, Inc. v. Government of India*, 434 U.S. 308 (1978), the Supreme Court concluded the language in the Sherman Act that allowed "a *person* injured in his business or property" to "sue therefore in any district court of the United States" encompassed *foreign governments just as it had previously found that it encompassed state governments.*  Thus, the Cartwright Act's definition of "person" includes out-of-state government agencies.

California, as a rule of statutory construction, interprets the term "person" as including government agencies *unless* the inclusion of government agencies within such a general definition of "person" would operate to infringe their sovereign governmental powers.[22] Allowing out-of-state government agencies to sue as plaintiffs under the Cartwright Act does not operate to infringe their sovereign governmental powers.

The legislative history of the Cartwright Act also indicates out-of-state governmental entities are persons. When the Legislature amended California Business & Professions Code

_____

city attorney, or *any other person* who obtained a judgment for restitution against the seller. . .")

[21] 15 U.S.C. § 12 defines "persons" as "corporations and associations." The U.S. Supreme Court, in addition to other courts, has found such language to include states and political subdivisions as "persons." Cal. Bus. & Prof. Code § 16702 defines "persons" as "corporations, firms, partnerships and associations."

[22] *See, e.g., City of Los Angeles v. City of San Fernando*, 14 Cal. 3d 199, 276-77 (1975), *disapproved of on another point in City of Barstow v. Mojave Water Agency*, 23 Cal. 4th 1224, 1248 (2000); *People v. Centr-O-Mart*, 34 Cal. 2d 702, 703-04 (1950); *Hoyt v. Bd. of Civil Service Comm'n*, 21 Cal. 3d 399, 402 (1942); *MTK Mktg.*, 149 F.3d 1036, 1038, 1039-40 (9th Cir. 1998); s*ee also Wells v. One2One Learning Found.*, 39 Cal. 4th 1164, 1192 (2006) (this maxim of statutory construction applies where the legislative intent is unclear).

section 16750(b) to expressly include "the State and any of its political subdivisions and political entities" as a person, the legislature also enacted the following explanatory legislation: "at the time of the original enactment of section 16750, and at all times since, it intended that the State, its political subdivisions or public agencies, be included within the meaning of the word 'person'." 1961 Cal. Stats. c. 1023, West's Annotated Cal. Codes, Bus. & Prof. Code § 16750, Historical and Statutory Notes. Section 16750(b) was enacted to remove any doubts concerning the power of local government to bring antitrust actions under the Cartwright Act; not to abrogate existing rights under section 16750(a). *County of Stanislaus*, 16 Cal. 4th at 1153. Thus, the California Legislature intended from the date of enactment, and still intends, that the term "person" in section 16750 be construed broadly to include government agencies; conversely, nothing in this history suggests that sister state agencies were intended to be carved out of section 16750's reach.

California Supreme Court precedent also indicates that section 16750 should be broadly construed to include out-of-state government entities. In *County of Stanislaus*, 16 Cal. 4th at 1155-56, the California Supreme Court held that under section 16750, Stanislaus County could bring a civil Cartwright Act action. Section 16750(e) provides that when the California Attorney General brings an action alleging federal or state antitrust violations, he or she can pool legal resources with "any other state, or any department or agency thereof, any county city, public corporation, or public district of this state or of any other state, that has brought or intends to bring a similar action." Cal. Bus. & Prof. Code § 16750(e). The California Supreme Court interpreted this provision as a recognition on the part of the Legislature that counties could bring a civil action under the Cartwright Act. *County of Stanislaus*, 16 Cal. 4th at 1157. Because this same provision refers to actions by "other States," section 16750(e) constitutes legislative recognition that sister States can bring civil Cartwright actions.

Interpreting the term "person" to include out-of-state government entities as plaintiffs serves the deterrent goals of the Cartwright Act by ensuring that defendants do not benefit

1    from their ill-gotten gains.[23]  Consequently, Defendants' Motion to Dismiss as to the out-of-

2    state Cartwright Act claims should be denied.

3        **C.  The state Attorneys General have the power to file their Cartwright Act claims**

4        Per the analysis above, the burden falls on the Defendants to point to relevant

5    provisions of state statutory or state constitutional law that divest the State Attorneys General

6    of the common law power to bring these *parens* claims. For the reasons stated below, they can

7    not do so.

8        **Delaware:**  Defendants' motion incorrectly implies that the only source of authority

9    available to the Delaware Attorney General is the Delaware Antitrust Act.  The Attorney

10   General has both common law authority and statutory authority to bring a California

11   Cartwright Act claim on behalf of the State and its entities.

12       The Delaware Attorney General not only has the powers, duties and authority described

13   by statute, but also powers, duties and authority that are vested in and imposed upon him by

14   the Constitution and common law.  Del. Code Ann. tit. 29, § 2504(1).  "The Attorney General

15   is a constitutional officer vested with the broad authority to exercise numerous and varied

16   powers.  Absent legislative restriction, the Attorney General may exercise all such power and

17   authority as the public interest may from time to time require."  *Seth v. State*, 592 A.2d 436,

18   439 (Del. 1991).  The authority of the Delaware Attorney General to appear in Court for the

19   State or its immediate agencies has been "*universally recognized*."  *Id.*  The Delaware Attorney

20   General is also authorized by statute to represent as counsel in all proceedings or actions which

21   may be brought on behalf of all officers, agencies, departments, boards, commissions and

22   instrumentalities of state government.  *See* Del. Code Ann. tit. 29, § 2504(3).

23   _____

24   [23] *Compare, e.g., Centr-O-Mart*, 34 Cal. 2d at 704 (1950) (the State was a "person" who could
     sue to enforce the Uniform Practices Act because it served the public interest), *with State ex*
25   *rel. Harris v. PriceWaterhouseCoopers, LLP*, 39 Cal. 4th 1220, 1237-38 (2006) (distinguishing
     *Centr-O-Mart* on the ground that including local government entities within the definition of
26   "person" under the False Claims Act would disserve the public interest).

The right to recover state money is a right that belongs to the State of Delaware and the Attorney General is the proper State official to bring such an action.  *See Richardson v. Blackburn*, 187 A.2d 823, 823 (Del. Ch. 1963).  Furthermore, it is in the public interest for the Attorney General to bring an action such as this one to recover damages for the State in connection with the Defendants' violations of the Cartwright Act.

The Defendants suggest that sections 2105 and 2108(a) of the Delaware Antitrust Act somehow limit the authority of the Attorney General to bring claims on behalf of public bodies for violations of Delaware's antitrust law or federal antitrust laws.  However, nothing in the language of these two sections limits the authority of the Attorney General.  Nor can the language implicitly limit the authority of the Attorney General because any limitation of the authority of the Delaware Attorney General must be done "*by express legislative action.*"  *See Seth*, 592 A.2d at 439 (emphasis added).

The Defendants, in Appendix A of their Motion to Dismiss, are also requesting the Court to dismiss the California Cartwright Act claims brought on behalf of political subdivisions.  The State of Delaware is a proper party to this suit and once it is in federal court in its own behalf, it may proceed under Rule 23 as a class representative of similarly situated governmental entities irrespective of State law considerations.  *See Illinois v. Bristol-Myers Co.*, 470 F.2d 1276, 1277-78, (D.C. Cir. 1972).

**Hawaii:**  Defendants argue that Haw. Rev Stat. § 480-14(b) limits actions on behalf of its state agencies to violations of Hawaii or federal antitrust laws.  See Defendants' Motion at p. 22.  This section does not contain the limitation claimed by the Defendants.  Rather, this section expresses a grant of power to the Attorney General to sue to recover damages; and such damages are those provided for by the section, namely "threefold the actual damages sustained," Haw. Rev. Stat. § 480-14(a), or damages provided for by "any comparable provisions of federal law."  *Id.* § 480-14(b).

Therefore, Defendants' motion to dismiss Hawaii's Cartwright Act claim should be

1    denied.

2        **Kentucky:**  The Defendants' assertion that the Kentucky Attorney General's authority

3    to bring *parens* claims is limited to the state's antitrust laws is clearly erroneous.    The

4    Kentucky Attorney General prosecutes his claims in this action under both his state

5    constitution and laws, and the California Cartwright Act.  The Kentucky Attorney General is a

6    state constitutional officer with duties as prescribed by law.  Ky. Const. § 91.

7        Under Ky. Rev. Stat. § 15.020, the Kentucky Attorney General is the chief law officer

8    of the Commonwealth of Kentucky and has full authority to:

9
10       [A]ppear for the Commonwealth in all cases in the Supreme Court or
         Court of Appeals wherein the Commonwealth is interested, and shall
11       also commence all actions or enter his appearance in all cases, hearings,
         and proceedings in and before all other courts, tribunals, or commissions
12       in or out of the state, and attend to all litigation and legal business in or
         out of the state required of him by law, or in which the Commonwealth
13       has an interest, and any litigation or legal business that any state officer,
         department, commission, or agency may have in connection with, or
14       growing out of, his or its official duties..

15   Ky. Rev. Stat. § 15.020.

16       This authority also extends to all powers granted under common law.  *Respass v.*

17   *Commonwealth*, 131 Ky. 807, 115 S.W. 1131 (1909).   Moreover, Kentucky courts have

18   consistently recognized the broad authority of the Attorney General to protect residents.

19   *Commonwealth ex rel. Stephens v. N. Am. Van Lines, Inc.*, 600 S.W.2d 459 (Ky. App. 1979);

20   *Commonwealth ex rel. Brashear v. ABAC Pest Control, Inc.,* 621 S.W.2d 705 (Ky. App. 1981).

21   Nothing in the Kentucky Constitution, law or jurisprudence prevents the Kentucky Attorney

22   General from bringing a claim on behalf of all of the states' citizens under the Cartwright Act

23   and accordingly, the Defendants' Motion to Dismiss as to the Commonwealth of Kentucky

24   should be denied.

25       **Louisiana:**  The Louisiana Attorney General brought his claims under both his own

26   laws and under the Cartwright Act.   Article IV, section 8 of the Louisiana Constitution

1    provides:  "As necessary for the assertion or protection of any right or interest of the state, the

2    Attorney General shall have the authority (1) to institute, prosecute, or intervene in *any* civil

3    action or proceeding."  La. Const. Art. IV, § 8 (emphasis added).  The state has a quasi-

4    sovereign interest in the economic well-being of its citizens.  If the state has an interest, the

5    Attorney General has a right to assert it in the manner in which he deems necessary.[24]  Nothing

6    in the Louisiana Constitution, law or jurisprudence prevents the Louisiana Attorney General

7    from bringing a claim on behalf of all of the states' citizens under the Cartwright Act.

8        **North Dakota:**  Contrary to Defendants arguments, North Dakota's authority to assert

9    antitrust claims in this case is not limited to action under its own antitrust laws.  The North

10   Dakota Attorney General, as the chief law enforcement officer of the State, has control of

11   litigation involving the State and the procedure by which it is conducted.  *Bonniwell v.*

12   *Flanders*, 62 N.W.2d 25, 28-29 (N.D. 1954).  The attorney general is authorized to bring all

13   cases in which the state is a party, "whenever in [its] judgment it would be for the best interests

14   of the state to do so."  N.D. Cent. Code § 54-12-02.  Nothing in the North Dakota Constitution,

15   law, or jurisprudence prevents the North Dakota Attorney General from bringing a claim on

16   behalf of North Dakota citizens under the Cartwright Act.

17       **Northern Mariana Islands:**  Within the Commonwealth of the Northern Mariana

18   Islands ("CNMI"), the CNMI Supreme Court has recognized that the Commonwealth has

19   *parens* authority to bring actions where there is a legitimate state interest. *See In re Seman*, 3

20   N. Mar. I. 57, 71, 1992 WL 135878 (N. Mar. I.1992).  The U.S. District Court for the Northern

21   Mariana Islands has also noted this interest.  *See United States ex rel Richards v. De Leon*

22   *Guerrero*, No. 92-00001, 1992 WL 212237 at *3 (D.N.M.I July 29, 1992) (order denying stay

23   pending appeal), *aff'd*, 4 F.3d 749 (9th Cir. 1993).

24       The CNMI Constitution states that "the Attorney General shall be responsible for . . .

25

26   ———————————
     [24] *State ex rel. Porterie v. Smith,* 182 La. 662, 162 So. 413 (1935)

representing the Commonwealth in all legal matters." N. Mar. I. Const. Art. III, § 11. Finally, if there were any doubt as to the CNMI Attorney General's ability to bring this action under its *parens* powers, Title 7 of the Commonwealth Code, Section 3401, states as follows:

> In all proceedings, the rules of the common law, as expressed in the restatements of the law approved by the American Law Institute and, to the extent not so expressed as generally understood and applied in the United States, shall be the rules of decision in the courts of the Commonwealth, in the absence of written law or local customary law to the contrary.

7 N. Mar. I. Code § 3401.

In addition to the Cartwright Act, the CNMI brought this claim under express provisions granting the Office of the Attorney General authority to enforce the Consumer Protection Act, 4 N. Mar. I. Code § 5101 *et seq*., and the Unfair Business Practices Act, 4 N. Mar. I. Code. § 5201 *et seq.*

The CNMI also adopts and incorporates the decisions cited by its sister jurisdictions herein for support of its position that the CNMI has authority to bring this action on behalf of its natural persons and businesses without a specific grant of *parens* authority.

**Ohio:** State agencies and political subdivisions are persons entitled to recover under the Cartwright Act and the Ohio Attorney General is entitled to act as their attorney. The Attorney General is statutorily authorized to act as the attorney at law in any antitrust case for state agencies and political subdivisions. Ohio Rev. Code § 109.81. Further, the Attorney General is statutorily authorized to "do all things necessary under the laws of *any state* or the federal government to properly conduct any antitrust case in which he acts as attorney at law, including the bringing of an action for equitable relief or for the recovery of damages." *Id* (emphasis added). Thus, the Attorney General is entitled to assert a damages claim under the Cartwright Act.

As the *only* argument for dismissal of Ohio's Cartwright claim, Defendants contend that state agencies and political subdivisions are not "persons" under the Cartwright Act.

1  Defendants' assertion is wholly unsupportable.  The Cartwright Act provides that an "action

2  may be brought by any person who is injured in his or her business or property."  Cal. Bus. &

3  Prof. Code § 16750(a).  Similar language has universally been held to include state agencies

4  and political subdivisions.[25]  *Chattanooga*, 203 U.S. at 396; *Evans*, 316 U.S. 159.  There is

5  simply no justification for Cal. Bus. & Prof. Code § 16750(a) to be interpreted contrary to

6  established and universal precedent holding state agencies and political subdivisions are

7  "persons" -- thus Ohio state agencies and political subdivisions have the same rights under

8  section 16750(a) as any private litigant.  Defendants rest their argument on Cal. Bus. & Prof.

9  Code § 16750(b), which specifically enumerates that the state, its political subdivisions and

10  public agencies are persons.  However, section 16750(b) was enacted for clarification to

11  remove any doubts concerning the power of local government to bring antitrust actions under

12  the Cartwright Act; not to abrogate existing rights.  *County of Stanislaus*, 16 Cal. 4th at 1153.

13  Therefore, section 16750(b) has no effect on the rights enumerated in section 16750(a).

14  **Oklahoma:** Defendants rely on Okla. Stat. tit. 79, § 205(A)(1) for the proposition that

15  the Oklahoma Antitrust Reform Act does not affirmatively permit suits by the Oklahoma

16  Attorney General on behalf of governmental entities under the antitrust laws of another state.

17  However, there is nothing in the Antitrust Reform Act which *prohibits* the Attorney General

18  from bringing such an action. In fact, under Oklahoma law the Attorney General is given broad

19  powers to represent the interest of the state in any action and in any court under Okla. Stat. tit.

20  74, § 18b.

21  **Pennsylvania:** Defendants' argument that the Pennsylvania Attorney General lacks the

22  authority to represent the Commonwealth, state agencies and political subdivisions under the

23  Cartwright Act is incorrect. Nothing in 71 Pa. Stat. § 732-204 (c), the statute Defendants rely

24  _____

25  [25] 15 USC § 12 defines persons as "corporations and associations."  The U.S. Supreme Court,
    in addition to other courts, has found such language to include states and political subdivisions
    as "persons."  Under California Bus. & Prof. Code § 16702 the definition of person includes
26  "corporations, firms, partnerships and associations."

1    on, limits the authority of the Pennsylvania Attorney General to bring an action under the

2    Cartwright Act.

3         **Texas:**  The Attorney General of Texas is both obligated by the Texas Constitution and

4    entitled by statute to represent government purchasers for violations of the state antitrust laws,

5    a necessary extension of which is the right to sue under the Cartwright Act.  The Constitution

6    mandates that the Attorney General "take such action in the courts as may be proper and

7    necessary to prevent any private corporation from exercising any power or demanding or

8    collecting any species of taxes, tolls, freight or wharfage not authorized by law." Tex. Const.

9    Art. IV, § 22.  While this section begins with the rights of the Attorney General to sue in Texas

10   state courts, the mandate to represent the State "as may be proper and necessary" is not limited

11   in the same jurisdictional manner.  *Id.*  By statute, the Attorney General is required to represent

12   aggrieved state agencies: "The Attorney General shall prosecute and defend all actions in

13   which the state is interested before the supreme court and courts of appeals."  Tex. Gov't Code

14   § 402.021.  The 5th Circuit has recognized that this grant necessarily encompasses federal

15   courts as well: "Under Texas law, the Attorney General enjoys an exclusive right to represent

16   state agencies. . . ." *U.S. v. State of Texas*, 680 F.2d 356, 368 n.16 (5th Cir. 1982) (*citing*

17   V.A.T.S. art. 4395 (repealed, now Tex. Gov't Code § 402.021)).  The instant suit is one that

18   the Attorney General deems necessary to protect Texas state agencies and one which no

19   statutory authority or case law dictates is improper for the State to bring.

20        **Utah:**  In their Motion, Defendants assert that "only government agencies of California,

21   and not those in other states, have a remedy for violations of the Cartwright Act" and the

22   Cartwright Act "explicitly restricts *parens patriae* claims for damages to suits by the

23   *California* Attorney General on behalf of residents of *the State of California.* . . ." Defendants'

24   Motion, p. 18.

25        The Utah Antitrust Act, Utah Code Ann. §§ 76-10-911 *et seq*., alleged by Utah along

26   with the Cartwright Act as statutory bases for its state law claims (see First Amended

Complaint, Paragraph 186), expressly provides, in Utah Code Ann. § 76-10-916(3), that:

> [t]he Attorney General may proceed under *any antitrust laws* in the state or federal courts on behalf of this state, any of its political subdivisions or agencies, or as *parens patriae* on behalf of natural persons in this state.  (Emphasis supplied.)

Utah Code Ann. § 76-10-916(3).

This statute provides explicit legislative authority for the Utah Attorney General to proceed under "any antitrust laws" (including, therefore, the Cartwright Act), on behalf of the State of Utah, its state agencies and political subdivisions, and as "*parens patriae*" on behalf of natural persons in Utah.  Thus, Utah's own law authorizes its Attorney General to bring suit under the Cartwright Act, as he has done in this action, on behalf of the State of Utah and its governmental entities and as parens claims on behalf of natural persons in Utah.

Furthermore, the Utah Attorney General has authority under the common law of Utah to represent Utah state agencies and political subdivisions and Utah citizens as *parens* as alleged in this action.  The Utah Supreme Court has recognized that:

> in addition to those conferred on it by statute, the office [of the Utah Attorney General] is clothed with all of the powers and duties pertaining thereto at common law; and, as chief law officer of the State, the Attorney General, in the absence of express legislative restriction to the contrary, may exercise all such power and authority as the public interests may from time to time require.  In short, the Attorney General's powers are as broad as the common law unless restricted or modified by statute.

*State v. Jiminez*, 588 P.2d 707, 709 (Utah 1978).

Notably, Defendants' Motion makes no mention of these statutory and common law provisions and contains no argument to the contrary.  Furthermore, Defendants' argument in Section II.B of their Motion that Utah cannot assert claims on behalf of its government entities in this case because Utah's laws do not authorize it to bring suits in a *parens* capacity under California's laws, is inapposite.  The Utah Attorney General is representing Utah's governmental entities directly, in a proprietary/representative capacity, as expressly authorized

1   by Utah Code Ann. § 76-10-916(3), and not as *parens*.

2           The fact that the Cartwright Act expressly authorizes the California Attorney General to

3   bring civil actions as *parens* on behalf of California residents does not limit the authority of the

4   Utah Attorney General to proceed as he is authorized to do under Utah law.  Nothing in the

5   Utah Constitution, law, jurisprudence or policy purports to prevent or restrict the Utah

6   Attorney General from bringing claims on behalf of Utah, its governmental entities and natural

7   persons under the Cartwright Act.  Indeed, access to courts in California by Utah governmental

8   entities and natural persons is consistent with the access to courts in Utah guaranteed to

9   governmental entities and citizens of Utah *and other States* by the "open courts" provision of

10  Article I, section 11 of the Utah Constitution, which states: "All courts shall be open, and every

11  person, for an injury done to him in his person, property or reputation, shall have remedy by

12  due course of law . . . ."[26]  Utah Const. Art. I, § 11.  Nor, for the reasons stated elsewhere in

13  this Opposition to Defendants' Motion, does anything in the Cartwright Act, the California

14  Constitution, law, jurisprudence or policy purport to prevent or restrict the Utah Attorney

15  General from using the authority given to him by the laws of Utah to obtain relief for Utah or

16  its governmental entities or natural persons for violations of the Cartwright Act.

17          **Virginia:** The Defendants assert that Virginia "has limited representative actions by its

18  state Attorney General on behalf of political subdivisions to violations of Virginia's antitrust

19  statute, not California's Cartwright Act or other states' antirust laws."  The Defendants'

20  assertion is not accurate.  Va. Code § 2.2-507 states, in relevant part:

21                  All legal service in civil matters for the Commonwealth, the
22                  Governor, and every state department, institution, division,
                    commission, board, bureau, agency, entity, official, court, or

23  _____

    [26] This provision "ensures that courts are to be accessible to all for resolution of their disputes,
24  and makes clear that right to come into court is a fundamental value of governmental
    compact."  *Jeffs v. Stubbs*, 970 P.2d 1234, 1250 (Utah 1998), *cert. denied*, 526 U.S. 1130
25  (1999).  Its purpose is to "impose some substantive limitation on the power of the legislature to
    abolish judicial remedies in a capricious fashion."  *Craftsman Builder's Supply, Inc. v. Butler*
26  *Mfg. Co.*, 974 P.2d 1194, 1204 (Utah 1999).

1
2
3

> judge, including the conduct of all civil litigation in which any of
> them are interested, shall be rendered and performed by the
> Attorney General, except as provided in this chapter and except
> for any litigation concerning a justice or judge initiated by the
> Judicial Inquiry and Review Commission.

4  Va. Code § 2.2-507.

5          This statute provides clear authority for the Attorney General to pursue all civil

6  claims on behalf of state agencies.  The statute makes no mention of any limitations in forum

7  or statutes under which these cases can be brought and does not purport to limit the Attorney

8  General's authority only to Virginia law.  Furthermore, nothing in the Virginia Antitrust Act

9  purports to limit the Attorney General's ability to bring antitrust cases on behalf of the

10  Commonwealth, or consumers and governmental entities within the Commonwealth, solely to

11  causes of action that arise under the Virginia Antitrust Act.  In addition to statutory authority,

12  the Virginia Attorney General brings this action pursuant to his common law authority to act

13  on behalf of the best interests of the citizens of the Commonwealth in matters of public

14  interest.  One general principle stemming from the common law powers of the Attorney

15  General is the right to institute legal proceedings in the interests of the Commonwealth's

16  agencies and political subdivisions.  In many states, including Virginia, the common law

17  powers of state attorneys general continue in the absence of statutory abrogation.  *See*

18  *Commonwealth v. Meadow Gold Dairies, Inc.*, 1993-2 Trade Cas. (CCH) ¶70,385 at 71,025

19  (W.D. Va. Aug. 19, 1993) (*citing Nash County Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 494

20  (4th Cir.), *cert denied*, 454 U.S. 878 (1981)); *Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d

21  266 (5th Cir. 1976), *cert. denied*, 429 U.S. 829 (1976).  Courts have stated that in the absence

22  of specific abrogation by the legislature the Attorney General typically may exercise all such

23  authority as the public interest requires, and has wide discretion in making the determination as

24  to public interest.  *See Meadow Gold Dairies*, 1993-2 Trade Cas. (CCH) ¶70,385 at 71,025

25  (W.D. Va. Aug. 19, 1993) (*citing Exxon*, 526 F.2d at 268-69).

26          Commentary by one of Virginia's leading constitutional scholars supports the

conclusion that Virginia's Attorney General retains those common law powers which have not been abrogated:

> The historical development of the office, coupled with precedents from states with comparable constitutional and statutory schemes, would argue in favor of the existence of such power springing from common law. In most states where the constitution says that the Attorney General's duty shall be 'as prescribed by law,' this is taken to mean that he has such common law powers as have not been specifically repealed by statute -- a conclusion sometimes bolstered by reference to early statutory adoption of the common law.

II A.E. Dick Howard, Commentaries on the Constitution of Virginia 665-66 (referring to Va. Const. Art. V, § 15 and Va. Code Ann. § 1-10) (*citations omitted*).

Far from being repealed by statute, Virginia's statutory model specifically envisions its Attorney General representing the interests of state governmental entities in *all* civil litigation, regardless of the forum or the statute under which such litigation is pursued. See Va. Code Ann. § 2.2-507. To hold that Virginia's Attorney General cannot pursue a Cartwright Act claim in order to adequately protect the interests of Virginia's state agencies and political subdivisions is directly contrary to both common law and the statutory scheme in Virginia.

## CONCLUSION

Defendants' motion should be denied in its entirety. States have clear authority to bring this case to request relief on behalf of their injured consumers, whether direct or indirect. In addition to federal remedies, states are seeking relief under state laws. The beneficial purpose of the Cartwright Act applies to all plaintiffs, not just those located within the state of California and it should be interpreted broadly to provide adequate consumer relief.

1 | Dated:          December 13, 2006

2 | Respectfully submitted,

3 |

4 |

5 | BILL LOCKER
  | Attorney General of the State of California

6 | KATHLEEN E. FOOTE
  | Senior Assistant Attorney General

7 |

8 | EMILIO E. VARANINI
  | Deputy Attorney General

9 | Attorneys for Plaintiffs

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

1

Signature page for the state of ALASKA for
Plaintiffs' Opposition to Motion to Dismiss for Failure to State a Claim in
*The State of California et al. v. Infineon Technologies AG, et al.*
U.S. District Court, N. D. California, No. C 06-4333 PJH


DATED this 8th day of December, 2006, at Anchorage, Alaska.

CRAIG J. TILLERY
ACTING ATTORNEY GENERAL


By: _____

Clyde E. Sniffen, Jr.
(*Pro Hac Vice* application pending)
Senior Assistant Attorney General
Alaska Department of Law
Commercial and Fair Business Section
1031 W. 4th Ave. #200
Anchorage, AK  99501
Alaska Bar No.:  8906036

Signature page for the state of ARKANSAS for
Plaintiffs' Opposition to Motion to Dismiss for Failure to State a Claim in
*The State of California et al. v. Infineon Technologies AG, et al.*
U.S. District Court, N. D. California, No. C 06-4333 PJH


MIKE BEEBE
Attorney General
TERESA MARKS
Deputy Attorney General


BRADFORD J. PHELPS
*Appearing Pro Hac Vice*
Arkansas Bar No. 2001245
Assistant Attorney General
Office of the Attorney General of Arkansas
323 Center Street, Suite 200
Little Rock, AR 72201
501-682-3625
501-682-8118(fax)


Dated: December 13, 2006

Signature page for the state of ARIZONA for
Plaintiffs' Opposition to Motion to Dismiss for Failure to State a Claim in
*The State of California et al. v. Infineon Technologies AG, et al.*
U.S. District Court, N. D. California, No. C 06-4333 PJH

TERRY GODDARD
Attorney General

NANCY M. BONNELL
*\* Application for Pro Hac Vice Admission
pending*
Arizona State Bar No. 016382
Antitrust Unit Chief
1275 West Washington
Phoenix, Arizona 85028
602-542-7728 (tel)
602-542-9088 (fax)

Dated: December 13, 2006

Signature page for the State of DELAWARE for
Plaintiffs' Opposition to Motion to Dismiss for Failure to State a Claim in
*The State of California et al. v. Infineon Technologies AG, et al.*
U.S. District Court, N. D. California, No. C 06-4333 PJH

CARL C. DANBERG
Attorney General

MICHAEL A. UNDORF
*Application for Admission
Pro Hac Vice Pending*
Delaware State Bar No. 3874
Deputy Attorney General
820 N. French St., 5th Floor
Wilmington, DE 19801
302-577-8924 (tel)
302-577-6987 (fax)

Dated: December 13, 2006

Signature page for the State of FLORIDA for
Plaintiffs' Opposition to Motion to Dismiss for Failure to State a Claim in
The State of California *et al.* v. Infineon Technologies AG *et al.*
U.S. District Court, N. D. California, Case No. C 06-4333 PJH

CHARLES J. CRIST, JR., Attorney General
of the State of Florida

By:
_____
EMILIAN BUCATARU
*Appearing Pro Hac Vice*
FL Bar #733261
Assistant Attorney General
PATRICIA A. CONNERS
*Appearing Pro Hac Vice*
FL Bar #361275
Director, Antitrust Division
PL-01, The Capitol
Tallahassee, FL 32399-1050
Tel (850) 414-3300
Fax (850) 488-9134

Dated: December 13, 2006

Signature page for the State of HAWAII for
Plaintiffs' Opposition to Motion to Dismiss for Failure to State a Claim in
*The State of California et al. v. Infineon Technologies AG, et al.*
U.S. District Court, N. D. California, No. C 06-4333 PJH

MARK J. BENNETT
Attorney General
State of Hawaii

DEBORAH DAY EMERSON
Supervising Deputy Attorney General
RODNEY I. KIMURA
*Appearing Pro Hac Vice* *
Hawaii State Bar No. 2734
Deputy Attorney General
425 Queen Street
Honolulu, Hawaii  96813
Tel.:  808-586-1180
Fax:  808-586-1205
* Pro Hac Vice Application pending

Dated: December 13, 2006

Signature page for the state of ILLIOIS for
Plaintiffs' Opposition to Motion to Dismiss for Failure to State a Claim in
*The State of California et al. v. Infineon Technologies AG, et al.*
U.S. District Court, N. D. California, No. C 06-4333 PJH


LISA MADIGAN
Attorney General


BLAKE L. HARROP
*Pro Hac ViceMotion Pending*
Illinois State Bar No. 3127180
Senior Assistant Attorney General
100 W. Randolph
Chicago, IL  60601
312-814-1004 (tel)
312-814-1154 (fax)


Dated: December 13, 2006

Signature page for the Commonwealth of KENTUCKY for
Plaintiffs' Opposition to Motion to Dismiss for Failure to State a Claim in
*The State of California et al. v. Infineon Technologies AG, et al.*
U.S. District Court, N. D. California, No. C 06-4333 PJH

**GREGORY D. STUMBO**
**KENTUCKY ATTORNEY GENERAL**

By:    *Maryellen B Mynear*

MARYELLEN B. MYNEAR
Litigation Branch Manager
Assistant Attorney General
Consumer Protection Division
1024 Capital Center Dr., Suite 200
Frankfort, KY 40601
(502) 696-5389
(502) 573-8317 fax

Dated: December 13, 2006

Signature page for the state of MARYLAND for
Plaintiffs' Opposition to Motion to Dismiss for Failure to State a Claim in
*The State of California et al. v. Infineon Technologies AG, et al.*
U.S. District Court, N. D. California, No. C 06-4333 PJH

> J. JOSEPH CURRAN, JR.
> Attorney General
> ELLEN S. COOPER
> Assistant Attorney General
> Chief, Antitrust Division
>
>
> *John R. Tennis*
> ─────────────────────
> JOHN R. TENNIS
> Assistant Attorney General
> 200 St. Paul Place
> Baltimore, Maryland  21202
> Tel:    (410) 576-6470
> Fax:    (410) 576-7830

Dated: December 13, 2006

Signature page for the state of NORTH DAKOTA for
Plaintiffs' Opposition to Motion to Dismiss for Failure to State a Claim in
*The State of California et al. v. Infineon Technologies AG, et al.*
U.S. District Court, N. D. California, No. C 06-4333 PJH

Wayne Stenehjem, Attorney General
of the State of North Dakota

BY:

Todd A. Sattler, ND ID No. 05719
*Appearing Pro Hac Vice*
Assistant Attorney General
Office of Attorney General
Consumer Protection and Antitrust Division
4205 State Street
PO Box 1054
Bismarck, ND 58502-1054
Phone: (701) 328-5570

Dated : December 13, 2006

Signature page for the state of NEW HAMPSHIRE for
Plaintiffs' Opposition to Motion to Dismiss for Failure to State a Claim in
*The State of California et al. v. Infineon Technologies AG, et al.*
U.S. District Court, N. D. California, No. C 06-4333 PJH

KELLY A. AYOTTE
Attorney General

_____

DAVID A. RIENZO
*Appearing Pro Hac Vice*
New Hampshire State Bar No. 13860
Assistant Attorney General
33 Capitol Street
Concord, New Hampshire 03301
603-271-1249 (tel)
603-223-6239 (fax)

Dated: December 13, 2006

Signature page for the state of NEW MEXICO for
Plaintiffs' Opposition to Motion to Dismiss for Failure to State a Claim in
*The State of California et al. v. Infineon Technologies AG, et al.*
U.S. District Court, N. D. California, No. C 06-4333 PJH

PATRICIA A. MADRID, Attorney General
of the State of New Mexico

DEYONNA YOUNG
*Appearing Pro Hac Vice*
New Mexico Bar No. 2980
Assistant Attorney General
Office of the Attorney General
111 Lomas Boulevard NW, Suite 300
Albuquerque, New Mexico  87102
Tel.: (505) 222-9089
Telefax: (505) 222-9086

Date: December 13, 2006

Signature page for the Commonwealth of the NORTHERN MARIANA ISLANDS for
Plaintiffs' Opposition to Motion to Dismiss for Failure to State a Claim in
*The State of California et al. v. Infineon Technologies AG, et al.*
U.S. District Court, N. D. California, No. C 06-4333 PJH

MATTHEW  T.  GREGORY
Northern Mariana Islands Bar No. F0205
Attorney General

GREGORY  BAKA
Northern Mariana Islands Bar No. F0199
California Bar No. 145687 (inactive)
        Admitted to N.D. Cal. Dec. 11, 1989
Deputy Attorney General
OFFICE OF THE ATTORNEY GENERAL
Hon. Juan A. Sablan Memorial Bldg, 2nd Fl.
Caller Box 10007, Capital Hill
Saipan, MP  96950-8907
Telephone:       (670) 664-2341
Fax:                  (670) 664-2349
E-mail:             gbaka79@yahoo.com

Dated: December 13, 2006 (P.D.T.)

Signature page for the State of Ohio for
Plaintiffs' Opposition to Motion to Dismiss for Failure to State a Claim in
*The State of California et al. v. Infineon Technologies AG, et al.*
U.S. District Court, N. D. California, No. C 06-4333 PJH

JIM PETRO
Attorney General

JAMES C. ROBERTS
*Appearing Pro Hac Vice*
Assistant Attorney General
Ohio Attorney General's Office
Ohio State Bar No. 0077733
150 East Gay Street, 20th Floor
Columbus, OH 43215
614-466-4328 (tel)
614-995-0266 (fax)

Dated: December 13, 2006

Signature page for the state of OKLAHOMA for
Plaintiffs' Opposition to Motion to Dismiss for Failure to State a Claim in
*The State of California et al. v. Infineon Technologies AG, et al.*
U.S. District Court, N. D. California, No. C 06-4333 PJH

W.A. DREW EDMONDSON
Oklahoma Attorney General

THOMAS A. BATES
*Appearing Pro Hac Vice*
Oklahoma State Bar No. 15672
Assistant Attorney General
313 NE 21st Street
Oklahoma City, OK 73105
405-522-1013 (tel)
405-522-0085(fax)

Dated: December 13, 2006

Signature page for the state of RHODE ISLAND for
Plaintiffs' Opposition to Motion to Dismiss for Failure to State a Claim in
*The State of California et al. v. Infineon Technologies AG, et al.*
U.S. District Court, N. D. California, No. C 06-4333 PJH

PATRICK C. LYNCH
Attorney General

EDMUND F. MURRAY, JR.
*Appearing Pro Hac Vice*
Bar Reg. No.: 3096
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2401
Fax: (401) 222-2995(fax)

Dated: December 11, 2006

Signature page for the State of SOUTH CAROLINA for
Plaintiffs' Opposition to Motion to Dismiss for Failure to State a Claim in
*The State of California et al. v. Infineon Technologies AG, et al.*
U.S. District Court, N. D. California, No. C 06-4333 PJH

HENRY D. McMASTER
Attorney General

C. HAVIRD JONES, JR.
Senior Assistant Attorney General

C. HAVIRD JONES, JR.
*Appearing Pro Hac Vice*
South Carolina State Bar No. 3178
Senior Assistant Attorney General
P. O. Box 11549
Columbia, SC   29211
(803) 734-3654 (tel)
(803) 734-3677 (fax)

Dated: December 8, 2006

Signature page for the state of TENNESSEE for
Plaintiffs' Opposition to Motion to Dismiss for Failure to State a Claim in
The State of California et al. v. Infineon Technologies AG, et al.
U.S. District Court, N. D. California, No. C 06-4333 PJH


ROBERT E. COOPER, JR.
Attorney General and Reporter


S. ELIZABETH MARTIN
Appearing Pro Hac Vice
Tennessee State Bar No. 013329
Senior Counsel
Post Office Box 20207
Nashville, TN 37202
615-532-5732 (tel)
615-741-1026 (fax)

Dated: December 13, 2006

Signature Block for Plaintiff State of Texas for
Plaintiffs' Opposition to Motion to Dismiss for Failure to State a Claim in
*The State of California et al. v. Infineon Technologies AG et al.*, Case No. C 06-4333 PJH

Dated: December 7, 2006
     Austin, Texas

              Greg Abbott
              Attorney General

              By: Mark A. Levy
              *Appearing Pro Hac Vice*
              State Bar #24014555
              Assistant Attorney General
              Antitrust & Civil Medicaid Fraud Division
              Office of the Attorney General
              P.O. Box 12548
              Austin, Texas 78711-2548
              512-936-1847  voice
              512-320-0975  telecopy
              Mark.Levy@oag.state.tx.us

Signature page for the State of UTAH for
Plaintiffs' Opposition to Motion to Dismiss for Failure to State a Claim in
*The State of California et al. v. Infineon Technologies AG, et al.*
U.S. District Court, N. D. California, No. C 06-4333 PJH

MARK L. SHUTLEFF
Attorney General of Utah

RONALD J. OCKEY
*Appearing Pro Hac Vice*
Utah State Bar No. 2441
Assistant Attorney General
160 East 300 South, Fifth Floor
Salt Lake City, Utah 84111
(801) 366-0359  (Telephone)
(801) 366-0315  (Fascimile)

Dated: December 13, 2006

Signature page for the Commonwealth of VIRGINIA for
Plaintiffs' Opposition to Motion to Dismiss for Failure to State a Claim in
*The State of California et al. v. Infineon Technologies AG, et al.*
U.S. District Court, N. D. California, No. C 06-4333 PJH


ROBERT F. McDONNELL
Attorney General


*Sarah Oxenham Allen*

SARAH OXENHAM ALLEN
*Appearing Pro Hac Vice*
Virginia State Bar No. 33217
Assistant Attorney General
900 East Main Street
Richmond, VA  23219
804-786-6557 (tel)
804-786-0122 (fax)


Dated: December 13, 2006

Plaintiffs' Opposition to Motion to Dismiss for Failure to State a Claim in
*The State of California et al. v. Infineon Technologies AG, et al.*
U.S. District Court, N. D. California, No. C 06-4333 PJH

ROB MCKENNA
Attorney General
TINA E. KONDO
Senior Assistant Attorney General


BRADY R. JOHNSON
*Appearing Pro Hac Vice*
Washington State Bar No. 21732
Assistant Attorney General
800 Fourth Avenue, #2000
Seattle, WA 98104
206-389-2848 (tel)
206-587-5636(fax)

Dated: December 13, 2006

Signature page for the state of WISCONSIN for
Plaintiffs' Opposition to Motion to Dismiss for Failure to State a Claim in
*The State of California et al. v. Infineon Technologies AG, et al.*
U.S. District Court, N. D. California, No. C 06-4333 PJH


PEGGY A. LAUTENSCHLAGER
Attorney General


GWENDOLYN J. COOLEY
*Appearing Pro Hac Vice*
Wisconsin State Bar # 1053856
Assistant Attorney General
17 W. Main Street
Madison, WI 53707
(608) 261-5810
(608) 267-2778


Dated: December 13, 2006

Signature page for the state of WEST VIRGINIA for
Plaintiffs' Opposition to Motion to Dismiss for Failure to State a Claim in
*The State of California et al. v. Infineon Technologies AG, et al.*
U.S. District Court, N. D. California, No. C 06-4333 PJH


DARRELL V. McGRAW, JR.
Attorney General
JILL L. MILES
Deputy Attorney General


DOUGLAS L. DAVIS
*Appearing Pending Pro Hac Vice*
West Virginia State Bar No. 5502
Assistant Attorney General
P.O. Box 1789
812 Quarrier Street, Floor 1
Charleston, WV 25326
304-558-8986 (tel)
304-558-0184 (fax)


Dated: December 13, 2006