1  KENNETH R. O'ROURKE (S.B. #120144)
   korourke@omm.com
2  STEVEN H. BERGMAN (S.B. #180542)
   sbergman@omm.com
3  JANE Y. CHANG (S.B. #241890)
   jchang@omm.com
4  O'MELVENY & MYERS LLP
5  400 South Hope Street
   Los Angeles, CA  90071
6  Telephone:    (213) 430-6000
7  Facsimile:    (213) 430-6407

8  MICHAEL F. TUBACH  (S.B. #145955)
   mtubach@omm.com
9  O'MELVENY & MYERS LLP
10 275 Battery St.
   San Francisco, CA  94111
11 Telephone:    (415) 984-8700
   Facsimile:    (415) 984-8701
12
   Attorneys for Defendants Hynix
13 Semiconductor Inc. and Hynix
   Semiconductor America Inc.
14
15 **[Additional moving Defendants and**
   **counsel listed on last page]**
16          **UNITED STATES DISTRICT COURT**
17         **NORTHERN DISTRICT OF CALIFORNIA**
18            **SAN FRANCISCO DIVISION**

| 19 | In Re Dynamic Random Access Memory | Master File No. C-06-04333 PJH |
|----|------------------------------------|--------------------------------|
| 20 | (DRAM) Antitrust Litigation | MDL No. 1486 |
| 21 | | **DEFENDANTS' NOTICE OF** |
| 22 | | **MOTION; MOTION TO DISMISS** |
| 23 | This Document Relates to: | **FOR FAILURE TO STATE A** |
| 24 | *State of California ex rel. Lockyer et al. v.* | **CLAIM UPON WHICH RELIEF** |
| | *Infineon Technologies AG et al.* (C 06-04333 | **CAN BE GRANTED AND MOTION** |
| | PJH) | **TO STRIKE; MEMORANDUM OF** |
| 25 | | **POINTS AND AUTHORITIES** |
| 26 | | **ORAL ARGUMENT REQUESTED** |
| 27 | | Hearing Date:  January 16, 2008 |
| 28 | | Time:  9:00 a.m. |
| | | Courtroom:  3, 17th Floor |
| | | Judge:  Hon. Phyllis J. Hamilton |

1  **NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A**

2  **CLAIM**

3  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

4  PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure 12(b)(6) and

5  12(f), Defendants Hynix Semiconductor Inc., Hynix Semiconductor America Inc., Nanya

6  Technology Corp., Nanya Technology USA, Mosel Vitelic Inc., Mosel Vitelic Corp., Infineon

7  Technology AG, Infineon Technology North America Crop., Micron Technology, Inc., Micron

8  Semiconductor Products, Inc., NEC Electronics America, Inc., Elpida Memory, Inc., and Elpida

9  Memory (USA) Inc. ("Defendants") will and hereby do move to dismiss the Third Claim For

10  Relief in Plaintiffs' Third Amended Complaint ("TAC") and to strike portions thereof.  This

11  motion shall be heard on January 16, 2008 at 9:00 a.m., or as soon thereafter as the matter may be

12  called, in the courtroom of the Honorable Phyllis J. Hamilton, United States District Judge,

13  United States District Court, 450 Golden Gate Ave., San Francisco, California, 94102.

14  This motion is based upon this Notice of Motion; the accompanying Memorandum of Points and

15  Authorities; the complete files in this action, including Plaintiffs' Third Amended Complaint;

16  argument of counsel; and such other and further matters as this Court may consider.

17

18

19  DATED:

20  November 21, 2007                                     Respectfully Submitted,
                                                          O'MELVENY & MYERS LLP

21

22                                                        */s/  Kenneth O'Rourke*
                                                          Kenneth R. O'Rourke
23                                                        Steven H. Bergman

24

25                                                        Attorneys for Defendants Hynix
                                                          Semiconductor Inc. and Hynix
26                                                        Semiconductor America Inc.

27                                                        (additional Moving Defendants and counsel
                                                          listed on signature page of the accompanying
28                                                        memorandum)

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................. 1

I.      SEVERAL OF PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER
RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF
MAY BE GRANTED ........................................................................................... 1

     A.      UTAH AND LOUISIANA CANNOT SUE AS OR ON BEHALF OF
INDIRECT PURCHASERS BECAUSE THOSE STATES CONTINUE
TO RECOGNIZE THE "DIRECT PURCHASER" REQUIREMENT OF
ILLINOIS BRICK CO. V. ILLINOIS ............................................................ 2

         1.      Utah's 2006 Illinois Brick Repealer Does Not Apply Retroactively ......... 2

         2.      The Louisiana Consumer Protection Law Allows Only Defendants'
Competitors or "Direct Consumers" to Bring Suit ..................................... 4

     B.      TENNESSEE AND NEW MEXICO LACK THE AUTHORITY TO
BRING PARENS PATRIAE CLAIMS FOR DAMAGES AND SUCH
CLAIMS SHOULD BE DISMISSED ........................................................... 5

         1.      The Court Has Already Held that the Tennessee Attorney General
Lacks Parens Patriae Authority ................................................................... 5

         2.      There Is No Controlling Authority Allowing the New Mexico
Attorney General to Bring a Parens Patriae Suit for Damages Under
the Unfair Trade Practices Act ..................................................................... 6

     C.      INTRASTATE CONDUCT REQUIREMENT .................................................. 7

         1.      Maryland ....................................................................................................... 7

         2.      Mississippi ................................................................................................... 8

II.      MOTION TO STRIKE ....................................................................................... 8

     A.      THE PRAYER FOR TREBLE DAMAGES BROUGHT BY LOUISIANA,
NEW MEXICO, NEVADA AND VERMONT SHOULD BE STRICKEN
BECAUSE THE STATES ARE NOT ENTITLED TO SUCH RELIEF AS
A MATTER OF LAW ................................................................................... 9

         1.      Louisiana ..................................................................................................... 10

         2.      New Mexico ................................................................................................ 11

         3.      Nevada ........................................................................................................ 12

         4.      Vermont ...................................................................................................... 14

     B.      MISSISSIPPI CANNOT RECOVER SINGLE DAMAGES .............................. 15

     C.      TENNESSEE CANNOT RECOVER DAMAGES, CIVIL PENALTIES,
OR FEES ....................................................................................................... 16

CONCLUSION .................................................................................................... 18

Defendants' Motion to Dismiss
Master File No. C-06-04333 PJH

1

# TABLE OF AUTHORITIES

2

## Cases

3

*B & G Crane,*
935 So. 2d 164, 170 (La. Ct. App. 2006) ................................................................ 11

4

5

*Balistreri v. Pacifica Police Dep't.,*
901 F.2d 696 (9th Cir. 1990) ................................................................................... 1

6

*Bell Atlantic Corp. v. Twombly,*
__ U.S. ___, 127 S.Ct. 1955, 1974 (2007) ............................................................. 1

7

*Brown & Root Indus. Serv. v. Indus. Commission of Utah,*
947 P.2d 671, 675 (Utah 1997) ............................................................................... 3

8

9

*Bureerong v. Uvawas,*
922 F. Supp. 1450, 1479 n.34 (C.D. Cal. 1996) .................................................... 9

10

*Caldwell v. Caldwell,*
No. C 05-4166 PJH, 2006 WL 618511, *2 (N.D. Cal. March 13, 2006) ............... 9

11

12

*California v. Frito-Lay,*
474 F.2d 774 (9th Cir. 1973) ................................................................................... 5

13

*Cirac v. Lander County,*
602 P.2d 1012, 1015 (Nev. 1979) ......................................................................... 13

14

15

*Eckhardt v. Charter Hosp. of Albuquerque, Inc.,*
953 P.2d 722, 736 (N.M. App. 1997) ................................................................... 12

16

*Faust v. Metro. Gov't of Nashville and Davidson County,*
206 S.W.3d 475, 481 (Tenn. Ct. App. 2006) ........................................................ 17

17

18

*Gramatan Home Investors Corp. v. Starling,*
470 A.2d 1157, 1162 (Vt. 1983) ........................................................................... 14

19

*Hotel Employees and Restaurant Employees Local 2 v. Vista Inn Mgt. Co.,*
393 F. Supp. 972, 977 (N.D. Cal. 2005) ................................................................. 2

20

*Illinois Brick Co. v. Illinois,*
431 U.S. 720 (1977) ............................................................................................ 2, 3

21

22

*In re Microsoft Corp. Antitrust Litig.,* Nos. MDL 1332,
2003 WL 22070561, at *2 (D. Md. 2003) .............................................................. 8

23

*In re Rezulin Prods. Liability Litig.,*
392 F. Supp. 2d 597, 615-616 (S.D.N.Y. 2005) ..................................................... 5

24

*Joseph v. Hendrix,*
536 So. 2d 448, 450 (La. Ct. App. 1988) .............................................................. 11

25

*Levine v. First Nat'l Bank of Commerce,*
845 So. 2d 1189, 1193 (La. App. 2003) .............................................................. 4, 5

26

*McGlinchy v. Shell Chemical Co.,*
845 F.2d 802, 810 (9th Cir. 1988) .......................................................................... 2

27

28

*Metro. Gov't of Nashville and Davidson County, Tennessee v. Ashland Oil, Inc.,*
535 F. Supp. 328 (M.D. Tenn. 1982) ................................................................................ 17

*Page & Wirtz Constr. Co. v. Solomon,*
794 P.2d 349, 354 (N.M. 1990) ................................................................................ 11, 12

*Parker v. E.I. Du Pont de Nemours & Co.,*
909 P.2d 1, 13 (N.M. App. 1995) .................................................................................... 12

*Rosales v. Citibank,*
133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001) ................................................................. 9

*Standard Oil Co. of Ky. v. State ex rel. Attorney General,*
65 So. 468, 470-71 (Miss. 1914) ...................................................................................... 8

*State ex rel. Guste v. General Motors Corp.,*
370 So. 2d 477, 486 (La. 1979) ...................................................................................... 10

*State ex rel. Hess v. Washoe County,*
6 Nev. 104, 107 (1870) .............................................................................................. 2, 13

*State ex rel. Leech v. Levi Strauss & Co.,*
No. 79-722-III, 1980 WL 4696, at *4 (Tenn. Ch. Ct. Sept. 25, 1980) ....................... 5, 6

*Tapley v. Lockwood Green Eng'rs, Inc.,*
502 F.2d 559, 560 (8th Cir. 1974) .................................................................................... 9

*Tubos de Acero de Mexico, S.A. v. American Int'l Inv. Corp.,*
292 F.3d 471, 480 (5th Cir. 2002) .................................................................................... 4

*Vermillion Hosp., Inc. v. Patout,*
906 So. 2d 688, 692 (La. App. 2005) ............................................................................... 4

*Washington Nat'l Ins. Co. v. Sherwood Assocs.,*
795 P.2d 665, 668 n.5 (Utah Ct. App. 1990) ................................................................... 3

*Western Investors Life Ins. Co. v. N.M. Life Ins. Guar. Ass'n,*
671 P.2d 31, 34 (N.M. 1983) .......................................................................................... 12

*Western Mining Council v. Watt,*
643 F.2d 618, 624 (9th Cir. 1981) .................................................................................... 2

**Statutes**

15 U.S.C. § 15(c)(a)(2) ..................................................................................................... 9

CAL. BUS. & PROF. CODE § 16760(a)(2) ......................................................................... 9

DEL. CODE ANN. tit. 6, § 2108(c) ..................................................................................... 9

Fed. R. Civ. P. 12(f) .......................................................................................................... 9

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 1, 2

LA. REV. STAT. ANN. § 51:1401 *et seq.* ...................................................................... 4, 10

LA. REV. STAT. ANN. § 51:1402 ....................................................................................... 4

LA. REV. STAT. ANN. § 51:1407 ..................................................................................... 10

La. Rev. Stat. Ann. § 51:1408A(5) ............................................................................... 10

La. Rev. Stat. Ann. § 51:1409 ..................................................................................... 10

La. Rev. Stat. Ann § 51:1409A ............................................................................. 10, 11

Md. Code Ann., Com. Law § 11-201 *et seq.* ............................................................... 7

Miss. Code Ann. § 75-21-1 *et seq.* ............................................................................... 8

Miss. Code Ann. § 75-24-1 *et seq.* ............................................................................. 15

Miss. Code Ann. § 75-24-5(1) ..................................................................................... 15

Miss. Code Ann. § 75-24-5(2) ............................................................................... 15, 16

Miss. Code Ann. § 75-24-9 .......................................................................................... 15

N.M. Stat. Ann. § 57-1-1 *et seq.* ................................................................................... 6

N.M. Stat. Ann. § 57-12-1 *et seq.* ........................................................................... 6, 11

N.M. Stat. Ann § 57-12-2(A) ...................................................................................... 12

N.M. Stat. Ann. § 57-12-8(B) ................................................................................. 7, 11

N.M. Stat. Ann. § 57-12-10 ..................................................................................... 7, 11

N.M. Stat. Ann. § 57-12-10(B) ................................................................................... 12

N.M. Stat. Ann § 57-12-10(E) .................................................................................... 12

N.M. Stat. Ann. § 57-12-11 .................................................................................... 7, 11

Nev. Rev. Stat. § 598A.070(1)(c) ............................................................................... 13

Nev. Rev. Stat. § 598A.160 ........................................................................................ 12

Nev. Rev. Stat. § 598A.160(1) .................................................................................... 13

Nev. Rev. Stat. § 598A.160(1)(a) ............................................................................... 13

Nev. Rev. Stat. § 598A.160(2) .................................................................................... 13

Nev. Rev. Stat. § 598A.200 .................................................................................. 12, 13

Tenn. Code Ann. § 1-3-105(20) .................................................................................. 17

Tenn. Code Ann. § 1-3-105(32) .................................................................................. 17

Tenn. Code Ann. § 47-25-101 *et seq* ............................................................................ 5

Tenn. Code Ann. § 47-25-103(b) ................................................................................ 16

Tenn. Code Ann. § 47-25-104 ..................................................................................... 16

Tenn. Code Ann. § 47-25-106 ..................................................................................... 17

Utah Code Ann. § 68-3-3 .............................................................................................. 3

Utah Code Ann. § 76-10-911 *et seq.* ............................................................................ 2

Utah Code Ann. § 76-10-918 ........................................................................................ 3

Utah Code Ann. § 76-10-918(1) ................................................................................... 2

1

UTAH CODE ANN. § 76-10-919(1)(a) ............................................................................................ 3

2

VT. STAT. ANN. tit. 1, §128.......................................................................................................... 14

VT. STAT. ANN. tit. 9, § 2451 *et seq.* ........................................................................................ 14

3

VT. STAT. ANN. tit. 9, § 2458.......................................................................................................... 14

4

VT. STAT. ANN. tit 9, § 2458(a) ...................................................................................................... 14

5

VT. STAT. ANN. tit 9, § 2458(b) ...................................................................................................... 14

6

VT. STAT. ANN. tit 9, § 2461(b) ...................................................................................................... 15

7

VT. STAT. ANN. tit 9, § 2465.......................................................................................................... 14

VT. STAT. ANN. tit 9, § 2465(a) ...................................................................................................... 14

8

9

**Other Authorities**

10

2006 Legis. Bill Hist. UT S.B. 16 .................................................................................................. 3

11

2006 Ut. ALS 19 ...................................................................................................................... 2, 3

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants respectfully submit this memorandum of points and authorities in support of their Motion to Dismiss the Third Claim For Relief in Plaintiffs' Third Amended Complaint ("TAC") and to strike portions thereof.

## INTRODUCTION

6
7
8
9
10
11
12
13
14
15
16
17
18
19

On August 31, this Court dismissed most of Plaintiff States' claims for failure to state a claim as a matter of law.  The Court granted Plaintiff States leave to amend some of those claims. Despite the opportunity to remedy some of the deficiencies of the First Amended Complaint, the Third Amended Complaint fares no better and contains many of the same defects.  Like its predecessor, the Third Amended Complaint contains numerous state claims that are barred as a matter of law.  Those claims warrant dismissal for several reasons.  Some claims are barred because they are brought on behalf of alleged indirect purchasers in states that prohibit indirect purchaser suits.  Some claims are barred because they are brought on behalf of natural persons in states that do not empower the Attorney General to sue on behalf natural persons.  Other claims fail because they have not alleged the required "intrastate" component of the alleged violation they purport to enforce.  Accordingly, these state law claims, as discussed below, should be dismissed.  In addition, in several instances, Plaintiff States seek to recover damages that are precluded as a matter of law.  Thus, Defendants also seek to strike from the Third Amended Complaint those improper prayers for relief.

20
21

## I. SEVERAL OF PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

22
23
24
25
26
27
28

A claim's dismissal is warranted under Rule 12(b)(6) if there is either a "lack of cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).  Moreover, the plaintiffs must not only allege facts sufficient to state a claim, but such facts must be plausible. *See Bell Atlantic Corp. v. Twombly*, __ U.S. ___, 127 S.Ct. 1955, 1974 (2007).  Thus, while the court must accept all *well-pleaded* facts as true, "[t]he court need not . . . accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact or unreasonable

1   inferences." *Hotel Employees and Restaurant Employees Local 2 v. Vista Inn Mgt. Co.*, 393 F.

2   Supp. 2d 972, 977 (N.D. Cal. 2005); *see also, Western Mining Council v. Watt*, 643 F.2d 618,

3   624 (9th Cir. 1981) (finding court need not assume the truth of legal conclusions merely because

4   they are in the form of factual allegations); *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810

5   (9th Cir. 1988) ("conclusory allegations without more are insufficient to defeat a motion to

6   dismiss for failure to state a claim"). In this case, several Plaintiff States still fail to meet even the

7   minimum standards required by Rule 12(b)(6). Accordingly, those claims should be dismissed

8   with prejudice.

9       **A.    UTAH AND LOUISIANA CANNOT SUE AS OR ON BEHALF OF**
        **INDIRECT PURCHASERS BECAUSE THOSE STATES CONTINUE TO**
10      **RECOGNIZE THE "DIRECT PURCHASER" REQUIREMENT OF**
        **_ILLINOIS BRICK CO. V. ILLINOIS._**

11          Utah and Louisiana purport to sue as and/or on behalf of "indirect" purchasers of DRAM.

12   TAC ¶¶ 264, 362, 363. Yet the relevant state statutes impose the direct purchaser requirement of

13   *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), and therefore bar indirect purchasers from

14   recovering damages for violations of their antitrust statutes. Accordingly, those states' indirect

15   purchaser claims should be dismissed.[1] Indeed, this Court already dismissed other states' indirect

16   purchaser claims under the same circumstances. *See* Order (8/31/2007) at 20-22, 29-36

17   (dismissing Alaska's, Kentucky's, Louisiana's, Maryland's, Oklahoma's, and Virginia's indirect

18   purchaser antitrust and/or consumer protection claims). The same outcome is warranted here.

19          **1.    Utah's 2006 *Illinois Brick* Repealer Does Not Apply Retroactively.**

20          Utah seeks recovery on behalf of direct and indirect purchasers of DRAM under Utah's

21   Antitrust Act, UTAH CODE ANN. § 76-10-911 *et seq.* (2007). *See* TAC ¶¶ 362, 363. But the Utah

22   legislature only recently amended its antitrust statute to repeal *Illinois Brick*. *See* 2006 Ut. ALS

23   19 (amending UTAH CODE ANN. § 76-10-918(1) to allow the Attorney General to bring an action

24   "regardless of whether the Plaintiff dealt directly or indirectly with the Defendant"). Before the

25

26          [1] In *Illinois Brick*, the Supreme Court held that only direct purchasers may pursue private
        actions for money damages under federal antitrust laws. In the wake of *Illinois Brick*, a number
27      of states enacted laws permitting indirect purchasers to sue under those states' antitrust laws.
        Other states did not enact such "repealer" statutes.

28

Defendants' Motion to Dismiss
Master File No. C-06-04333 PJH

1   amendment, indirect purchasers were not permitted to sue, which is demonstrated by the

2   amendment's legislative history. *See* 2006 Ut. ALS 19 ("This bill *gives* consumers and others the

3   right to obtain judicial relief for violations of the Utah Antitrust Act even though they have not

4   dealt directly with the wrongdoer.") (emphasis added); 2006 Legis. Bill Hist. UT S.B. 16 (stating

5   that the proposed amendment "*increases* opportunities for consumers to seek damages against

6   companies in violation of the Utah Antitrust Act" ) (emphasis added). The amendment became

7   effective on May 1, 2006. *See* UTAH CODE ANN. § 76-10-918, note.[2] Yet here, the alleged

8   anticompetitive conduct occurred between 1998 and 2002. Thus, during the relevant period,

9   Utah's antitrust statute barred indirect purchaser claims. *See* TAC ¶ 178.

10          As such, Utah's indirect purchaser claims only survive if the 2006 legislation applies

11  retroactively — but it does not. Retroactivity is disfavored in Utah, and "substantive" changes

12  are not applied retroactively unless there is an express provision to the contrary. *See, e.g., Brown*

13  *& Root Indus. Serv. v. Indus. Commission of Utah*, 947 P.2d 671, 675 (Utah 1997) ("[T]he

14  general rule is that statutes are not applied retroactively unless retroactive application is expressly

15  provided for by the legislature"); *see also,* UTAH CODE ANN. § 68-3-3 ("No part of these revised

16  statutes is retroactive, unless expressly so declared."). Under Utah law, a change is "substantive"

17  if it "creates, defines and regulates the rights and duties of the parties and . . . may give rise to a

18  cause of action." *Washington Nat'l Ins. Co. v. Sherwood Assocs.*, 795 P.2d 665, 668 n.5 (Utah

19  Ct. App. 1990) (reversing trial court's ruling to apply amendment retroactively where amendment

20  changed parties' substantive rights and did not expressly direct retroactive application). As

21  demonstrated above, there is no doubt that Utah's *Illinois Brick* repealer created the right for

22  indirect purchasers to sue. It is therefore a "substantive" change and should only be applied

23  retroactively if there is an express provision requiring this. But Utah's *Illinois Brick* repealer is

24  silent on its retroactive applicability and therefore cannot be applied retroactively. *See* 2006 Ut.

25

26          [2] The provision for private damages, UTAH CODE ANN. § 76-10-919(1)(a), was

27  simultaneously amended to allow suits "regardless of whether the person dealt directly or
    indirectly with the Defendant." 2006 Ut. ALS 19.

28

1  ALS 19. Thus, the Court must dismiss Utah's indirect purchaser claims under the Utah Antitrust

2  Act.

3        **2.     The Louisiana Consumer Protection Law Allows Only Defendants'**
                    **Competitors or "Direct Consumers" to Bring Suit.**

4        Louisiana purports to sue under its consumer protection law, Unfair Trade Practices and

5  Consumer Protection Law, LA. REV. STAT. ANN § 51:1401 *et seq.* (2007), on behalf of the state,

6  its agencies and political subdivisions, and all citizens. TAC ¶ 264. The consumer protection

7  statute defines "trade" or "commerce" to "include any trade or commerce directly or indirectly

8  affecting the people of the state."[3] LA. REV. STAT. ANN. § 51:1402. Despite that provision's

9  broad language, Louisiana courts have construed the statute narrowly because it is penal in

10  nature. *E.g.*, *Levine v. First Nat'l Bank of Commerce*, 845 So. 2d 1189, 1193 (La. App. 2003)

11  (finding that because the statute is penal in nature, it is subject to a reasonably strict interpretation

12  and therefore applies only to direct competitors and consumers). As such, the vast majority of

13  Louisiana courts have ruled that the right of action granted under the statute "applies only to

14  direct consumers or to business competitors." *See Vermillion Hosp., Inc. v. Patout*, 906 So. 2d

15  688, 692 (La. App. 2005) (collecting cases); *Tubos de Acero de Mexico, S.A. v. American Int'l*

16  *Inv. Corp.*, 292 F.3d 471, 480 (5th Cir. 2002) ("private right of action is limited to direct

17  consumers or to business competitors").[4]

18

19       [3] In the August 31 Order, the Court noted that Louisiana's consumer protection statute
"expressly defines trade or commerce covered under the statute to include indirect purchasers."

20  *See* Order (8/31/2007) at 31. Defendants respectfully submit that this issue was not fully briefed
by the parties prior to the Court's ruling. Rather, the issue before the Court was Louisiana's

21  indirect purchaser claims under the antitrust statute. Indeed, the Court noted that "defendants do

22  not even seek dismissal of plaintiffs' consumer protection claim." *Id.* at 32. For this reason,
Defendants request that they be permitted to address Louisiana's authority to bring indirect

23  purchaser claims under the consumer protection statute here.

24       [4] Louisiana's First Circuit Court of Appeals is the only court that has interpreted the
statute more broadly by permitting indirect consumer actions. *See Vermillion*, 906 So. 2d at 692

25  ("Except for the Louisiana First Circuit Court of Appeals, Louisiana courts, both state and
federal, have uniformly held the personal right of action granted under LUTPA applies only to

26  direct consumers or to business competitors."). Given that other courts have uniformly held that

27  actions may only be brought by direct consumers or competitors, this Court should apply the
majority rule here.

28

1    Although no courts have specifically addressed this issue in the context of indirect

2    purchaser claims, courts regularly dismiss claims brought by plaintiffs with an indirect

3    relationship to defendants. *See Levine*, 845 So. 2d at 1193 (barring action by house's subsequent

4    purchasers against previous owner's mortgager); *see also, In re Rezulin Prods. Liability Litig.*,

5    392 F. Supp. 2d 597, 615-616 (S.D.N.Y. 2005) (barring suit by benefit's provider against drug

6    manufacturer because plaintiff did not "use, purchase, or lease Rezulin from [defendant]").  Such

7    case law is particularly instructive here.  Given that indirect claims are ordinarily barred under the

8    consumer protection statute, Louisiana's indirect purchaser claims should also be barred here.

9        **B.    TENNESSEE AND NEW MEXICO LACK THE AUTHORITY TO BRING**
         ***PARENS PATRIAE* CLAIMS FOR DAMAGES AND SUCH CLAIMS**
10       **SHOULD BE DISMISSED.**

11    The Court's August 31 Order dismissed seven States' *parens patriae* claims.  Order

12    (8/31/2007) at 57-70.  The Court found that *parens patriae* claims were barred unless such

13    authority had been granted to the Attorney General by controlling legal authority. *Id.* at 58

14    (relying on *California v. Frito-Lay*, 474 F.2d 774 (9th Cir. 1973)).  Despite this Court's ruling,

15    Tennessee and New Mexico continue to bring defective *parens patriae* claims because the

16    governing statutes do not empower the Attorney General to bring such claims.  Thus, Tennessee's

17    and New Mexico's claims must be dismissed.

18        **1.    The Court Has Already Held that the Tennessee Attorney General**
              **Lacks *Parens Patriae* Authority.**
19

20    In its August 31 Order, this Court found that the Tennessee Attorney General lacked

21    authority to bring a *parens patriae* claim seeking monetary damages on behalf of consumers

22    under Tennessee's Unfair Trade Practices Act, TENN. CODE ANN. § 47-25-101 *et seq.* (2007).

23    *See* Order (8/31/2007) at 68-69 ("there is simply no authority relied on by plaintiffs that expressly

24    grants the Attorney General the right to assert a parens patriae claim for damages on behalf of

25    natural persons or consumers"); *see also, State ex rel. Leech v. Levi Strauss & Co.*, No. 79-722-

26    III, 1980 WL 4696, at *4 (Tenn. Ch. Ct. Sept. 25, 1980) (refusing to allow state to collect

27    damages for individual citizens under the doctrine of *parens patriae*).  Nevertheless here, the

28    Attorney General inexplicably continues to seek recovery for damages allegedly sustained by

1   consumers under that statute. *See* TAC ¶¶ 360 (Tennessee "brings this action . . . pursuant to

2   TENN. CODE ANN. § 47-25-101 *et seq.*, on behalf of the State, its state agencies, and its political

3   subdivisions for: (a) damages sustained by the State, local government *and consumers*" (emphasis

4   added)). The only change to Tennessee's *parens patriae* claim is that Tennessee now seeks

5   damages solely on its own behalf, and not on behalf of consumers. This amendment does not

6   cure the claims' defects.

7        "*Parens patriae* has received no judicial recognition in this country as a basis for recovery

8   of money damages *for injuries suffered by individuals.*" *Leech*, 1980 WL 4696 at *4 (quoting

9   *Frito-Lay*, 474 F.2d at 775)(emphasis added)). The *Leech* decision is squarely on point here.

10  There, the court barred Tennessee's *parens patriae* claim because it attempted to "extend the

11  [*parens patriae*] concept to include an action *by the State for injury to individual citizens.*" *Id.* at

12  *4 (emphasis added). That is precisely what Tennessee attempts to do here. That Tennessee

13  amended its claim to no longer bring it on behalf of consumers misses the point. The claim was

14  — and still remains — defective because it was premised on *injuries sustained by consumers*, not

15  because Tennessee brought the claim on behalf of consumers. *Id.* ("[*Parens patriae*] injury is

16  perceived as injury to the quasi-sovereign interest of the State itself.") Tennessee's *parens*

17  *patriae* claims should therefore be dismissed.

18          2.      **There Is No Controlling Authority Allowing the New Mexico Attorney**
                    **General to Bring a *Parens Patriae* Suit for Damages Under the Unfair**
19                  **Trade Practices Act.**

20       New Mexico also improperly brings a *parens patriae* claim on behalf of natural persons

21  under New Mexico's Unfair Trade Practices Act, N.M. STAT. ANN.§ 57-12-1 *et seq.* (2007). *See*

22  TAC ¶ 314. This Court recently dismissed similar claims brought under the New Mexico

23  Antitrust Act, N.M. STAT. ANN. §§ 57-1-1 *et seq.*, because New Mexico lacked the authority to

24  do so. Order (8/31/2007) at 64-65.[5] Here, too, the state lacks authority to bring *parens patriae*

25          [5] Defendants previously moved to dismiss the Unfair Trade Practices *parens patriae* claim
26  on these grounds. *See* Mot. to Dismiss FAC (10/10/2006) at 13 (seeking dismissal of claims
    brought under N.M. STAT. ANN. § 57-12-1 *et seq.*) While the Court dismissed New Mexico's
27  antitrust *parens patriae* claims, it did not address whether the Attorney General has authority to
    bring such claims under the Unfair Trade Practices law. *See* Order (8/31/2007) at 64-65.

28

Defendants' Motion to Dismiss
                                                                           Master File No. C-06-04333 PJH

1   claims under the New Mexico Unfair Trade Practices Act, therefore the Court should dismiss
2   these claims as well.

3        The New Mexico Unfair Trade Practices Act empowers the Attorney General to bring an
4   action on behalf of the state for injunctive relief, restitution, and civil penalties. *See* N.M. STAT.
5   ANN. §§ 57-12-8(B) (allowing for injunctive and restitutionary relief), 57-12-11 (allowing for
6   civil penalties for willful violations). The statute's plain language does not empower New
7   Mexico's Attorney General to bring a claim on behalf of private persons for damages. On the
8   other hand, New Mexico's legislature explicitly permitted natural persons to bring a claim to
9   recover damages on their own behalf under the statute's "[p]rivate remedies" provision. *See id.* §
10  57-12-10. Thus, based on the statute's plain language, it can be inferred that the legislature
11  intended to limit the Attorney General's ability to sue for damages on behalf of natural persons.
12  Indeed, the New Mexico Attorney General implicitly concedes his lack of express authority to
13  bring a claim by alleging that it is based on "his *inherent* authority vested in him by the
14  Legislature of the State of New Mexico." TAC ¶ 314 (emphasis added). The Attorney General
15  raised an identical argument with respect to the *parens patriae* claim under New Mexico's
16  Antitrust Statute (*see* Opp'n to Mot. to Dismiss FAC (12/13/2007) at 28-29), and this Court
17  rejected it. Because New Mexico's Unfair Trade Practices Act does not authorize the Attorney
18  General to bring a damages claim in a *parens patriae* capacity, New Mexico's *parens patriae*
19  claim should be dismissed.

20      ## C.   INTRASTATE CONDUCT REQUIREMENT

21      The Court's August 31 Order dismissed Maryland's and Mississippi's antitrust claims
22  (among others) because they failed to allege intrastate conduct as required by the governing state
23  statutes. Order (8/31/2007) at 44-49. Their amended claims have not cured these defects, and
24  should therefore be dismissed.

25          ### 1.   Maryland

26      Maryland purports to sue under Maryland's Antitrust Act, MD. CODE ANN., COM. LAW §
27  11-201 *et seq.* (2007). TAC ¶ 289. As this Court noted in its August 31 Order, Maryland's
28  Antitrust Act explicitly defines "[t]rade and commerce" to include "all economic activity within

7

1  the State." Order (8/31/2007) at 44. But alleging economic activity alone is insufficient to state a

2  claim under the statute. In *In re Microsoft Corp. Antitrust Litig.*, the court found that a plaintiff

3  must allege that the *defendant* engaged in wholly intrastate conduct. *In re Microsoft Corp.*

4  *Antitrust Litig.*, Nos. MDL 1332, 2003 WL 22070561, at *2 (D. Md. 2003) (dismissing complaint

5  for failure to allege defendant's intrastate conduct and noting "the question . . . becomes whether

6  plaintiffs have alleged at least *some* conduct by [defendant] which was performed wholly

7  intrastate."). Thus, general allegations that a defendant's conduct affected intrastate commerce is

8  insufficient alone to state a claim. *Id.* (finding plaintiffs' "entirely conclusory averment that

9  'Defendant . . . obviously created a monopoly in both interstate and intrastate commerce'"

10  insufficient to allege defendant's intrastate conduct).

11        Here, Maryland alleges:

12            During the relevant period, DRAM memory chips were in the
              regular, continuous, and substantial flow of intrastate commerce in
13            Maryland. Computers containing DRAM memory chips were
              shipped by OEMs to locations in Maryland, sold from stores in
14            Maryland and purchased by Maryland governmental entities,
              businesses and consumers.

15  TAC ¶ 271. This alone does not state a claim under Maryland's antitrust statute. Maryland fails

16  to allege *any* conduct performed intrastate by Defendants. The allegations implicate interstate

17  activity and in-state transactions to which Defendants were not involved. Thus, Maryland's

18  claims under the antitrust statute must be dismissed.

19

20            **2.    Mississippi**

21        Mississippi's claims suffer from the same defects. Mississippi purports to sue under the

22  Mississippi Antitrust Act, MISS. CODE ANN. § 75-21-1 *et seq.* (2007). TAC ¶¶ 288-294. The

23  Mississippi Supreme Court has consistently interpreted the state's antitrust statute as applying only

24  to illegal conduct that occurred within Mississippi. *See Standard Oil Co. of Ky. v. State ex rel.*

25  *Attorney General*, 65 So. 468, 470-71 (Miss. 1914) (requiring some transactions that are wholly

26  intrastate); *see also,* Order (8/31/2007) at 48-49. In the case at bar, Plaintiffs' allege that the

27  conspiracy "resulted in wholly intrastate conduct as DRAM and DRAM-containing products were

28  imported into the [sic] Mississippi and sold within the state of Mississippi." TAC ¶ 289. These

1   allegations are inadequate because they do not allege any conduct (illegal or otherwise) by

2   Defendants that took place wholly inside Mississippi. Therefore, Mississippi's claims under its

3   antitrust statute should be dismissed in their entirety.

4   **II.    MOTION TO STRIKE**

5          Plaintiffs also improperly seek to recover damages that are precluded as a matter of law.

6   Prayers for relief are properly stricken under Federal Rules of Civil Procedure Rule 12(f). *See,*

7   *e.g., Caldwell v. Caldwell*, No. C 05-4166 PJH, 2006 WL 618511, *2 (N.D. Cal. March 13, 2006)

8   (granting defendants' motion to strike where defendants' invoked Eleventh Amendment

9   immunity that precluded plaintiffs from recovering damages and limited them to injunctive

10  relief); *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1479 n.34 (C.D. Cal. 1996) ("[A] motion to

11  strike may be used to strike any part of the prayer for relief when the damages sought are not

12  recoverable as a matter of law.") (citing *Tapley v. Lockwood Green Eng'rs, Inc.*, 502 F.2d 559,

13  560 (8th Cir. 1974)).  Similar to a motion to dismiss, when a court reviews a motion to strike the

14  prayer under Fed. R. Civ. P. 12(f), it must view allegations in the light most favorable to the

15  pleading party. *See Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001) ("Courts

16  must view the pleading . . . in the light most favorable to the pleader, treating as admitted all

17  material facts alleged and all reasonable presumptions that can be drawn therefrom.")  Here,

18  several of Plaintiffs' prayers for relief fail as a matter of law, and therefore should be stricken

19  from the Third Amended Complaint.

20  **A.    The prayer for treble damages brought by Louisiana, New Mexico, Nevada
           and Vermont should be stricken because the states are not entitled to such
21         relief as a matter of law.**

22         Louisiana, New Mexico, Nevada and Vermont purport to bring claims for treble damages.

23  But the governing statutes do not permit the type of recovery sought in *parens patriae* actions.

24  Those statutes stand in stark contrast to other federal and state statutes that explicitly permit

25  recovery of treble damages in *parens patriae* actions. *See, e.g.,* 15 U.S.C. § 15(c)(a)(2) (2007)

26  (for *parens patriae* claims on behalf of natural persons, "the court shall award the State as

27  monetary relief threefold the total damage sustained"); CAL. BUS. & PROF. CODE § 16760(a)(2)

28  (2007)) (same); DEL. CODE ANN. tit. 6, § 2108(c) (2007) (for *parens patriae* claims on behalf of

9

1   natural persons, "the Court, may in its discretion, award as monetary relief up to threefold the

2   total damages sustained [for willful violations]"). Because treble damages were not expressly

3   provided for in the governing statutes, it can be inferred that the legislatures did not intend for

4   such damages to be available, accordingly they should be barred here.

### 1. Louisiana

6   Louisiana purports to bring its claim under the Consumer Protection Law, LA. REV. STAT.

7   ANN. § 51:1401 *et seq.* (2007), to recover treble damages, injunctive relief and attorneys' fees and

8   costs on its own behalf, on behalf of state agencies and political subdivisions, and citizens. TAC

9   ¶¶ 264-65. The statute does not on its face permit the Louisiana Attorney General to recover

10  damages (treble or otherwise). Rather, it permits actions by the Attorney General for injunctive

11  relief, restitution, and civil penalties limited to five thousand dollars per violation. *See* LA. REV.

12  STAT. ANN. §§ 51:1407 (allowing the Attorney General to seek injunctive relief and civil

13  penalties), 51:1408A(5)  (allowing the Attorney to seek restitution on behalf of "aggrieved

14  persons").[6]  In contrast, the statute explicitly permits the recovery of treble damages in private

15  actions. *Id.* § 51:1409.

16  Even more, the statute expressly prohibits attempts to recover *any* actual damages in

17  actions brought "in a representative capacity." *See id.* § 51:1409A ("Any persons who suffers

18  any ascertainable loss . . . may bring an action individually but not in a representative capacity to

19  recover actual damages."); *see also, State ex rel. Guste v. General Motors Corp.*, 370 So. 2d 477,

20  486 (La. 1979) (affirming ruling that permitted the Attorney General to bring a class action for

21  restitution, but not for damages). There is no question that the Louisiana Attorney General brings

22  this action in a representative capacity. *See* TAC ¶ 264 ("Plaintiff State of Louisiana represents

23  itself, its State Agencies, its Political Subdivisions, and all citizens, whether natural or juridical.")

24  Thus, Louisiana may not recover any actual damages, let alone treble damages.

25

26

27  [6] The Attorney General does not seek to recover either civil penalties or restitution here.
    *See* TAC ¶ 265.

28

1    Even if Louisiana were permitted to recover damages, it has not alleged the basic statutory

2    requirements to recover treble damages. Section 51:1409 allows treble damages only when the

3    "unfair or deceptive method, act or practice was knowingly used, *after being put on notice by the*

4    *attorney general*." *Id.* § 51:1409A (emphasis added). Louisiana courts have frequently barred

5    treble damages where notice was not given to a defendant. *See, e.g.*, *B & G Crane*, 935 So. 2d

6    164, 170 (La. Ct. App. 2006) (granting motion to strike treble damages claim because notice was

7    not provided); *Joseph v. Hendrix*, 536 So. 2d 448, 450 (La. Ct. App. 1988) (same). Here,

8    Louisiana has not alleged that such notice was provided. Accordingly, Louisiana's damages

9    claim fails as a matter of law.

10    ### 2.    New Mexico

11    New Mexico purports to bring a claim for "the greater of treble damages or $300.00" on

12    behalf of the State and its natural persons under the New Mexico Unfair Practices Act, N.M.

13    STAT. ANN. § 57-12-1 *et seq.* (2007). TAC ¶ 314. But under the statute, the New Mexico

14    Attorney General cannot recover treble damages or $300, on behalf of either the state or natural

15    persons.[7]

16    Two provisions govern remedies recoverable by the New Mexico Attorney General under

17    the New Mexico Unfair Trade Practices Act. Section 57-12-8(B) permits the Attorney General to

18    bring suit for injunctive relief and restitution. *Id.* § 57-12-8(B). Section 57-12-11 permits the

19    Attorney General to bring suit for civil penalties for willful violations of the statute. *See id.* § 57-

20    12-11. Indeed, the statute nowhere authorizes the Attorney General to seek damages — let alone

21    treble damages.

22    Rather, the Attorney General appears to seek "the greater of treble damages or $300"

23    under the statute's "Private Remedies" provision. *Id.* § 57-12-10; *see also, Page & Wirtz Constr.*

24    

25    [7] Defendants believe the Unfair Trade Practices claim on behalf of New Mexico persons should be dismissed in its entirety because the Attorney General lacks the authority to bring
26    *parens patriae* damages actions. *See supra* at pp. 6-7. In the event that the Court finds that such a claim may be brought, Defendants raise this alternative argument that the Court should strike
27    the prayer for treble damages sought to be recovered on behalf of natural persons for the reasons stated here.

28

1  *Co. v. Solomon*, 794 P.2d 349, 354 (N.M. 1990) (describing subsections A and B of N.M. STAT.

2  ANN. § 57-12-10 as "private remedies").[8]  That section allows:

> Any *person* who suffers any loss of money or property, real or
> personal, as a result of any [violation of the Act] may bring an action to
> recover actual damages or the sum of one hundred dollars ($100),
> whichever is greater.  Where a trier of fact finds that the party charged
> with [a violation of the Act] has willfully engaged in the trade practice,
> the court may award up to three times actual damages or three hundred
> dollars ($300), whichever is greater, to the party complaining of the
> practice.

*Id.* § 57-12-10(B) (emphasis added).  The statute defines "person" as "natural persons,

corporations, trusts, partnerships, associations, cooperative associations, clubs, companies, firms,

joint ventures or syndicates." *Id.* § 57-12-2(A).  The state is not a "person" for purposes of the

statute, and therefore has no claim under section 57-12-10(B).[9]  Therefore the State cannot

recover treble damages under this provision.[10]

### 3.    Nevada

Nevada purports to bring this action to recover "treble damages and reasonable attorneys'

fees and costs" under Nevada's Unfair Trade Practice Act, NEV. REV. STAT. §§ 598A.160,

598A.200 (2007), on behalf of the State, its agencies and political subdivisions, and natural

persons. TAC ¶¶ 308-309.  Treble damages are not recoverable on behalf of natural persons

---

[8]  New Mexico courts have consistently found that the Unfair Trade Practices Act was
created "to provide a *private* remedy for individuals who suffer pecuniary harm." *Eckhardt v.
Charter Hosp. of Albuquerque, Inc.*, 953 P.2d 722, 736 (N.M. App. 1997) (quoting *Parker v. E.I.
Du Pont de Nemours & Co.*, 909 P.2d 1, 13 (N.M. App. 1995) (emphasis added).

[9]  Allowing the Attorney General to recover treble damages on behalf of natural persons
would render the express statutory authority to recover restitution superfluous because
restitutionary relief is subsumed in the recovery of treble damages.  Like Vermont courts, New
Mexico courts interpret statutes so that each part of the statute is given meaning and no part is
superfluous. *See, e.g., Western Investors Life Ins. Co. v. N.M. Life Ins. Guar. Ass'n*, 671 P.2d 31,
34 (N.M. 1983) ("Statutes must be construed so that no part of the statute is rendered surplusage
or superfluous.").

[10]  In addition, the statute expressly limits the remedies available to members of a class
action to actual damages. N.M. STAT. ANN § 57-12-10(E).  The Attorney General here does not
purport to bring a class action on behalf of natural persons, but to the extent class actions are
analogous to *parens patriae* suits, the class action limitation is instructive here and should be
applied to the Attorney General's purported representative action.

1    under either of these provisions — or any other of the statute's provisions — and therefore should

2    be stricken.

3        Section 598A.160 governs *parens patriae* actions under Nevada's antitrust statute. That

4    provision allows the state to bring an action "[a]s parens patriae of the persons residing in this

5    state, with respect to damages sustained directly or indirectly by such persons." NEV. REV. STAT.

6    § 598A.160(1)(a). The statute quantifies the amount of damages recoverable: "[I]n any action

7    under this section, this state . . . [m]ay recover the *aggregate damage sustained* by the persons on

8    whose behalf this state sues, without separately proving the individual claims of each such

9    person." *Id.* § 598A.160(2) (emphasis added). Thus, the statute explicitly limits the state's

10   *parens patriae* recovery to single damages on behalf of individuals.[11] Nevada law is well-settled:

11   "[W]hen the language of a statute is plain, its intention must be deduced from such language, and

12   the court has no right to go beyond it." *Cirac v. Lander County*, 602 P.2d 1012, 1015 (Nev.

13   1979) (quoting *State ex rel. Hess v. Washoe County*, 6 Nev. 104, 107 (1870)). Thus, under this

14   provision, Nevada may recover single damages on behalf of its citizens, not treble damages.

15       The other statute provision Nevada cites does not govern claims brought on behalf of

16   natural persons. *See* NEV. REV. STAT. § 598A.200. In its entirety § 598A.200 states:

17           The state, any district, municipal corporation, agency or other political
             subdivision of the state *injured in its business or property* by reason of
18           a violation of the provisions of this chapter, shall recover treble
             damages, together with reasonable attorney fees and costs.
19

20   *Id.* § 598A.200 (emphasis added). The statute limits treble damages to injuries sustained by

21   government entities, and therefore does not support the State's attempt to recover treble damages

22   on behalf of persons. Thus, this Court should strike Nevada's prayer for treble damages on behalf

23   of natural persons.

24

25       [11] Section 160 also states that Nevada's Attorney General may bring an action to "recover
     damages and secure other relief provided by the provisions of this chapter." NEV. REV. STAT. §
26   598A.160(1). The "other relief" provided by the statute for *parens patriae* cases is specified in §
     598A.070(1)(c), which allows the Attorney General to bring a *parens patriae* suit for injunctive
27   relief and penalties.

28

                                                    13              Defendants' Motion to Dismiss
                                                                    Master File No. C-06-04333 PJH

1

####     4.    Vermont

2          Vermont brings this action on behalf of the State, its agencies and consumers under the

3     Vermont's Consumer Fraud Act, VT. STAT. ANN. tit. 9, § 2451 *et seq.* (2007), on behalf of the

4     state, its entities and Vermont consumers. TAC ¶ 365. The State seeks to recover injunctive relief,

5     civil penalties, treble damages, attorneys' fees and costs under two statute provision: VT. STAT.

6     ANN. tit. 9, §§ 2458 and 2465. TAC ¶ 366. These sections however do not permit treble

7     damages in a *parens patriae* action.

8          Section 2458 permits the Vermont Attorney General to bring an action on behalf of the

9     state to enjoin consumer fraud violations. *See id.* § 2458(a) . That section further provides that

10    the Attorney General may impose a civil penalty, request "an order for restitution of cash or

11    goods on behalf of a consumer or a class of consumers similarly situated," and recover for the

12    value of its services and expenses in bringing an action. *Id.* § 2458(b). Absent from this

13    provision is any authority to recover damages (single or treble) on behalf of consumers.

14          Nor does §2465 permit treble damages. Section 2465 provides that:

15               Any person who sustains damages or injury as a result of any violation
                 of state antitrust laws, including section 2453 of this title, may sue and
16               recover from the violator the amount of his or her damages, or the
                 consideration or the value of the consideration given by the aggrieved
17               person, reasonable attorney's fees and exemplary damages, not
                 exceeding three times the value of the consideration given or damages
18               sustained by the aggrieved person.

19    *Id.* § 2465(a).

20          The statute defines "Person" to include the State of Vermont. VT. STAT. ANN. tit. 1, §128.

21    Section 2465 however limits treble damages to "damages sustained by the aggrieved person." *Id.*

22    In other words, Vermont is precluded from seeking treble damages in a *parens patriae* claim, on

23    behalf of other persons. Moreover, as the Vermont Supreme Court has made clear, the relief

24    provided by the Consumer Fraud Act is purposefully broad as a means to "promote and

25    encourage prosecution of *individual* consumer fraud claims." *Gramatan Home Investors Corp. v.*

26    *Starling*, 470 A.2d 1157, 1162 (Vt. 1983) (discussing parallel remedial provision in VT. STAT.

27

28

Defendants' Motion to Dismiss
Master File No. C-06-04333 PJH

1  ANN. tit 9, § 2461(b)) (emphasis added).[12]  Vermont's prayer to recover treble damages on behalf

2  of Vermont consumers should therefore be stricken.

3  **B.    Mississippi Cannot Recover Single Damages**

4  Mississippi purports to sue under the Mississippi Consumer Protection Act, MISS. CODE

5  ANN. § 75-24-1 *et seq.* (2007), to recover "damages, civil penalties and appropriate injunctive

6  relief." TAC ¶ 297.  But under the consumer protection statute's plain language, the Mississippi

7  Attorney General cannot recover damages.

8  Sections 75-24-5(1) and (2) set forth the conduct that violates the consumer protection

9  statute.  Subsection 1 provides a general prohibition against "[u]nfair methods of competition

10  affecting commerce and unfair or deceptive trade practices in or affecting commerce." *Id.* § 75-

11  24-5(1).  Actions for violations under subsection 1 must be brought under § 75-24-9. *See id.* §

12  75-24-5(1) ("Action may be brought under Section 75-24-5(1) only under the provisions of

13  Section 75-24-9.")[13]  Section 75-24-9 permits the Mississippi Attorney General to seek injunctive

14  relief, not damages. *Id.*

15  Nor can Mississippi rely on subsection 2 because it is inapplicable here.  Section 75-24-

16  5(2) sets forth specific acts or practices that are prohibited, including (1) passing off goods or

17  services as those of another; (2) misrepresentation of the source, characteristics, quantities,

18  geographic origin, sponsorship, approval, or certification of goods or services; (3) disparaging the

19  goods, services, or business of another by false or misleading representation of fact; (4)

20

21  _____

[12] The relief afforded in section 2461(b) to consumers is almost identical to that provided
for persons in section 2465.  *Compare* VT. STAT. ANN. tit 9, § 2461(b) (any injured consumer

22  "may sue and recover from the seller, solicitor or other violator the amount of his damages, or the
consideration or the value of the consideration given by the consumer, reasonable attorney's fees,

23  and exemplary damages not exceeding three times the value of the consideration given by the
consumer") *with* VT. STAT. ANN. tit 9, § 2465(a) (any injured person "may sue and recover from

24  the violator the amount of his or her damages, or the consideration or the value of the
consideration given by the aggrieved person, reasonable attorney's fees and exemplary damages,

25  not exceeding three times the value of the consideration given or damages sustained by the

26  aggrieved person").

27  [13] There is no such limitation to actions brought based on conduct that violates subsection
2.

28

1   advertising goods or services with intent not to sell them as advertised or not to supply reasonably

2   expectable public demand; and (5) misrepresentations concerning the reasons for, existence of, or

3   amounts of price reductions. *Id.* § 75-24-5(2). Plaintiffs have not alleged here any conduct by

4   Defendants that falls into any of § 75-24-5(2)'s enumerated categories. This Court should

5   therefore strike Mississippi's request for damages.

6         **C.**     <u>**Tennessee Cannot Recover Damages, Civil Penalties, or Fees**</u>

7        This Court has already noted that "Tennessee's antitrust statute fails to even grant the

8   Attorney General the authority to bring any type of suit under the statute." Order (8/31/2007) at

9   68. Even so, Tennessee's Attorney General seeks to recover a myriad of relief to which he is not

10  entitled, including (1) damages,[14] (2) civil penalties, (3) "all available equitable remedies,

11  including injunctive relief and the denial to do business in the State," (4) attorneys fees, (5) expert

12  fees, and (6) costs. *See* TAC ¶ 360. Tennessee's Attorney General improperly attempts to

13  enlarge the State's recovery well beyond the permitted remedies.

14       The TTPA has only two provisions that govern suits brought by the State and neither are

15  applicable here. The first provision permits the State to bring a criminal suit and recover criminal

16  penalties upon a corporation's conviction. *See* TENN. CODE ANN. § 47-25-103(b) (2007). The

17  other provision authorizes the State to bring a suit seeking forfeiture of a Tennessee corporation's

18  charter or an order prohibiting foreign corporations from conducting business in the State. *See id.*

19  § 47-25-104. Apart from Tennessee's limited request to deny Defendants the opportunity to do

20  business in the State, neither of these provisions allow the remedies sought here.

21       Nor can the Attorney General bring this suit under the section allowing for recovery by

22  private parties. That section permits:

23              Any *person* who is injured or damaged . . . may sue for and recover . . .
            the full consideration or sum paid by the person for any goods, wares,

24              merchandise, or articles, the sale of which is controlled by such
            combination or trust.

25

26       [14] For the reasons discussed above at pp. 5-6, the Attorney General's claim for damages

27  based on injuries sustained by consumers should be dismissed for the additional reason that this
Court has already held that he lacks authority to bring a *parens patriae* action for damages.

28

1    *Id.* § 47-25-106 (emphasis added). The state of Tennessee is not a "person" and, therefore,

2    cannot recover damages under this section. *See* Order (8/31/2007) at 68. Instead, "person" is

3    defined to include "a corporation, firm, company or association." TENN. CODE ANN. § 1-3-

4    105(20). Moreover, "State" is separately defined by the statute. *See id.* § 1-3-105(32).[15] Thus,

5    the plain language of the statute precludes the damages requested by Tennessee under this

6    provision. Therefore, all relief requested in paragraph 360 of the TAC should be stricken, except

7    for the request for "the denial to do business in the State" and for costs.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    [15] A federal district court has interpreted "person" to include Metropolitan Governments.
     *See Metro. Gov't of Nashville and Davidson County, Tennessee v. Ashland Oil, Inc.*, 535 F. Supp.
25    328 (M.D. Tenn. 1982). That case is inapposite here, as it turns on the fact that "person" is
     defined to include corporate entities. Unlike the sovereign State of Tennessee, "Metropolitan
26    Government of Nashville and Davidson County is a single municipal *corporate* entity." *Faust v.*
     *Metro. Gov't of Nashville and Davidson County*, 206 S.W.3d 475, 481 (Tenn. Ct. App. 2006)
27    (emphasis added).

28

Defendants' Motion to Dismiss
Master File No. C-06-04333 PJH

1

## CONCLUSION

2          For the foregoing reasons, Defendants respectfully submit that this motion to dismiss

3   should be granted with prejudice.

4

DATED:  November 21, 2007                    Respectfully Submitted,
5                                            O'MELVENY & MYERS LLP

6                                                   */s/  Kenneth O'Rourke*
                                                    Kenneth R. O'Rourke
7                                                   Steven H. Bergman

8

9                                            Attorneys for Hynix Defendants (additional
                                             Moving Defendants and counsel listed on
10                                           next page)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Motion to Dismiss
Master File No. C-06-04333 PJH

1   Additional Moving Defendants and Counsel:

2   Joel S. Sanders
    G. Charles Nierlich
3   Joshua Hess
    GIBSON, DUNN & CRUTCHER LLP
4   One Montgomery Street
    Montgomery Tower, 31st Floor
5   San Francisco, CA 94104
    (415) 393-8200 (telephone)
6   (415) 986-5309 (facsimile)

7
    **Attorneys for Defendants Micron**
8   **Technology, Inc. and Micron**
    **Semiconductor Products, Inc.**
9

10  Stephen V. Bomse
    David C. Brownstein
11  Scott E. Morgan
    HELLER EHRMAN LLP
12  333 Bush Street
    San Francisco, CA 94104-2878
13  (415) 772-6000 (telephone)
    (415) 772-6268 (facsimile)
14

15  **Attorneys for Defendants Mosel Vitelic**
    **Corporation and Mosel Vitelic**
16  **Incorporated**

17

18

19

20

21

22

23

24

25

26

27

28

Julian Brew
Joshua Stambaugh
KAYE SCHOLER LLP
1999 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067
(310) 788-1000 (telephone)
(310) 788-1200 (facsimile)

**Attorneys for Defendants Infineon**
**Technologies North America Corp. and**
**Infineon Technologies AG**

James G. Kreissman
Harrison J. Frahn IV
Gabrielle N. Rubin
SIMPSON THACHER & BARTLETT LLP
2550 Hanover Street
Palo Alto, CA 94304
(650) 251-5000 (telephone)
(650) 251-5002 (facsimile)

**Attorneys for Defendants Elpida Memory**
**(USA) Inc. and Elpida Memory, Inc.**

Defendants' Motion to Dismiss
Master File No. C-06-04333 PJH

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Howard M. Ullman
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
(415) 773-5700 (telephone)
(415) 773-5759 (facsimile)

Robert Freitas
Na'il Benjamin
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1021
(650) 614-7400 (telephone)
(650) 614-7401 (facsimile)

**Attorneys for Defendants Nanya
Technology Corporation and Nanya
Technology Corporation USA**

Robert B. Pringle
Paul Griffin
Jonathan E. Swartz
THELEN REID BROWN RAYSMAN &
STEINER LLP
101 Second Street, Suite 1800
San Francisco, CA 94105
(415) 371-1200 (telephone)
(415) 371-1211 (facsimile)

**Attorneys for Defendant NEC Electronics
America, Inc.**

Defendants' Motion to Dismiss
Master File No. C-06-04333 PJH