EDMUND G. BROWN, JR.
Attorney General of the State of California
JANET GAARD
Chief Assistant Attorney General
KATHLEEN E. FOOTE - Cal Bar No. 65819
Senior Assistant Attorney General
State Bar No. 65819
NICOLE S. GORDON - Cal Bar No. 224138
Deputy Attorney General
SANGEETHA RAGUNATHAN – Cal Bar No. 229129
Deputy Attorney General
EMILIO E. VARANINI - Cal Bar No. 163952
Deputy Attorney General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 703-5908
  Fax: (415) 703-5480
  Email: emilio.varanini@doj.ca.gov
Attorneys for Plaintiffs

Case No.:  C 06-4333 PJH

THE STATE OF CALIFORNIA *et al.*,

Plaintiffs,

v.

INFINEON TECHNOLOGIES AG *et al.*,
Defendants.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

ORAL ARGUMENT REQUESTED

Hearing Date: February 27, 2008
Time: 9:00 a.m.
Courtroom: 3, 17th Floor
Judge:  Hon. Phyllis J. Hamilton

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**TABLE OF CONTENTS**

I.      INTRODUCTION                                                                      1

II.     CHALLENGED CLAIMS                                                            1

        A.   Defendants challenge claims that were never asserted by Nevada and Vermont.
             These motions should be stricken or denied as moot.                         1

        B.   Defendants have cited to a Mississippi case having no bearing on Maryland law
             in their challenge to Maryland's claims.  Their motion should be dismissed as
             unfounded and unsupported by law.                                           2

        C.   Defendants' challenges to Mississippi's pleading intrastate conduct and its
             authority to obtain restitution misread Mississippi cases and statutes and should
             be denied.                                                                  5

        D.   The New Mexico Attorney General has always had authority to recover
             restitution on behalf of New Mexico consumers, and to recover treble damages
             for specified entities.                                                     9

        E.   The Tennessee Attorney General has the authority to proceed as *parens patriae*
             for the relief stated in the Third Amended Complaint.                       12

        F.   Defendants misconstrue Utah law and the cases construing it.  Utah has always
             recognized the authority of the Attorney General to pursue remedies for Utah
             indirect purchasers.                                                        15

        G.   Defendants' arguments against Louisiana's claims have no merit because they
             cannot be legally substantiated.                                            21

III.    CONCLUSION                                                                       25

1

**TABLE OF AUTHORITIES**

2

3

<u>**Cases**</u>

4    *Alfred L. Snapp & Son, Inc. v. Puerto Rico,*
        458 U.S. 592, 102 S.Ct. 3260 and 73 L.Ed.2d 995 (1982)                   23
5

6    *Apodaca v. Wilson,*
        84 NM 516, 525 P.2d 876 (NM 1974)                                        11

7    *Assoc. Gen. Contractors v. Bd. of Oil, Gas & Mining,*
        38 P. 3d 291, 301 (Utah 2001)                                            16
8

9    *Belle Pass Terminal, Inc., v. Jolin, Inc.,*
        618 So.2d 1076, 1081 (La. App. 1st Cir. 1993)                            23

10   *Bernhardt v. Polygraphic Co. of America, Inc.,*
        350 U.S. 198 (1956                                                       21
11

12   *Berry v. Beech Aircraft Corp.,*
        717 P. 2d 670, 675 (Utah 1985)                                           15

13   *Blake v. Abbott Laboratories, Inc.,*
        1996 WL 134947 (1996)                                                    13
14

15   *Brummitt et al. v. Ogden Waterworks Co., et al,*
        93 P. 828, 831 (Utah 1908)                                               18

16   *Bunker's Glass Co. v. Pilkington,*
        *PLC,* 75 P.3d 99, 109 n. 9 (Ariz. 2003)                             17, 19
17

18   *Calif. v. ARC Am. Corp.,*
        490 U.S. 93, 105-106 (1989)                                              15

19   *California v. Frito-Lay,*
        474 F.2d 774 (9th Cir. 1973)                                             12
20

21   *Capitol House Preservation Co. v. Perryman Consultants, Inc.,*
        725 So.2d 523, 532 (La. App. 4th Cir. 1988)                              22

22   *Capitol House Preservation Co., LLC v. Perryman Consultants, Inc.,*
        725 So.2d 523 (La. App. 1 Cir. 1998)                                     23
23

24   *Comes v. Microsoft Corp.,*
        646 N.W.2d 440, 449 and n. 10 (Iowa 2002)                                17

25   *Comes v. Microsoft Corp., supra,*
        646 N.W.2d at 445-446 (Iowa 2002)                                        18
26

C06 4333 PJH Plaintiffs' Opposition to                    iii
Defendants' Motion To Dismiss for Failure to
State a Claim

*Craftsman Builders Sup., Inc. v. Butler Manuf. Co.,*
  974 P. 2d 1194, 1198 (Utah 1999) ........................................................ 15

*D.R. Ward Constr. Co. v. Rohm and Haas Co.,*
  470 F. Supp.2d 485, 497 (E.D.Pa. 2006) ........................................... 19

*Dimidowich v. Bell & Howell,*
  803 F. 2d 1473, 1482 (9th Cir. 1986) ............................................... 15

*Donalson v. The County of San Miguel,*
  1 Gild. 263 (NM Terr. 1859) ................................................................ 11

*Erie v. Tompkins,*
  304 U.S. 64, 78-79, 58 S.Ct. 817, 822-823, 82 L.Ed. 1188 (1938) ...... 21, 22

*F.T.C. v. Mylan Lab., Inc., supra; Lorazapam & Clorazepate Antitrust Litig.,*
  205 F.R.D. 369 (D.D.C. 2002) ............................................................ 19

*F.T.C. v. Mylan Labs., Inc.,*
  99 F. Supp. 2d 1 (D.D.C. 1999) ...................................................... 19, 20

*Federal Trade Commission v. Cement Institute,*
  333 U.S. 683 (1948) ............................................................................ 22

*Federal Trade Commission vs Mylan Laboratories, Inc.,*
  62 F.Supp.2d 25, 36 (D.C.D.C. 1999) ............................................... 14

*Freeman Indus., LLC v. Eastman Chem. Co., et al.,*
  172 S.W. 3d 512, 519-520 (Tenn. 2005) ........................................... 18

*Freeman v. San Diego Ass'n of Realtors,*
  322 F. 3d 1133, 1145 (9th Cir. 2003) ............................................. 19

*FTC v. Pantron I Corp.,*
  33 F. 3d 1088, 1102 (9th Cir. 1994) (FTC Act, § 13(b) .................. 20

*Giles v. Gen. Motors Acceptance Corp.,*
  494 F. 3d 865, 872 (9th Cir. 2007) ................................................. 23

*Goebel v. Salt Lake City S. R.R. Co.,*
  104 P. 3d 1185, 1198 (Utah 2004) ..................................................... 19

*Guaranty Trust Co. of New York v. York,*
  326 U.S. 99, 108 (1945) ...................................................................... 21

*Gulf South Business  Systems and Consultants, Inc. v. State,*
  625 So.2d 697 (La. App. 1st Cir. 1993) ......................................... 22

*Guste (Attorney General) v. Demars,*
  330 So.2d 123 La. App. 1st Cir. 1976) ........................................... 22

*Guste v. General Motors,*
    370 So.2d 477 (1979)                                                                23

*Hatton-Ward v. Salt Lake City Corp.,*
    828 P. 2d 1071, 1072 (Utah App. 1992), *cert. denied*, 843 P. 2d 1042 (Utah 1992)   16

*Hyde v. Abbott Labs.,*
    473 S.E. 2d 689, 680 (N.C. App. 1996);                                              18

*Illinois Brick Co. v. Illinois,*
    431 U.S. 720 (1977)                                                            passim

*In re Cardizem CD Antitrust Litig.,*
    218 F.R.D. 508 (E.D. Mich. 2003)                                           11, 14, 19

*In re Lorazepam & Clorazepate Antitrust Litig.,*
    205 F.R.D. 369, 386 (D.D.C. 2002)                                              11, 14

*In re Microsoft Corp. Antitrust Litigation,*
    Nos. MDL 1332, 2003 WL 22070561 (D. Md. 2003)                                2, 5, 7

*In re Remeron End-Payor Antitrust Litig.,*
    2005 WL 2230314, 2005-2 Trade Cases  P 74,966 (D.N.J. 2005)                        19

*Judicially Inferred Permissive Harmonization: Arthur v. Microsoft Corp.,*
    676 N.W. 2d 29, 37-38 (Neb. 2004)                                                  18

*Kingsford v. Salt Lake City Sch. Dist.,*
    247 F. 3d 1123, 1129 (10th Cir. 2001)                                             18

*Louisiana Power and Light Co. v. United Gas Pipe Line Co.,*
    493 So.2d 1149 (La. 1986)                                                         22

*Lucas Auto Eng'g,  Inc. v. Bridgestone/Firestone, Inc.,*
    140 F. 3d 1228, 1235 (9th Cir. 1998)                                              19

*McConnell v. State,*
    12 S.W.3d 795, 799 (Tenn. 2000)                                                  12

*Moore v. Am. Coal Co.,*
    737 P. 2d 989, 990 (Utah 1987)                                                   19

*Petty v. Clark,* 192 P. 2d 589, 594 (Utah 1948)                                      19

*Pilcher v. State Dep't of Social Serv.,*
    663 P. 2d 450, 455 (Utah 1983)                                                   19

*Porter vs Warner Holding Co.,*
    328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946)                            14, 19

*Provo City Corp. v. Willden,*
    768 P. 2d 455, 456-57 (Utah 1989)                                                15

*Provo City Corp. v. Willden*,
  *supra*, 68 P.2d at 458, quoting *Johnson v. Utah State Retirement Bd.*, 770 P. 2d 93, 95
  (Utah 1988)                                                                                    16

*Roustabouts v. Hamer*,
  447 So.2d 543 (La. App. 1st Cir. 1984)                                                          23

*Roustabouts, Inc. v. Hamer*,
  447 So.2d 543, 548 (La. App. 1 Cir. 1984)                                                       22

*Sherwood v. Mircrosoft Corp.*,
  Not Reported in S.W. 3d, 2003 WL 21780975, *28 (Tenn. Ct. App. 2003)                            18

*Silver King Coalition Mines Co. v. Indus. Comm'n.*,
  268 P. 2d 689, 692 (Utah 1954)                                                                  19

*Smith v. Price Dev. Co.*,
  125 P.3d 945, 950 (Utah 2005)                                                                   18

*Standard Oil Co. v. Ky. v. State ex rel. Attorney General*,
  65 So. 468                                                                                5, 6, 10

*State Dept. of Social Serv. v. Higgs*,
  656 P. 2d 998 (Utah 1982)                                                                       18

*State ex rel. Bingaman v. Valley Savings & Loan Association*,
  97 N.M. 8, 636 P.2d 279 (1981)                                                                   9

*State ex rel. Ieyoub v. Bordens, Inc.*,
  684 So. 2d 1024 (La. App. 4th Cir. 1996)                                                     20, 23

*State ex rel. Ieyoub v. Brunswick Bowling and Billiards Dover, Inc.*,
  665 So.2d 520 (La. App. 5th Cir. 1995)                                                          23

*State ex rel. Ieyoub v. Classic Soft Trim, Inc.*,
  688 So.2d 105 (La.. App. 5th Cir. 1997)                                                         24

*State ex rel. Inman v. Brock*,
  622 S.W.2d 36, 41 (Tenn.1981)                                                               11, 12

*State ex rel. Leech v. Levi Strauss & Co.*,
  1981 WL 11430, 1981-1 Trade Cases ¶ 64,076 (Davidson County, Tennessee Chancery,
  1981)                                                                                           12

*State ex rel. Leech v. Levi Strauss & Co.*,
  1980 WL 4696, 1980-2 Trade Cas. (CCH) ¶ 63, 558 (Davidson Chancery, 1980)                       12

*State of New Mexico, as Parens Patriae*, v. *The Scott & Fetzer Co., et al.*,
  1981 WL 2167, 1981-2 Trade Cases P 64,439 (1981)                                                10

*State of Ohio v. Bristol-Myers Squibb Co.*,
  2003 WL 21105104 (D.D.C., May 13, 2003)                                                         19

C06 4333 PJH Plaintiffs' Opposition to
Defendants' Motion To Dismiss for Failure to
State a Claim                                        vi

*State of Texas v. Scott & Fetzer Co.*,
   709 F.2d 1024 (1983)                                                               23

*State of Utah v. Daicel Chem. Indus., Ltd., et al.*
   Civil No. 020910931 (3rd Dist. Utah 2004)                                18

*State v. Greeneville Oil Company, Inc.*
   (Unpublished (E.D.Tenn, 1997))                                        14

*State v. Heath,* 806 S.W.2d 535,
   537 (Tenn. Ct. App.1990)                                       11, 12

*State v. Orkin Exterminating Co., Inc.*,
   528 So.2d 198 (La. App. 4th Cir. 1988)                            22

*State v. Sam Luter Oil Company, Inc.*
   (1996 WL 908650 (M.D.Tenn)                                     14

*State v. Thompson*,
   810 P. 2d  415, 420 (Utah 1991)                                    15

*State, ex rel. Ieyoub v. Classic Soft Trim, Inc.*,
   663 So.2d 835 (La. App. 5th Cir. 1996)                            23

*Statutory Permissive Harmonization:  Bunker's Glass Co. v. Pilkington, PLC, supra*,
   75 P.3d at 102-107 (Ariz. 2003)                                   18

*Summit Water Distrib. Co., et al. v. Summit County, et al.*,
   123 P. 3d 437, 445- 446 (Utah 2005)                              17

Utah Const. art. 1, § 26                                              15

*Winston v. New Mexico State Police Board*, 80 N.M. 310, 454 P.2d 967 (1969)    9

*Yarger v. Timberon Water and Sanitation Dist.*,
   46 P.3d 1270 (N.M.App. 2002)                                       11

### **Statutes**

15 U.S. C. 45(a)                                                          22

1979 Utah Laws, ch. 79                                            16

1992 Utah Laws, S.J.R. 7                                         15

2006 Utah Laws, ch.19, "S.B. 16"                                  16

9 V.S.A. § 2458                                                   2

9 V.S.A. §§ 2458 and 2465                                      2

Ariz. Rev. Stat. Ann. § 44-14-12                                 18

C06 4333 PJH Plaintiffs' Opposition to
Defendants' Motion To Dismiss for Failure to
State a Claim
         vii

1

*Carter v. U. of Utah Medical Center,*
    150 P. 3d 467, 469 n.1)(Utah 2006).                               19

2

Fair Trade Practices Act                                              13

3

Federal Trade Commission Act                                      20, 22

4

*Freechou v. Thomas W. Hooley, Inc.,*
    338 So.2d 337 (La. 1980)                                          21

5

*Id* 13

6

Iowa Code § 553.2                                                     18

7

La. R.S. 36:706                                                       22

8

La. R.S. 51:1402 (9                                                   20

9

La. R.S. 51:1404                                                      23

10

La. R.S. 51:1405                                                      22

11

La. R.S. 51:1408                                                      23

12

La. R.S. 51:1414                                                      23

13

Louisiana Civil Code                                                  21

14

Louisiana Monopolies Act                                              20

15

Louisiana Unfair Trade Act                                        20, 22

16

Louisiana Unfair Trade Statute                                        20

17

*Mackey  v. Compass Marketing Inc.,*
18
    391 Md. 117, 892 A.2d 479 (2006)                                   4

19

Maryland Antitrust Act, Md. Com. Law Code Ann. §§11-201 et seq. ("MATA"))  2, 3, 4

20

*Maryland Staffing Serv., Inc. v. Manpower Inc.,*
    936 F. Supp. 1494 (E.D. Wis. 1996).                                3

21

Md. Comm. Law Code Ann. §§ 11-203(6),(9) and (10)                      3

22

*Metro Gov't of Nashville and Davidson County, Tennessee v. Ashland Oil, Inc.,*
23
    535 F.Supp. 382 (M.D. Tenn. 1982)                                 14

24

Miss. Code Ann. § 25-74(1), (11), (19) and (21)                        8

25

Mississippi's Consumer Protection Act,
    Miss. Code Ann. §75-24 ("MCPA")                                 7, 8

26

Nev. Rev. Stat. § 598A.160 ... 1

Nev. Rev. Stat. §§ 598A.160 and .200 ... 1

Nev. Rev. Stat. §§ 598A.160(2)(a) ... 1

New Mexico Unfair Practices Act
   ("NMUPA"), section 57-12-1 *et seq.*, NMSA 1978 ... 8, 9, 10

*Progressive Security Insurance Co., v. State, ex rel. Ieyoub, et al.*,
   711 So.2d 675 (La. 1998) ... 21

S.B. 16 (U.C.A. § 76-10-911 *et seq.* (Supp. 2007) (as amended 2006). ... 16

Sherman Act ... 22

Tenn Code Ann. § 47-18-109 ... 12

Tenn. Code Ann. § 47-18- 108(c)(1) ... 13

Tenn. Code Ann. § 47-18-101 ... 13

Tenn. Code Ann. § 47-18-103(7) ... 13

Tenn. Code Ann. § 8-6-109(b)(1) ... 11

TENN. CODE ANN. §§ 47-18-101 et seq. ... 11

Tenn.Code Ann. §47-25-106 ... 13

Tennessee Consumer Protection Act ("TCPA") ... 12, 13

U.C.A, §§ 76-10-919 (6) and (7) ... 19

U.C.A. § 50-1-1 ... 16

U.C.A. § 68-3-12 ... 16

U.C.A. § 76-10-912 ... 17

U.C.A. § 76-10-918 ... 19, 20

U.C.A. § 76-10-918, Ex. J ... 16

U.C.A. § 76-10-919(1)(a) ... 16

U.C.A. § 76-10-926 ... 16, 18

U.C.A. §§ 76-10-911 ... 16

U.C.A. Title 50 ... 16

U.C.A. Title 76                                                                                  16

Unfair Practices Act                                                                          9, 11

Utah Comp. Laws 1898, §§ 1752-1762                                          16

Utah Const. art. 1, § 11                                                                     19

Utah Const. art. 12, § 20                                                                   17

## **Other Authorities**

Antitrust Modernization Comm., *Report and Recommendations,* April 2007, Ch. III. B, 273
                                                                                                             17

Utah Const. art. 1, § 11 (adopted 1896)                                          15

Utah Const., art. 1, § 11                                                                     15

Utah Const., art. 12, § 20                                                                   17

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

Defendants again challenge various state claims, offering a panoply of meritless arguments under *Illinois Brick v. Illinois,* 431 U.S. 720 (1977) and state statutes.  In some instances, Defendants have challenged "claims" that have not been asserted in Plaintiff's Third Amended Complaint ("TAC").  In others, Defendants have cherry-picked state statutes and cases, while ignoring other, more persuasive authorities that undermine their arguments. In all cases, Defendants have misconstrued state law and misapplied case authority. Plaintiffs submit that each of the Defendants' arguments fails for these reasons, and for the reasons set forth below.

### II.     CHALLENGED CLAIMS

**A.     Defendants challenge claims that were never asserted by Nevada and Vermont. These motions should be stricken or denied as moot.**

**Nevada:**  Nevada asserts its damage claims, *inter alia*, in three capacities: (1) for treble damages on behalf of itself and its State Agencies, under Nev. Rev. Stat. §§ 598A.160 and .200; (2) for treble damages on behalf of its Political Subdivisions, under Nev. Rev. Stat. §§ 598A.160 and .200; and (3) for aggregate (single) damages on behalf of its natural persons, under Nev. Rev. Stat. § 598A.160, including Nev. Rev. Stat. §§ 598A.160(2)(a).  Nevada is clearly entitled to seek treble damages on behalf of itself, its State Agencies, and its Political Subdivisions and the Defendants do not seek to strike these claims.  Rather, Defendants argue that Nevada may only recover single damages on behalf of its natural persons, and not treble damages.  Yet, as intended in the TAC and as clarified above, that is precisely the claim Nevada is asserting.  *See* TAC ¶¶ 308-309.  Thus, Defendants' motion to strike or dismiss Nevada's treble damages claim on behalf of its natural persons should be stricken or denied as moot.

**Vermont:**  Vermont did not assert the claims challenged by the Defendants. Accordingly, the motion as to Vermont is moot.  Vermont asserts claims under 9 V.S.A. §§ 2458 and 2465 on its own behalf as a purchaser of DRAM or DRAM-containing products and on behalf of the general public.  *See* TAC, ¶ 366.  Vermont's claims on its own behalf give rise to relief and damages, including treble damages, under 9 V.S.A. §§ 2458 and 2465. Vermont's claims on behalf of the general public give rise to relief, including civil penalties and restitution on behalf of the state's consumers, under 9 V.S.A. § 2458.

Defendants do not dispute that Vermont is entitled to seek treble damages under § 2465 on its own behalf.  Rather, Defendants argue only that Vermont may not recover treble damages in a *parens patriae* capacity on behalf of Vermont consumers.  Vermont is not asserting such a claim in this case.  Thus, Defendants' motion should be stricken or denied as moot.

**B.    Defendants have cited to a Mississippi case having no bearing on Maryland law in their challenge to Maryland's claims.  Their motion should be dismissed as unfounded and unsupported by law.**

**Maryland:**  Defendants have made two significant misrepresentations in the short section on Maryland in their November 21, 2007 Motion to Dismiss.  First, they have stated without any basis that a claim under the Maryland Antitrust Act, Md. Com. Law Code Ann. §§11-201 et seq. ("MATA"), must allege that the Defendants engaged in "wholly" intrastate conduct.  They then compound this error by quoting just one paragraph of several that state Maryland claims in the TAC ¶¶ 269-275 to create the false impression that Maryland's allegations concerning commerce are deficient.

Defendants cite only *In re Microsoft Corp. Antitrust Litigation*, Nos. MDL 1332, 2003 WL 22070561 (D. Md. 2003), a case analyzing Mississippi law which Defendants well know neither interprets Maryland antitrust law nor discusses any conduct that occurred in Maryland.[1]

---

[1]Plaintiffs brought this error to Defendants attention on December 3, 2007.  Rather than withdrawing a motion citing clearly erroneous authority, Defendants declared their intent to

1

2

3

4

5

6

7

8

In their Motion to Dismiss Plaintiffs' First Amended Complaint, Defendants relied on *Maryland Staffing*, a case decided by a Wisconsin federal court interpreting Maryland law. *Maryland Staffing* does not analyze MATA, however.  It simply quotes from a portion of MATA defining trade or commerce as "all economic activity within the State," and from another section of the statute stating that the intent of MATA is to complement federal antitrust law by fostering intrastate competition.  *Maryland Staffing* was fully analyzed by this Court in its August 31, 2007 Order Granting in Part and Denying in Part Defendants' Motion to Dismiss ("August 31, 2007 Order") and nowhere states that MATA requires an allegation of wholly intrastate conduct.[2]

9

10

11

12

13

In fact, MATA contains several additional provisions clarifying the intent of the Act to apply to the in-state effects of interstate conduct.  For example, § 11-202(3) directly states:

It is also the intent of the General Assembly that, in deciding whether conduct restrains or monopolizes trade or commerce or may substantially lessen competition within the State, determination of the relevant market or effective area of competition may not be limited by the boundaries of the State.

14

15

16

17

18

19

Other provisions would be nonsensical if MATA did not apply to interstate commerce.  *See*  Md. Comm. Law Code Ann. §§ 11-203(6), (9) and (10) (exempting some activities that are inherently interstate commerce from enforcement under MATA); 11-205(d)(3) (providing for service of process outside the State); 11-207(e) (providing for delayed criminal prosecution of a person whose conduct has also violated federal antitrust laws); and 11-208 (providing for cooperation with federal and state enforcers).  The Maryland

20

21

22

23

24

25

26

file a  "Corrected Motion" replacing the mistaken citation and citing instead *Maryland Staffing Serv., Inc. v. Manpower Inc.*, 936 F. Supp. 1494 (E.D. Wis. 1996).  However, Defendants did not file any such motion until January 4th, 2008, just 5 days before this Response was due. In their administrative motion they seek to insert a new, substantive argument in addition to simply replacing the mistaken citation.  Maryland has filed its objection to this wholly inappropriate attempt to insert a new argument long after the deadline for their initial brief has passed.

[2]In *Maryland Staffing* the Maryland franchisee of a Wisconsin franchisor claimed that the franchisor had overcharged it for insurance payments.  As the Wisconsin court notes, Plaintiffs filed a "shotgun" complaint with nineteen separate counts, only one of which invoked MATA.

1

legislature clearly contemplated that MATA would reach interstate commerce with an effect

2

on intrastate competition.

3

In its August 31, 2007 Order granting Maryland permission to amend its Complaint, the

4

Court recognized that MATA reaches interstate commerce: "[I]n determining whether

5

conduct within the state is unlawful under MATA, anticompetitive activity outside the state

6

will also be considered."  Order at p 45.  Contrary to Defendants' latest claim, the Court

7

found that MATA does not mandate "conduct that is exclusively intrastate in nature."  The

8

Court held in its August 31st Order that "[i]n order to state a claim under MATA, plaintiffs

9

are required to allege that economic activity within the state of Maryland is implicated."

Order at p. 46.

10

Contrary to Defendants' misrepresentation that "Maryland fails to allege any conduct

11

performed intrastate by Defendants," Maryland has in fact specifically alleged that Defendant

12

Micron sold computer chips in Maryland to both public entities and private manufacturers:

13

14

15

16

Defendant Micron, through its Crucial Subsidiary, sold DRAM computer chips directly to the
University of Maryland and other Maryland governmental entities.  These price fixed DRAM
computer chips were also sold directly to computer manufacturers in Maryland and
incorporated in computers built and sold in the State.  As a result of the conspiracy, direct
purchasers of DRAM computer chips in Maryland paid higher prices than they otherwise
would have in a competitive market.

17

TAC ¶ 273.  This allegation alone is sufficient to implicate all Defendants in the case.[3]

18

However, Maryland has also alleged that state of Maryland entities and residents bought

19

more than $100 million worth of DRAM-containing computers from major computer

20

manufacturers and that those Maryland customers were overcharged by manufacturers as a

21

result of the conspiracy by DRAM makers.  TAC ¶ 272.

22

Maryland has sufficiently alleged economic activity by Defendants within Maryland.

23

Defendants' Motion to Dismiss Maryland's claims from the Complaint should be denied.

24

25

26

[3]In *Mackey  v. Compass Marketing Inc.*, 391 Md. 117, 892 A.2d 479 (2006), the
Maryland Court of Appeals held that co-conspirators act as agents of one another in the
furtherance of a conspiracy and it is not necessary for an antitrust co-conspirator defendant to
commit an act in Maryland for the State to exercise jurisdiction over the defendant.

**C.    Defendants' challenges to Mississippi's pleading intrastate conduct and its authority to obtain restitution misread Mississippi cases and statutes and should be denied.**

**Mississippi:**  Defendants challenge Mississippi's claims both as lacking requisite allegations of intrastate conduct, and for seeking damages they claim are disallowed under Mississippi law.  Both arguments misread Mississippi law and should be denied.

In its order approving the TAC[4], this Court gave Mississippi leave to amend its complaint to allege unlawful activities that took place in Mississippi and are in any way related to Defendants' allegedly unlawful conduct.[5] Subsequently, in the TAC, Mississippi amended its claims.  The TAC details intrastate actions that exceed the requirements outlined in *Standard Oil Co. v. Ky. v. State ex rel. Attorney General*, 65 So. 468 ["Standard Oil"] and by this Court.

Defendants look to *Standard Oil* for their baseless contention that "the Mississippi Supreme Court has consistently interpreted the state's antitrust statues as only applying to illegal conduct that occurred within Mississippi." Def. Motion at 8 - 9.  This is a fallacious half-truth that mischaracterizes *Standard Oil* and other Mississippi case law.[6]  *Standard Oil*, a 1914 case, is the only Mississippi Supreme Court decision concerning intrastate conduct.

Defendants' stance mimics the losing position taken by defense counsel in *Standard Oil.*  Defendants in *Standard Oil* argued that "if the principal object of the conspiracy is to enable the conspirators to injure interstate commerce, and . . . the intent there alleged to monopolize intrastate commerce is mere incident to the principal object, and that the two intents are so inseparably connected [then] the state does not have jurisdiction."  *Id.*

---

[4]Joint Stipulation and Order Regarding Defendants' Non-Opposition to Plaintiffs' Motion for Leave to File Third Amended Complaint, entered 10/24/2007.

[5]Order Granting In Part And Denying In Part Defendants' Motion To Dismiss at pg. 48. Examples of conduct provided by the court included sales, purchases, or other activities in trade or commerce.

[6]The decision *In re Microsoft Corp. Antitrust Litig.*, MDL No. 1332, 2003 WL 22070561, at *2, n.4, 2003-2 Trade Cases P 74,138 (D.Md. Aug.22, 2003) specifically finds that the Mississippi Supreme Court has not ruled that "Mississippi antitrust law is limited to intrastate conspiracies*." Id.*

However, the *Standard Oil* court emphatically disagreed, holding that if injury to intrastate competition is a necessary result of the intent to injure interstate commerce, then the action is in fact *also* within the jurisdiction of state law.[7] All that must be presented in the complaint are allegations of "a wholly intrastate transaction." *Id.* at 470. The *Standard Oil* court then provided insight into what is subject to state antitrust laws.

When "an article of interstate commerce (by reason of the fact that it is the subject of a sale by a citizen of another [state]) . . .[is] transported from the one state to the other, [it] loses its character as [a product of interstate commerce] when the transportation has been completed and it is mingled with - and becomes a part of - the general mass of property in the state of its destination." (additional punctuation added). *Id*. at 470.

Thus, when a DRAM chip is transported into Mississippi and mingled with the general mass of property in Mississippi, it becomes an article of intrastate commerce. Furthermore, according to the holding in *Standard Oil*, all that must be shown to apply Mississippi's antitrust laws to Defendants' actions are allegations of a "wholly intrastate transaction." *Id.* at 471.

The *Standard Oil* court then explained what is necessary to plead a "wholly state transaction." In *Standard Oil*, the Mississippi Attorney General pled that the conspirators colluded to allow only one of its group to sell products within the state and that one of the conspirators took steps in furtherance of the collusion through transactions taking place wholly within Mississippi (*i.e.*, selling product in furtherance of the conspiracy within the state). *Id.* The *Standard Oil* court held that this was sufficient - and Mississippi courts were proper - to hear this case, concluding that "based on the prayer for relief, the product (petroleum) was sold and distributed in Mississippi after it had been incorporated into the

---

[7]Specifically, the *Standard Oil* court concluded that "in this we think counsel **are in error** . . . the intent to [injure competition] of intrastate commerce is one of the material objects of this conspiracy [intent to injure interstate competition.]." Thus where an alleged injury to competition were "to be accomplished in part, at least by transactions wholly within the state, are punishable under the laws thereof." *Id*. at 471.

1    general mass of property within the state." Thus, "it appears that the conspiracy here

2    complained of is one that has for its object the monopolizing of both the inter- and intrastate

3    commerce in petroleum products." *Id*. Therefore, "[The alleged actions] …constituted

     intrastate commerce and are governed by the State's laws." *Id*.

4        Similarly, in Plaintiff States' TAC, Mississippi provides significant allegations showing

5    wholly intrastate transactions. Mississippi alleges that Defendants' combination of activities

6    to suppress competition continued through wholly intrastate transactions after the product

7    was imported into the State.[8] Further, the State alleges that specific Defendants furthered the

8    conspiracy through directly selling product imported into the State to governmental entities.[9]

9    Additionally, the State alleges that Defendants imported product into the State to be put into

10   products within the State and sold within the State.[10] Thus, the amended complaint provides

11   more than sufficient allegations of intrastate commerce to withstand Defendants' shallow

12   attack on its pleadings.[11]

13       Defendants' argue that Mississippi cannot recover damages under Mississippi's

14   Consumer Protection Act, Miss. Code Ann. §75-24 ("MCPA"). This misstates the claims

15   asserted by Mississippi, as well as the plain language of the statute, which provides for

16   restitution and other relief[12] upon a violation. Defendants specifically limit their challenge to

17

18

19       [8]Third Amended Complaint, at para. 190. - 194 and para. 288 - 294.

20       [9]*Id*. at paras. 190 and 290.
         [10]*Id*. at para. 291.

21       [11]While Defendants' provided no other case law in furtherance of their weak intrastate
     attack on Mississippi's claims, they do erroneously cite to a case that addresses Mississippi law

22   in their Maryland argument. Def. Motion at 7. This case, *In re Microsoft Corp. Antitrust Litig.*,
     Nos. MDL 1332, 2003 WL 22070561, is discussed in Mississippi's response to Defendants'

23   initial motion and, as no further substantive argument is provided by Defendants in this filing
     concerning this case and Mississippi law, Plaintiff States' refer the Court to Plaintiff States'

24   Opposition to Motion to Dismiss for Failure to State a Claim, at 34.

25       [12]Section 75-24-19 provides "in any action brought under 75-24-19, the Attorney General
     may recover a civil penalty and . . . may also recover, in addition to any other relief that may

26   be provided in this section, investigative costs and reasonable attorneys' fees." *Id*.

     C06 4333 PJH Plaintiffs' Opposition to                    7
     Defendants' Motion To Dismiss for Failure to
     State a Claim

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

the MCPA claim, misstating the clear terms of the statute as providing only for injunctive relief. The Court should not be misled and should deny this motion.

The MCPA provides for full restitution for *any* violation of the chapter, including "unfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce" under section 75-24-5(1).

Defendants hang their hat on a plainly incorrect reading of the Act, arguing that if specific violations are not included in the enumerated list found in section 75-24-5(2), then nothing but injunctive action may be ordered against Defendants. The plain language of the statute contains no such limitation. Indeed, section 75-24-9 is permissive, allowing the Attorney General to obtain injunctive relief in his discretion, and relieving him of the bond requirement that would otherwise apply. Nothing in this section limits the Attorney General's authority to seek other relief.

To the contrary, a significant portion of the statute allows for restitution, civil penalties, criminal penalties, and attorneys' fees and costs to be ordered by the court for *any* violation of section 75-24-5. For example, 75-24-11 states:

The court may make such additional orders or judgments, including restitution, as may be necessary to restore to any person in interest any monies or property, real or personal, which may have been acquired by means of any practice prohibited by this chapter, including the appointment of a receiver or the revocation of a license or certificate authorizing that person to engage in business in this state, or both.

*See also* Miss. Code Ann. § 25-74(1), (11), (19) and (21). Plainly, restitution and damages are not limited to the violations enumerated in the list in Section 75-24-5(2), as Defendants erroneously allege.

Furthermore, to apply such a backward interpretation to Mississippi law would annihilate much of the Mississippi Consumer Protection Law. This is clearly not the intent of the Mississippi Legislature. The suggestion that restitution and damages are unavailable because they are included within the broad grant of authority conferred by section 75-24-11 rather than being spelled out in section 75-24-9 is disingenuous at best, and ignores the

1    Mississippi Legislature's very plain words concerning the Attorney General's right to recover

2    civil penalties, attorneys' fees and costs, and criminal penalties, in addition to

3    restitution/damages.  To adopt such an argument would be tantamount to amending the plain

4    language of the statute - a function within the exclusive purview of the Mississippi

     legislature.

**D.    The New Mexico Attorney General has always had authority to recover restitution on behalf of New Mexico consumers, and to recover treble damages for specified entities.**

**New Mexico:**  Defendants allege that the Attorney General of New Mexico has no

authority to bring *parens patriae* actions on behalf of the citizens of New Mexico under the

New Mexico Unfair Practices Act ("NMUPA"), section 57-12-1 *et seq.*, NMSA 1978.

Defendants also argue that the New Mexico Attorney General has no authority to seek

damages - treble or single - for consumers in the state.  Defendants are wrong.

With respect to *parens patriae* authority, Defendants merely repeat the argument that

they asserted in the first motion to dismiss.  This Court granted the motion as to New

Mexico's antitrust claims, *but left the consumer protection claim intact.*  These consumer

protection claims were included in the plaintiffs' Motion for Leave to file the TAC, and were

approved by the court without objection.  This issue was fully litigated in the prior motion,

and Defendants had the opportunity to renew any objections they had in opposition to the

motion to amend.  The Court should dismiss this latest redundant motion as previously

decided and untimely.

Section 57-12-8.A of the NMUPA provides that "[w]henever the Attorney General has

reasonable belief that any person is using, has used or is about to use any method, act or

practice which is declared by the Unfair Practices Act to be unlawful, and that proceedings

would be in the public interest, he may bring an action in the name of the state alleging

violations of the Unfair Practices Act."  Subsection B of the same statute permits the

Attorney General to seek injunctive relief and restitution.  Nothing in this section limits

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

remedies to the state in its proprietary role. It constrains <u>any</u> unlawful practice without regard to who the victims of that practice might be. This section clearly invokes the public interest and permits a suit in the name of the state on behalf of the victims. That is the very nature of a *parens patriae* action.

The Supreme Court of New Mexico has written, "In construing a statutory provision to determine the intent of the Legislature, the statute is to be read as a whole, giving the words their ordinary and usual meaning unless a different intent is made clear." *State ex rel. Bingaman v. Valley Savings & Loan Association*, 97 N.M. 8, 636 P.2d 279 (1981), *citing Winston v. New Mexico State Police Board*, 80 N.M. 310, 454 P.2d 967 (1969). Reading the UPA as a whole, it is clear that the Attorney General is authorized to seek restitution on behalf of those persons wronged by violations of this statute. This conclusion is buttressed by *State ex rel. Bingaman v. Valley Savings and Loan Association, supra*. In that case, the Attorney General sought a declaratory judgment in the public interest to enforce a newly enacted statute. He also sought restitution for unnamed persons injured by violations of the prohibition and not parties to the litigation. In upholding his authority to seek a remedy on behalf of consumers, the New Mexico Supreme Court turned to Section 8-5-2, NMSA 1978, which defines the duties of the Attorney General. The court focused on subsections (B) and (J), which provide that the Attorney General shall:

(B) prosecute and defend in any other court or tribunal, all actions and proceedings, civil or criminal, in which the stake may be a party or interested when, *in his judgment*, the interest of the state requires such action. . . . (Emphasis added.).

. . .

(J) appear before local, state and federal courts . . . to represent and to be heard on behalf of the state when, *in his judgment*, the public interest of the state requires such action . . . . (Emphasis added.)

The court found that this language made it "clear that the Attorney General not only has standing to bring this lawsuit, but also has the power and the duty to do so." *Id*., at 11, 282. Likewise, the United States District Court for the District of New Mexico in *State of New*

*Mexico, as Parens Patriae*, v. *The Scott & Fetzer Co., et al.*, 1981 WL 2167, 1981-2 Trade Cases P 64,439 (1981) reached essentially the same conclusion.

Defendants' continuing failure to read the statute as a whole appears again in Defendant's objections to the Attorney General seeking treble damages for its natural persons.  Private persons in New Mexico can sue for treble damages.  Under the NMUPA, the state may only seek restitution except for certain agencies which have been designated as bodies corporate, such as the Corrections Department and the Public Regulatory Commission and others.  They are considered corporations and, as such, the Attorney General may seek treble damages on their behalf.

With regard to the New Mexico class of governments, the class representative is the County of Sandoval.  It and all the members of the class are bodies corporate and politic, created by various statutes.  When they act in the government role, they are bodies politic; when they act in a proprietary or business capacity, they are bodies corporate.  "In its proprietary capacity it occupies the same 'posture' as that occupied by a private corporation engaged in business."  *Apodaca v. Wilson*, 84 NM 516, 525 P.2d 876 (NM 1974).

This has been the treatment of local governmental entities since 1859.  *Donalson v. The County of San Miguel*, 1 Gild. 263 (NM Terr. 1859).  *Donalson* was cited most recently in 2002 by the New Mexico Court of Appeals in *Yarger v. Timberon Water and Sanitation Dist.*, 46 P.3d 1270 (N.M.App. 2002).  Since they are all corporations, they are entitled to sue for damages under section 57-12-2(A) and section 57-12-10; the class representative, Sandoval County, is entitled to ask for treble damages under section 57-12-10(E) of the Unfair Practices Act.

**E.    The Tennessee Attorney General has the authority to proceed as *parens patriae* for the relief stated in the Third Amended Complaint.**

**1**

**2**

**Tennessee:**  Defendants continue to contend that Tennessee does not have authority to

**3** bring an action for damages as *parens patriae* on behalf of Tennessee's consumers.[13]  This

**4** argument once again ignores the fact that the authority of the Tennessee Attorney General to

**5** bring a *parens patriae* action on behalf of Tennessee consumers under the TTPA.  *In re*

**6** *Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003); *In re Lorazepam &*

**7** *Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 386 (D.D.C. 2002).  In *Lorazepam*, the court

**8** found that Tennessee was among the states for which "state and/or federal courts interpret

**9** ***statutory provisions*** to effectively grant *parens patriae* authority or have determined that

**10** their attorney general has such authority ***under state common law.***"  *Lorazepam*, 205 F.R.D.

**11** at 386-87 (emphasis added).  This finding was based upon Tenn. Code Ann. § 8-6-109(b)(1);

**12** *State v. Heath,* 806 S.W.2d 535, 537 (Tenn. Ct. App.1990); and *State ex rel. Inman v. Brock,*

**13** 622 S.W.2d 36, 41 (Tenn.1981).  *Id.*

**14**        Defendants continue to rely on a single Chancery Court Decision, *State ex rel. Leech v.*

**15** *Levi Strauss & Co.,* 1980 WL 4696, 1980-2 Trade Cas. (CCH) ¶ 63, 558 (Davidson

**16** Chancery, 1980).  This case was settled and was never appealed.  *State ex rel. Leech v. Levi*

**17** *Strauss & Co.,* 1981 WL 11430, 1981-1 Trade Cases ¶ 64,076 (Davidson County, Tennessee

**18** Chancery, 1981).  Such a case would not be considered controlling authority in Tennessee.

**19** *McConnell v. State,* 12 S.W.3d 795, 799 (Tenn. 2000)(unpublished opinions of the Tennessee

**20** Courts of Appeals and Supreme Court are not controlling authority.)  The chancery court

**21** decision in *Levi Strauss* predates both *State ex rel. Inman v. Brock*, 622 S.W.2d 36, 41 (Tenn.

**22** 1981) and *State v. Heath*, 806 S.W.2d 535, 537 (Tenn. Ct. App. 1990).  Both of the decisions

**23** make clear that the authority of the Attorney General is extensive.  The Chancellor based his

**24**

**25**        [13]Tennessee has also brought this action under the Tennessee Consumer Protection Act,
**26** TENN. CODE ANN. §§ 47-18-101 et seq.  TAC, Para. 352.  Defendants have not moved to
dismiss that claim.

decision, in part on the fact that the Legislature had authorized suits on behalf of consumers under the Tennessee Consumer Protection Act ("TCPA") but had not done so under the TTPA.[14]  Such a limited view of the authority of the Attorney General is contrary to the expansive holdings in *Brock* and *Heath*.  Under the TCPA, "[t]he attorney general and reporter, *at the request of the division*, may bring any appropriate action or proceeding in any court of competent jurisdiction pursuant to the provisions of this part." Tenn Code Ann. § 47-18-109 (emphasis added).  This statute does not grant authority to the Attorney General, it allows the Division of Consumer Affairs to request the Attorney General to file suit.  In *Heath*, the defendant argued that, "the attorney general's only basis for standing is that expressly granted by the [TCPA]" and the Court held that "this argument fundamentally misunderstands the authority of the Attorney General."  *Heath*, 806 S.W.2d at 537.  In fact, "the attorney general's duties are so numerous that the legislature does not attempt to identify each by statute."  *Id.*  Thus, the Tennessee Court of Appeals rejected the reasoning which was the basis for the Chancellor's decision and this Court should reject it as well.

The Tennessee Attorney General has the authority to bring this *parens patriae* action for damages on behalf of Tennessee's consumers.  This Court should deny Defendants' motion to dismiss these claims.

As to potential remedies for the State, the Defendants cannot possibly be suggesting that the Legislature intended to tie the hands of the Attorney General by not listing in the TTPA every possible remedy or that the Legislature intended to place enforcement of the TTPA solely in private hands or persons.  The Defendants go so far as to argue that the state of Tennessee cannot recover full consideration as a remedy for damages under Tenn. Code Ann. §47-25-106 because the term "person" is not clearly defined to include the State of Tennessee. The most absurd extension of this argument would therefore conclude that the State as a consumer of goods could not recover full consideration under the TTPA (as private

---

[14]The Chancellor also based his decision on *California v. Frito-Lay*, 474 F.2d 774 (9th Cir. 1973).

parties could) and would be left with only injunctive relief and the ability to deny the Defendant to do business in the State. It would be absurd to suggest that the Tennessee General Assembly would draft such broad remedial legislation and in the same breath exclude itself from recovering damages.

The TTPA is obviously a remedial statute and should be read broadly and in fact can be read in conjunction with the TCPA, Tenn. Code Ann. § 47-18-101 *et seq.* Tennessee courts interpret a violation of the TCPA to be also a violation of the Fair Trade Practices Act. *Blake v. Abbott Laboratories, Inc.,* 1996 WL 134947 (1996). The TCPA allows the Attorney General to seek disgorgement on behalf of consumers ─ a statutory recognition of the *parens patriae* authority to recover damages for Tennessee consumers who have suffered monetary loss. Tenn. Code Ann. § 47-18- 108(c)(1). Tennessee statutes allow the court to "**make such orders or render such judgments as may be necessary** to restore to any person who has suffered an ascertainable loss . . ." *Id.* (emphasis added). Additionally, TCPA, when read in conjunction with the TTPA, does specifically define "Person" in Tenn. Code Ann. § 47-18-103(7) to mean "a natural person, individual, **governmental agency**, partnership, corporation, trust, estate, incorporated or unincorporated association, and any other legal or commercial entity however organized" (emphasis added). The Defendants themselves admit that a federal district court has already interpreted "person" to include Metropolitan Governments[15] . It would, therefore, be surprising if a court concluded that the State of Tennessee was not a "person" for purposes of recovery under the TTPA.

Additionally, the Attorney General may call upon the powers of a State court of equity to obtain complete relief to vindicate public policy and this Court should not hesitate to also follow such logic. For example, the United States Supreme Court has held that even though the Federal Trade Commission Act does not expressly allow recovery of money damages by the Commission, that power "is a natural extension of the remedial powers authorized under

---

[15]*See Metro Gov't of Nashville and Davidson County, Tennessee v. Ashland Oil, Inc.,* 535 F.Supp. 382 (M.D. Tenn. 1982); Motion to Dismiss at fn 15.

§ 13(b)."  *Federal Trade Commission v. Mylan Laboratories, Inc.*, 62 F.Supp.2d 25, 36

(D.C.D.C. 1999).  This natural extension appears to rest upon the ability of the district court

to grant disgorgement of ill-gotten gains.

The district court relied upon a rule of statutory construction set out in *Porter vs*

*Warner Holding Co.*, 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946).  In *Porter*, even

though the law in question specifically provided only for injunctive relief, the court upheld

the award of money damages.[16]

Therefore, there is nothing that should limit this Court to considering not only

injunctive relief and the denial to do business in the State but also to consider the recovery of

damages, civil penalties and fees.

**F.    Defendants misconstrue Utah law and the cases construing it.  Utah has always recognized the authority of the Attorney General to pursue remedies for Utah indirect purchasers.**

**Utah:**  Defendants wrongly assert that the Utah Antitrust Act ("UAA") imposes the

direct purchaser requirement of *Illinois Brick Co. v. Illinois,* 431 U.S. 720 (1977) and bars

Utah's indirect purchaser damage claims.[17]  The Utah Supreme Court has never ruled on

whether the UAA incorporates *Illinois Brick.*  Accordingly, a federal court must predict how

the Utah high court would resolve this issue by looking "for 'guidance' to decisions by

intermediate appellate courts of the state and by courts in other jurisdictions."[18]

---

[16]As the Defendants are also aware, in addition to settlement funds in matters such as  *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) and *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 386 (D.D.C. 2002) the State Attorneys General were awarded attorney's fees and enforcement costs (*In re Cardizem* at 536; *In re Lorazepam* at 407). Tennessee federal district courts have also awarded monetary damages, fees and costs under the TTPA when approving agreed final judgments (*see State v. Sam Luter Oil Company, Inc.* (1996 WL 908650 (M.D.Tenn), 1997-1 Trade Cases P 71,835) and *State v. Greeneville Oil Company, Inc*. (Unpublished (E.D.Tenn, 1997)).

[17] Defendants' Motion to Dismiss ("Defendants' Motion") seeks only to dismiss Utah's UAA claims based on *Illinois Brick* indirect purchaser standing.  It does not attack any other Utah claim or argument.  Direct purchaser, civil penalties, unjust enrichment, or other common law claims are not challenged.

[18] *Giles v. Gen. Motors Acceptance Corp.*, 494 F. 3d 865, 872 (9th Cir. 2007), quoting *Dimidowich v. Bell & Howell,* 803 F. 2d 1473, 1482 (9th Cir. 1986) (emphasis added).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

First, "standing law is state law" and Utah courts "are not bound to follow federal precedent."[19] *Illinois Brick* does not pre-empt state antitrust law. *Calif. v. ARC Am. Corp.*, 490 U.S. 93, 105-106 (1989). Utah Const. art. 1, § 11 (adopted 1896) provides that, "every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law. . . ." Unless there is a clear social or economic evil to be eliminated, these rights cannot be abrogated without providing to injured persons, by due course of law, effective and reasonable alternative remedies. *Craftsman Builders Sup., Inc. v. Butler Manuf. Co.,* 974 P. 2d 1194, 1198 (Utah 1999); *Berry v. Beech Aircraft Corp.*, 717 P. 2d 670, 675 (Utah 1985). Alternative remedies must be "substantially equal in value or other benefit . . . providing essentially comparable substantive protection . . ." *Id.* at 680. Sec. 11 is mandatory and prohibitory. Utah Const. Art. 1, § 26.

Consistent with these provisions, Utah's antitrust laws have always extended their remedies to indirect purchasers.[20] Before enactment of the UAA, Utah's antitrust statutes made violators liable for treble damages to the "person or persons injured thereby."[21] Before enactment of S.B. 16, the UAA authorized suits by "a *person*" injured by a violation of the

---

[19] *State v. Thompson*, 810 P. 2d 415, 420 (Utah 1991) (concurring), citing *Provo City Corp. v. Willden*, 768 P. 2d 455, 456-57 (Utah 1989).

[20] Utah Const., art. 1, § 11 (West 2004) (adopted 1896) (Palmer Dec., Ex. A-1); Utah Const., art. 12, § 20 (1971, replacement vol. 1A) (adopted 1896) (Palmer Dec., Ex. A-2) contained an antitrust provision which has continued to the present day, as amended in 1993 (Utah Const., art. 12, § 20 (West 2004) (amended 1993), 1992 Utah Laws, S.J.R. 7, adopted at election Nov. 3, 1992, eff. Jan 1, 1993, Palmer Dec., Ex. B. Utah's first antitrust statute was enacted in 1896 (Utah Comp. Laws 1898), §§ 1752-1762, Palmer Dec., Ex. C and continued, as amended (Utah Comp. Laws, 1898, through U.C.A. § 50-1-1 *et seq.*, 1970 replacement vol. 5B) (1943 codification in effect 1933-1979, renumbered 1953) (Palmer Dec., Exhs. C - H), until the enactment of the UAA in l979 (1979 Utah Laws, ch. 79) Palmer Dec., Ex. I) which repealed the then current version of U.C.A. Title 50 (Palmer Dec., Ex. G). Palmer Dec. Ex. J (U.C.A. §§ 76-10-911 *et seq.* (West 2004) (as amended 1979-2006) contains the UAA as it existed immediately prior to the enactment in 2006 of Senate Bill 16 (2006 Utah Laws, ch.19, "S.B. 16"). Palmer Dec. Ex. K contains the UAA as amended by S.B. 16 (U.C.A. § 76-10-911 *et seq.* (Supp. 2007) (as amended 2006).

[21] *See* 1761, Exhs. C-D; 4484, Ex. E; 73-1-10, Exhs. F-G; 50-1-10, Ex. H. References to Exhibits herein are to those attached to the Palmer Dec.

1  UAA (U.C.A. § 76-10-919(1)(a)) and allowed the Utah Attorney General to bring actions for

2  "the state, any of its political subdivisions or agencies . . . "and for natural persons for

3  violations of the UAA (U.C.A. § 76-10-918, Ex. J, emphasis added).  "Person" is defined in

4  U.C.A. Title 76 and in U.C.A. § 68-3-12 (both of which apply to the UAA) and includes

5  "individuals" and various entities, including governments. Ex. L; Ex. M.  According to their

6  plain language,[22] these provisions are unambiguous and include indirect purchasers.

7       The Utah Legislature *rejected* mandatory adherence to *Illinois Brick* and its mandatory

8  use as a "guide"on standing issues in enacting the UAA in 1979.  In unchanged permissive

9  harmonization language, the Legislature stated in the 1979 Act, Ex. I, that:

[t]he legislature intends that the courts, in construing this act, will be *guided by*
interpretations given by the federal courts to comparable federal antitrust statutes and *by*
*other state courts to comparable state antitrust statutes.*

10  U.C.A. § 76-10-926 (Emphasis added); *see also,* Exs. K and J.  To require adherence to

11  *Illinois Brick*, the Legislature would have had to provide indirect purchasers some "effective

12  and reasonable alternative remedy" in the state system to compensate for the abrogated

13  remedy.  References to "direct" and "indirect" purchasers in S.B.16 did not and could not

14  change the scope of the language in §§ 76-10-918 and 76-10-919(1)(a), under the Utah

15  Constitution and Utah antitrust statutes.

16       The UAA was enacted in part to implement the mandate in Utah Const. art. 12, § 20 for

17  the Legislature "to pass laws for the enforcement of this section by adequate penalties . . . ."

---

[22]Under Utah law, "[a] fundamental principle of statutory construction is that
unambiguous language in the statute itself may not be interpreted so as to contradict its plain
meaning."  *Provo City Corp. v. Willden, supra*, 68 P.2d at 458, quoting *Johnson v. Utah State
Retirement Bd.,* 770 P. 2d 93, 95 (Utah 1988).  Utah Courts "will not interpret unambiguous
language in a statute to contradict its plain meaning."  *Hatton-Ward v. Salt Lake City Corp.,*
828 P. 2d 1071, 1072 (Utah App. 1992), *cert. denied*, 843 P. 2d 1042 (Utah 1992).  Utah courts
"will not infer substantive terms into the text that are not already there . . . . [W]e have no
power to rewrite the statute to conform to an intention not expressed."  *Assoc. Gen.
Contractors v. Bd. of Oil, Gas & Mining*, 38 P. 3d 291, 301 (Utah 2001).

Ex. A.[23]  U.C.A. § 76-10-912 encourages "free and open competition in the interest of the general welfare . . . by prohibiting conspiracies in restraint of trade . . . and by providing adequate penalties for the enforcement of its provisions."  Exs. I-K.

In deference to the "strong public policy disfavoring anti-competitive practices" in this UAA provision and in Utah Const. art 12 § 20, "the provisions of our Antitrust Act must be strictly construed in favor of competition . . . ."  *Summit Water Distrib. Co., et al. v. Summit County, et al.*, 123 P. 3d 437, 445- 446 (Utah 2005).  Prohibiting indirect purchaser suits would impermissibly erode this constitutional mandate and the enforcement purpose of the UAA.  This cannot have been intended by the Legislature.  Denying indirect purchaser standing is incompatible with Utah Const. art. 12, § 20, Ex. A-2, stating that "controlling of the price of . . . any article of manufacture or commerce" is "unlawful, and against public policy" and with Utah Const. art. 12 § 20 (amended 1993), Ex. B, which establishes the policy of the State of Utah that antitrust laws apply for "the general welfare *of all the people . . . .*"  Emphasis added.  Indirect purchasers as end-users of price-fixed products are the true victims of UAA violations.  *Bunker's Glass Co. v. Pilkington, PLC,* 75 P.3d 99, 109 n. 9 (Ariz. 2003).  The reasons for denying indirect purchasers' standing expressed in *Illinois Brick* have not materialized in antitrust suits in state courts. *Comes v. Microsoft Corp.,* 646 N.W.2d 440, 449 and n. 10 (Iowa 2002).  More than thirty-five states now allow indirect purchasers to sue for relief.  Antitrust Modernization Comm., *Report and Recommendations,* April 2007, Ch. III. B, 273.

Defendants' reliance upon certain statements in the legislative history of S.B. 16, Defendants' Motion at p. 3, is misplaced.  S.B. 16 cannot be construed to have granted new rights to indirect purchasers when they have always had them under the Utah Constitution and Utah antitrust statutes.  Furthermore, this legislative history and any legislative history concerning the UAA is irrelevant because S.B. 16 post-dates the relevant period in this case

---

[23]For additional reasons for enacting the UAA, *see* Dibble and Jardine, *The Utah Antitrust Act of 1979: Getting into the State Antitrust Business*, 1980 Utah L. Rev. 73, 73-74.

and because the plain language of the UAA at all times has included indirect purchasers. *Smith v. Price Dev. Co.*, 125 P.3d 945, 950 (Utah 2005) (Utah courts "look to a provision's legislative history only if we find the provision ambiguous.")

Although standing for persons indirectly injured has long been recognized,[24] no Utah appellate court has ruled on whether the UAA incorporates the *Illinois Brick* rule on indirect purchaser standing.[25]  Accordingly, any further guidance desired by this Court beyond that stated above, should come, pursuant to U.C.A. 76-10-926, from other state courts construing comparable state antitrust statutes.[26]

Second, assuming, *arguendo,* that Utah's indirect purchaser claims hinge on the retroactive application of S.B. 16, its provisions are procedural and can be applied retroactively.  Statutory amendments are procedural if they do not "enlarge, eliminate or

---

[24]*Brummitt et al. v. Ogden Waterworks Co., et al,* 93 P. 828, 831 (Utah 1908) (increased taxes caused by excessive rates paid by city for water gave taxpayers right to sue).

[25] One lower court has ruled.   In *State of Utah v. Daicel Chem. Indus., Ltd., et al.* Civil No. 020910931 (3rd Dist. Utah 2004) (unpublished, not cited or followed, Ex. N), the trial court based its ruling denying indirect purchaser standing under the UAA on the clearly erroneous conclusion that U.C.A.§ 76-10-926 "*requires* this Court to interpret its provisions in accordance with comparable federal law," that confuses the UAA reference to being guided by federal cases with a mandate to consider federal cases binding. Emphasis added. An "unpublished [state] district court order has no precedential value under Utah law." *Kingsford v. Salt Lake City Sch. Dist.,* 247 F. 3d 1123, 1129 (10th Cir. 2001).

[26] Decisions of other state courts allowing indirect purchaser suits under analogous state antitrust statutes analogous with permissive harmonization provisions (express or judicially inferred) include: *Statutory Permissive Harmonization: Bunker's Glass Co. v. Pilkington, PLC, supra*, 75 P.3d at 102-107 (Ariz. 2003); *Comes v. Microsoft Corp., supra,* 646 N.W.2d at 445-446 (Iowa 2002). Neither of the statutory harmonization provisions in these cases is as permissive as Utah's.  *Compare* U.C.A. § 76-10-926 *with* Ariz. Rev. Stat. Ann. § 44-14-12 and Iowa Code § 553.2. *Judicially Inferred Permissive Harmonization: Arthur v. Microsoft Corp.,* 676 N.W. 2d 29, 37-38 (Neb. 2004); *Freeman Indus., LLC v. Eastman Chem. Co., et al.*, 172 S.W. 3d 512, 519-520 (Tenn. 2005); *Hyde v. Abbott Labs.*, 473 S.E. 2d 689, 680 (N.C. App. 1996); *Sherwood v. Mircrosoft Corp.,* Not Reported in S.W. 3d, 2003 WL 21780975, *28 (Tenn. Ct. App. 2003). *See also,  D.R. Ward Constr. Co. v. Rohm and Haas Co.*, 470 F. Supp.2d 485, 497 (E.D.Pa. 2006) (state court decisions used to predict rulings of highest courts on indirect purchaser standing).

destroy vested or contractual rights."[27]  "[M]atters such as who may bring an action for injuries caused by violations of the standard of conduct" are "procedural."  *Bunker's Glass Co., supra,* at 106; *see also,  D.R. Ward Const. Co. v. Rohm and Haas Co.*, *supra,* 470 F. Supp.2d at 498.  In *Moore v. Am. Coal Co.*, *supra*, at 990, the Utah Supreme Court held to be procedural, a subsequent statutory amendment denying a mandatory hearing that existed at the time of the injury, because "it governs the process under which claims are disposed of by the Industrial Commission."  S.B. 16 is procedural; does not increase the Defendants' maximum UAA liability; prohibits duplicate recoveries, U.C.A, §§ 76-10-919 (6) and (7); and increases no substantive duties.  Under Utah Const. Art. 1, § 11, the Defendants have  no vested right to be free from suits by indirect purchasers.  *Silver King Coalition Mines Co. v. Indus. Comm'n.*, 268 P. 2d 689, 692 (Utah 1954).[28]

Third, alternatively and notwithstanding Defendants' Motion, Utah's indirect purchasers are entitled to monetary equitable relief.  *Freeman v. San Diego Ass'n of Realtors,* 322 F. 3d 1133, 1145 (9th Cir. 2003), citing *Lucas Auto Eng'g, Inc. v. Bridgestone/Firestone, Inc.,* 140 F. 3d 1228, 1235 (9th Cir. 1998).   U.C.A. § 76-10-918 authorizes the Utah Attorney General to bring actions in equity for injunctive relief and he has obtained equitable monetary relief for indirect purchasers in court-approved settlements in a number of cases.[29]  The court's

---

[27]*Moore v. Am. Coal Co.,* 737 P. 2d 989, 990 (Utah 1987)*,* quoting *State Dept. of Social Serv. v. Higgs,* 656 P. 2d 998 (Utah 1982).  Statutory changes are procedural where they provide a "different mode or form of procedure for enforcing substantive rights." *Pilcher v. State Dep't of Social Serv.,* 663 P. 2d 450, 455 (Utah 1983).   Procedural law "prescribes the practice and procedure or the legal machinery by which the substantive law is determined or made effective." *Petty v. Clark,* 192 P. 2d 589, 594 (Utah 1948). Factors considered by Utah courts in deciding whether a statute has merely remedial or procedural purpose are "convenience, reasonableness, and justice".  *Goebel v. Salt Lake City S. R.R. Co.*, 104 P. 3d 1185, 1198 (Utah 2004).  "Statutes affecting procedure apply to cases *filed* after the effective date, regardless of when the claim arose."  *Carter v. U. of Utah Medical Center*, 150 P. 3d 467, 469 n.1)(Utah 2006).

[28]"[A] right is not 'vested' unless it is something more than such a mere expectation as may be based upon an anticipated continuation of the present laws" and status.  *Id.*

[29] *In re Remeron End-Payor Antitrust Litig.*, 2005 WL 2230314, 2005-2 Trade Cases  P 74,966 (D.N.J. 2005); *State of Ohio v. Bristol-Myers Squibb Co.*, 2003 WL 21105104 (D.D.C., May 13, 2003) (Taxol settlement); *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508 *(D.*

analysis in *F.T.C. v. Mylan Labs., Inc.,* 99 F. Supp. 2d 1 (D.D.C. 1999) is instructive because of its reliance upon "the principles for interpreting the remedial powers of a district court set forth in the *Porter v. Warner* line of cases." *Id.* at 6, n. 2.  In *Porter v. Warner Holding Co.,* 328 U.S. 395, 398 (1946), the Supreme Court held that if a statute confers unqualified equity power, "the *full scope* of that jurisdiction is to be recognized and applied."  The *Mylan* court held that the Utah Attorney General's authority to obtain equitable relief under U.C.A. § 76-10-918 and Utah's harmonization clause allows indirect purchaser claims for restitution because the UAA is a "comparable federal statute" to the FTC Act. *See also, FTC v. Pantron I Corp.,* 33 F. 3d 1088, 1102 (9th Cir. 1994) (FTC Act, § 13(b) "includes the power to order restitution").

**G.    Defendants' arguments against Louisiana's claims have no merit because they cannot be legally substantiated.**

**Louisiana:**  Defendants' motion as to Louisiana must fail for the following reasons.  (1) No Louisiana statute imposes the direct purchaser requirement of *Illinois Brick,* and indirect purchasers in Louisiana have a constitutional right to recover damages.  (2) The Louisiana Unfair Trade statute is broadly construed and patterned after the Federal Trade Commission Act and does not limit damages actions to business competitors and consumers. (3)  The Attorney General of the state may sue for treble damages, and (4)  The Louisiana Unfair Trade statute does not require the Attorney General to send a notice to Defendants.

1.    <u>No Louisiana statute imposes the direct purchaser requirement of *Illinois Brick* and indirect purchasers in Louisiana have a constitutional right to recover damages.</u>

No Louisiana statute imposes the direct purchaser requirement of *Illinois Brick.* Rather, the opposite is true.  La. R.S. 51:1402 (9) unequivocally states that Louisiana trade or commerce includes any trade or commerce directly or indirectly affecting the people of the state.  Defendants' arguments to the contrary have no basis in fact or in Louisiana law.

*Mich. 2003)*; *F.T.C. v. Mylan Lab., Inc., supra*; *Lorazapam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369 (D.D.C. 2002) (Final Order approving settlement).

1  Indirect purchasers may recover treble damages under both the Louisiana Monopolies Act

2  and the Louisiana Unfair Trade Act.  *State ex rel. Ieyoub v. Bordens, Inc.,* 684 So. 2d 1024

3  (La. App. 4th Cir. 1996), writ denied.

4      Except in matters governed by the Federal Constitution or by acts of Congress, the law

5  to be applied in any case is the law of the state.  And whether the law of the state shall be

6  declared by its Legislature in a statute or by its highest court in a decision is not a matter of

7  federal concern.  Congress has no power to declare substantive rules of common law

8  applicable in a state, and no clause in the Constitution confers such power upon the federal

9  courts; state law is to be determined in accordance with the applicable principles for

10 determining state law; no transcendental body of law outside of any particular state exists

11 which is obligatory within it unless and until changed by statute; the federal court may not

12 substantially affect the enforcement of the right as given by the state.  *Erie v. Tompkins*, 304

13 U.S. 64, 78-79, 58 S.Ct. 817, 822-823, 82 L.Ed. 1188 (1938); *Bernhardt v. Polygraphic Co.*

14 *of America, Inc.,* 350 U.S. 198 (1956); *Guaranty Trust Co. of New York v. York*, 326 U.S. 99,

15 108 (1945).

16      Thus, despite the Supreme Court's holding in *Illinois Brick*, state indirect purchasers

17 have a right to recover damages under their own state laws.  Indeed, state indirect purchaser

18 statutes do not interfere with accomplishing the purposes of the federal law that were

19 identified in *Illinois Brick.  California v. ARC America Corp.,* 409 U.S. 93, 103, 109 S.Ct.

20 1661, 1666, 104 L.Ed.2d 86 (1989), *Id.*

21      Louisiana indirect purchasers have a constitutional right to recover damages under its

22 statutes.[30]  In deciding the questions posed by this case, Louisiana courts would look first to

23 its constitution and statutes themselves interpreted according to the rules set forth in the Civil

---

[30]Open access to courts with an adequate remedy is mandated by Art. I, § 22.  of the
Louisiana Constitution.  It provides that: "All courts shall be open, and every person shall have
an adequate remedy by due process of law and justice, administered without denial, partiality,
or unreasonable delay, for injury to him in his person, property, reputation, or other rights."

Code and to Louisiana court decisions interpreting the statute and to other related laws[31] simultaneously.

The Louisiana Supreme Court's view of state law accords with that of *Erie*. In *Louisiana Power and Light Co. v. United Gas Pipe Line Co*., 493 So.2d 1149 (La. 1986), the Court held that while persuasive, federal law does not control state law, particularly when the decision is a departure from its long standing rules and Louisiana state jurisprudence has spoken on the matter. *Illinois Brick* has never been given credence by Louisiana state court decisions. The Louisiana legislature has totally ignored it. Its concepts are entirely foreign to Louisiana law.

2.    The Louisiana Unfair Trade Law is broad in scope and does not limit damages actions to business competitors and consumers

Louisiana jurisprudence holds that any person who suffers damage as a result of an unfair or deceptive act or practice which is unlawful under La. R.S. 51:1405 may recover damages. *Capitol House Preservation Co. v. Perryman Consultants, Inc.,* 725 So.2d 523, 532 (La. App. 4th Cir. 1988). (State statutes transferred all authority under the Unfair Trade

---

[31]Universally speaking, Louisiana's law is termed civil law as opposed to common law, which derived from a different source. Louisiana's law is based upon the Louisiana Civil Code which cannot be ignored when interpreting any of the Louisiana Revised Statutes. The Louisiana Civil Code provides a fault-based and statute-driven basis for all of Louisiana law, together with its decisions interpreting the statutes. Louisiana Supreme Court and other lower court decisions on the rules of statutory interpretation taken from the Louisiana Civil Code are legion. The concept of granting a policy-based dispensation from fault is foreign to Louisiana law.

In discerning the meaning of a statute, the Louisiana Supreme Court begins all statutory analysis, with the Louisiana rules of statutory interpretation found at the first few articles of the Civil Code. Arts. 9-13 state that when a law is clear and ambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. The courts will give that construction which best comports with the principles of reason, justice, and convenience, for it is to be presumed that the legislature intended such exceptions to its language as would avoid its leading to injustice, oppression, or absurd consequences. *Progressive Security Insurance Co., v. State, ex rel. Ieyoub, et al*., 711 So.2d 675 (La. 1998); .*Freechou v. Thomas W. Hooley, Inc.,* 338 So.2d 337 (La. 1980). Art. 13 requires that laws on the same subject matter must be interpreted in reference to each other (in pari materia).

and Consumer Protection Law to the Attorney General of the State of Louisiana). (See La. R.S. 36:706).

The substantive prohibition of the Unfair Trade Practices and Consumer Protection Law is broad and does not specify particular violations. Its language closely tracks that of the federal statute, 15 U.S. C. 45(a). *Guste (Attorney General) v. Demars*, 330 So.2d 123 La. App. 1st Cir. 1976); *Roustabouts, Inc. v. Hamer*, 447 So.2d 543, 548 (La. App. 1 Cir. 1984);

The federal jurisprudence under the Federal Trade Commission Act ("FCTA") is incorporated into the Louisiana statute. S*tate v. Orkin Exterminating Co., Inc.,* 528 So.2d 198 (La. App. 4th Cir. 1988). The Sherman Act and the Federal Trade Commission Act were designed to provide the government with cumulative remedies against activities detrimental to competition and to permit simultaneous use of both types of proceedings against the same respondents based in part on the same conduct. *Federal Trade Commission v. Cement Institute,* 333 U.S. 683 (1948).

A state agency is a consumer for purposes of the Louisiana Unfair Trade Act. *Gulf South Business Systems and Consultants, Inc. v. State*, 625 So.2d 697 (La. App. 1st Cir. 1993). Although business consumers and competitors are included in the group afforded this private right of action, they are not its exclusive members. *Belle Pass Terminal, Inc., v. Jolin, Inc*., 618 So.2d 1076, 1081 (La. App. 1st Cir. 1993); *Roustabouts v. Hamer*, 447 So.2d 543 (La. App. 1st Cir. 1984). The violation of a statute may constitute an unfair trade practice. *Capitol House Preservation Co., LLC v. Perryman Consultants, Inc.,* 725 So.2d 523 (La. App. 1 Cir. 1998). (The language tracks the federal statute. Because of the variety of possible unfair and deceptive practices, the statute is broadly written).

Regarding *parens patriae* actions, the authorities of state attorneys general to bring such actions are inherent in the constitutional and statutory schemes defining their powers. *State of Texas v. Scott & Fetzer Co.*, 709 F.2d 1024 (1983). The Attorney General has specific authority to bring both antitrust and unfair trade treble damages actions on behalf of

the state and private citizens. *Bordens*, cited *supra*; *State, ex rel. Ieyoub v. Classic Soft Trim, Inc.,* 663 So.2d 835 (La. App. 5th Cir. 1996); *State ex rel. Ieyoub v. Brunswick Bowling and Billiards Dover, Inc.*, 665 So.2d 520 (La. App. 5th Cir. 1995).

3.    <u>The Attorney General may sue for treble damages</u>

Defendants contend that under *Guste v. General Motors*, 370 So.2d 477 (1979), the Attorney General cannot sue for damages. Defendants' argument must fail since such actions are specifically authorized by Louisiana statutes. *See* La. R.S. 51:1404 and La. R.S. 51:1414. Additionally, La. R.S. 51:1408 specifically allows the Attorney General additional orders meant to compensate victims and punish Defendants. Moreover, while Defendants cite to *General Motors* they fail to mention the *General Motors* rehearing, which begins at 370 So.2d at 484. The court on rehearing held that nothing in the statute prevents the Attorney General from suing for actual damages, such authority being granted to him in the statutes cited above. *Id.* at 486. And, this case was decided prior to the United States Supreme Court's decision in *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 102 S.Ct. 3260 and 73 L.Ed.2d 995 (1982), the definitive *parens patriae* case.

4.    <u>Nothing in the Louisiana Unfair Trade and Consumer Protection law requires the Attorney General to send a notice to Defendants</u>

Nothing in the law requires the Attorney General to send a notice of any kind to Defendants in an unfair trade action and Defendants cannot point to any such requirement. The Attorney General issues notices to defendants in cases brought by private attorneys only. Defendants cite the private attorney notice under 51:1409. This notice requirement is clearly limited to private actions. *State ex rel. Ieyoub v. Classic Soft Trim, Inc.*, 688 So.2d 105 (La. App. 5th Cir. 1997).

**III.    CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully submit that this Court should DENY Defendants' motions.

1    January 9, 2008                                BILL McCollum, Attorney General
                                                    of the State of Florida

2

3                                        By:     _____/S/_____
                                                 LIZABETH A. LEEDS,

4                                                Fl. Bar #00457991
                                                 Acting Director, Antitrust Division

5

6                                                EDMUND G. BROWN JR.

7                                                Attorney General of the State of California
                                                 KATHLEEN E. FOOTE

8                                                CA Bar No. 65819
                                                 Senior Assistant Attorney General

9

10                                       By:     _____/S/_____

11                                               EMILIO E. VARANINI
                                                 CA Bar No. 163952

12                                               Deputy Attorney General

13

14

15

16

17

18

19

20

21

22

23

24

25

26

C06 4333 PJH Plaintiffs' Opposition to                26
Defendants' Motion To Dismiss for Failure to
State a Claim