1  GIBSON, DUNN & CRUTCHER LLP
2  JOEL S. SANDERS, SBN 107234
   JSanders@gibsondunn.com
   G. CHARLES NIERLICH, SBN 196611
3  GNierlich@gibsondunn.com
   JOSHUA D. HESS, SBN 244115
4  JHess@gibsondunn.com
   REBECCA JUSTICE LAZARUS, SBN 227330
5  RJustice@gibsondunn.com
   One Montgomery Street, Suite 3100
6  San Francisco, California 94104
   Telephone:  (415) 393-8200
7  Facsimile:  (415) 986-5309

8  Attorneys for Defendants
   MICRON TECHNOLOGY, INC. AND
9  MICRON SEMICONDUCTOR PRODUCTS, INC.

10 [Additional counsel listed on signature page.]

11                UNITED STATES DISTRICT COURT

12         FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14                                              **REDACTED**

15
   THE STATE OF CALIFORNIA, et al.,        Case No. C-06-04333 PJH
16
          Plaintiffs,                      **DEFENDANTS' OPPOSITION TO
17                                         PLAINTIFFS' MOTION FOR
   v.                                      CERTIFICATION OF CALIFORNIA AND
18                                         NEW MEXICO GOVERNMENTAL
   INFINEON TECHNOLOGIES AG, et al.        ENTITY CLASSES**
19
          Defendants.
20                                         Hearing Date:   April 9, 2008
21                                         Hearing Time:   9:00 a.m.
                                           Location:       Courtroom 3, 17th Floor
22                                         Judge:          Hon. Phyllis J. Hamilton

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. STATEMENT OF FACTS ................................................................................. 3

    A.    Plaintiffs' Proposed Class and Proposed Class Representatives ...................... 3

    B.    Defendants and the Distribution of DRAM ...................................................... 5

III. ARGUMENT ................................................................................................... 5

    A.    Plaintiffs Cannot Show That Common Issues Predominate Because The Claims Of The Members of the Proposed Class Who Purchased DRAM Indirectly Raise Individual Issues Of Proof ................................................................................................... 6

        1.    Class Certification Should Be Denied Because Plaintiffs Cannot Show Impact On A Classwide Basis With Common Proof ...................................................................... 7

        2.    Plaintiffs Do Not Provide Any Means to Identify and Exclude Customers for Whom No Impact At All Can Be Shown ................................................................................. 8

        3.    Plaintiffs Cannot Show Pass-on On A Classwide Basis Here Because of the Vast Differences Among the Products Containing DRAM that Plaintiffs Have Placed at Issue Here ................................................................... 11

        4.    The Wide Variety of Customers and Their Methods of Acquiring DRAM or Products Containing DRAM Contradict Plaintiffs' Broad Generalizations About Procurement and Pass-on ............................................................ 14

        5.    Plaintiffs' Reliance on the *Microsoft* Cases Is Misplaced ................. 16

    B.    The Proposed New Mexico Class Representative Is Not Adequate Because the County of Sandoval Admits Destroying Its Only Records of Purchases of DRAM or Products Containing DRAM During the Class Period .................................................. 18

    C.    The Proposed Class Presents Significant Manageability Issues ..................... 20

IV. CONCLUSION ................................................................................................ 21

Gibson, Dunn & Crutcher LLP

Defendants' Opposition to Plaintiffs' Motion for Certification of California and New Mexico Governmental Entity Classes; Case No. C-06-04333-PJH

1

**TABLE OF AUTHORITIES**

2
                                                                    **Page**

3

**CASES**

4
*A&M Supply Co. v. Microsoft Corp.,*
5
   654 N.W.2d 572 (Mich.Ct.App. 2002) ................................................................. 7, 17

6
*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ........................................................................................... 5, 18
7

*Ashley v. Archer Daniels Midland Co.,*
8
   No. CV 95-336-R 1998 WL 35167783 (Ala. Cir. Ct., DeKalb Co., Mar. 13, 1998) ......................... 7

9
*Assoc. Gen. Contractors of Cal. v. Cal. State Council of Carpenters,*
10
   459 U.S. 519 (1983) ................................................................................................. 8

11
*B.W.I. Custom Kitchen v. Owens-Illinois*
   191 Cal. App. 3d 1341 (Cal. Ct. App. 1987) ................................................................. 21
12

*Bell Atl. Corp. v. AT&T Corp.,*
13
   339 F.3d 294 (5th Cir. 2003) ...................................................................................... 7

14
*Blades v. Monsanto,*
15
   400 F.3d 562 (8th Cir. 2005) ...................................................................................... 7

16
*Borden, Inc. v. Universal Indus. Corp.,*
   88 F.R.D. 708 (N.D. Miss. 1981) ................................................................................ 8
17

*Brook Group v. Brown & Williamson Tobacco Corp.,*
18
   509 U.S. 209 (1993) ................................................................................................ 6

19
*City of St. Paul v. FMC Corp.,*
20
   1990-2 Trade Cas. (CCH) P69, 283, 1990 WL 259683 (D. Minn. Nov. 4, 1990) ........................... 8

21
*Clark Construction Group, Inc. v. City of Memphis,*
   229 F.R.D. 131 (W.D. Tenn. 2005) ............................................................................. 20
22

*Cohen v. Beneficial Industrial Loan Corp.,*
23
   337 U.S. 541 (1949) ........................................................................................... 18, 20

24
*Derzon v. Appleton Papers,*
25
   No. 96-CV-3678, 1998 WL 1031504 (Wis. Cir. Ct., July 7, 1998) ............................................ 7

26
*Durden v. Abbott Labs.,*
   No. CV 93-663 1996 WL 34391966 (Ala. Cir. Ct., Calhoun Co., Jan. 16, 1996) ........................... 7
27

*Execu-Tech Business Sys., Inc. v. Appleton Papers, Inc.,*
28
   743 So. 2d 19 (Fla. Ct. App. 1999); ............................................................................. 7

Gibson, Dunn &
Crutcher LLP

ii

Defendants' Opposition to Plaintiffs' Motion for Certification of California and New Mexico Governmental Entity Classes;
Case No. C-06-04333-PJH

*Fischenich v. Abbott Labs.*,
   No. MC-94-6868 (Minn. Dist. Ct., Hennepin Co., May 26, 1995) ................................................. 8

*Fish v. Microsoft Corp.*,
   Case No. 00-031126-NZ (Mich. Cir. Ct., Wayne Co., Apr. 8, 2004) ............................................ 20

*Gen. Tel. Co. of the Southwest v. Falcon*,
   457 U.S. 147 (1982) ....................................................................................................... 5, 19

*Global Minerals & Metals Corp. v. Sup. Ct.*,
   113 Cal. App. 4th 836 (2003) ........................................................................................... 6

*Godden v. Marigold Foods, Inc.*,
   No. C8-97-932 (Minn. Dist. Ct., Ramsey Co., Mar. 20, 2000) ..................................................... 20

*Harbin v. Johnson & Johnson Vision Prods.*,
   No. CV 94-2872 (Ala. Cir. Ct., Mobile Co., Sept. 12, 1995) .................................................... 7

*In re Agricultural Chems. Antitrust Litig.*,
   1995-2 Trade Cas. (CCH) P71, 197 (N.D. Fla. 1995) ........................................................... 6

*In re Brand Name Prescription Drugs Antitrust Litig. (Price v. American Home Prods.)*,
   1994 WL 663590 (N.D. Ill. Nov. 18, 1994) ...................................................................... 8

*In re DRAM Antitrust Litig.*,
   2006 U.S. Dist. LEXIS 39841 (N.D. Cal., June 5, 2006) ...................................................... 6

*In re Methionine Antitrust Litig.*,
   No. 00-1311, 2003 WL 22048232 (N.D. Cal. Aug. 26, 2003) ................................................. 20

*Karofsky v. Abbott Labs.*,
   1997 Me. Super. LEXIS (Oct. 15, 1997) .......................................................................... 7

*Keating v. Philip Morris, Inc.*,
   417 N.W.2d 132 (Minn. Ct. App. 1987) .......................................................................... 7

*Kerr v. Abbott Labs.*,
   1997-1 Trade Cas. (CCH) P71,776, 1997 WL 314419 (Minn. Dist. Ct. Feb. 19, 1997) ................. 7

*Ludke v. Philip Morris, Inc.*,
   No. MC 00-1954, 2001 WL 1673791 (Minn. Dist. Ct., Hennepin Co., Nov. 21, 2001) ................ 20

*McCarter v. Abbott Labs.*,
   No. CV 9 1-050 1993 WL 13011463 (Ala. Cir. Ct., Shelby Co., Apr. 9, 1993) ............................ 8

*Melnick v. Microsoft Corp.*,
   No. CV-99-709, CV-99-752 (Me. Super. Ct.) ................................................................ 7, 17

*Mersay v. First Republic Corp.*,
   43 F.R.D. 465 (S.D.N.Y. 1968) .................................................................................. 18

Gibson, Dunn &
Crutcher LLP

Defendants' Opposition to Plaintiffs' Motion for Certification of California and New Mexico Governmental Entity Classes;
Case No. C-06-04333-PJH

*Poulos v. Caesar's World Inc.*,
   379 F.3d 654 (9th Cir. 2004)...................................................................................... 6

*Ren v. Philip Morris, Inc.*,
   No. 00-004035-CZ, 2002 WL 1839983 (Mich. Cir. Ct., Wayne Co., Jun. 11, 2002) .................... 20

*Savino v. Computer Credit, Inc.*,
   164 F.3d 81 (2d Cir. 1998)........................................................................................ 19

*Szabo v. Bridgeport Machs., Inc.*,
   249 F.3d 672 (7th Cir. 2001)..................................................................................... 6

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996)..................................................................................... 21

*Weinstein v. American Biomaterials Corp.*,
   123 F.R.D. 442 (S.D.N.Y. 1988)................................................................................. 19

*Weisfeld v. Sun Chem. Corp.*,
   210 F.R.D. 136 (D.N.J. 2002)..................................................................................... 7

*Weisfeld v. Sun Chem. Corp.*,
   84 Fed. Appx. 257 (3rd Cir. 2004)............................................................................... 6

*Weisgram v. Marley Co.*,
   528 U.S. 440 (2000)............................................................................................... 6

*White v. Office of the Public Defender of the State of Maryland*,
   170 F.R.D. 138 (D.Md. 1997)..................................................................................... 20

*Wilcox v. Archer-Daniels- Midland Co.*,
   No. 96- 17 82473-CP (Mich. Cir. Ct., Ingham Co., Sept. 29, 1997) .................................... 7

*Wood v. Abbott Labs.*,
   1997-2 Trade Cas. (CCH) P72,014, 1997 WL 824019 (Mich. 18 Cir. Ct. Sept. 11, 1997).............. 7

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180, amended, 273 F.3d 1266 (9th Cir. 2001) .............................................. 5

**OTHER AUTHORITIES**

William H. Page, *Class Certification in the Microsoft Indirect Purchaser Litigation*,
   J. Comp. L. & Econ. (June 2005).......................................................................... 17, 18, 19

**RULES**

Fed. R. Civ. P. 23(a)(4) ......................................................................................... 19

Fed. R. Civ. P. 23(a)(3) ......................................................................................... 17, 19

Fed. R. Civ. Proc. 23(b)(3)(D) ................................................................................ 23

Gibson, Dunn &
Crutcher LLP

Defendants' Opposition to Plaintiffs' Motion for Certification of California and New Mexico Governmental Entity Classes;
Case No. C-06-04333-PJH

## I.    INTRODUCTION

Plaintiffs seek to certify broad classes of government entities bringing claims based on purchases of an expansive range of products purchased through diverse means. The proposed classes include entities that purchased products ranging from DRAM modules to personal computers and mainframe computers to printers and networking equipment, by means ranging from multi-state negotiated contracts to individual retail purchases. Class treatment of such disparate claims is inappropriate. Plaintiffs' motion fails because of the lack of common proof, atypical proposed class representatives, inadequacy of at least one of the proposed class representatives, and manageability difficulties.

Most significantly, Plaintiffs lack a consistent and common method of demonstrating the existence and extent to which any alleged overcharge was passed on to the different government entities. It is difficult or impossible to determine whether any purchaser of the various products containing DRAM suffered any injury at all as a result of any supposed rise in the price of DRAM at any given time – let alone that such an injury, if any, was sufficiently similar to justify class treatment as proposed by Plaintiffs. Indeed, Plaintiffs do not and cannot measure the impact of any supposed rise in the price of DRAM on these finished products. That is because, among other reasons, the total amount of DRAM embodied in these products is a very small share of the products' overall cost. Compounding the problem, Plaintiffs' own economist concedes that the different categories of products purchased by members of the proposed class require *at least* six separate analyses: "A separate analysis would be undertaken for each category of computer equipment – to which the plaintiffs have limited their claims – *i.e.*, mainframes and supercomputers, servers and workstations, desktop and notebook computers, networking equipment, printers, and DRAM modules." Preliminary Expert Report of Dr. Kenneth Flamm ("Flamm Report") at 42-43. When factoring in the different channels of sales, brands, and models, the number of separate analyses required jumps from six to at least several hundred and likely many thousand.

Plaintiffs' economist also concedes that there are circumstances in which any overcharge in the price of DRAM would not have been passed on at all to purchases of computers and other end-products. These include circumstances that existed during the class period, including instances:

Gibson, Dunn &
Crutcher LLP

Defendants' Opposition to Plaintiffs' Motion for Certification of California and New Mexico Governmental Entity Classes;
Case No. C-06-04333-PJH



8  Not surprisingly, Plaintiffs ignore the only direct evidence in the record of the practices of OEMs and

9  module manufacturers.

11  That testimony directly contradicts Plaintiffs' claim that DRAM price changes were consistently

12  passed on. Courts deny class certification where, as here, plaintiffs cannot establish the fact of injury

13  for some or all of the putative class members.

14      Plaintiffs' motion also suffers from two other infirmities. First, Plaintiffs' only class

15  representative for the State of New Mexico, the County of Sandoval, has shown that it is not an

16  adequate class representative. The County destroyed all of its relevant records of purchases of

17  DRAM or products containing DRAM despite claiming previously that it maintained meticulous

18  records of such purchases made during the period July 2001 through June 2002. But these

19  meticulous records are not available because the County destroyed them sometime *after* Plaintiffs

20  (including the County of Sandoval, who is a named Plaintiff) filed this action in July 2006.

21      Moreover, given the inherent difficulties in class actions with numerous individual issues of

22  fact like this one, the Ninth Circuit has required putative class representatives to present a realistic

23  trial plan. Plaintiffs have not done so here notwithstanding the dizzying array of individual issues

24  raised by their claims.

25      Accordingly, Defendants request that this Court deny Plaintiffs' motion for class certification

26  or, at most, certify only a narrowly-tailored class of California governmental entities that purchased

27  DRAM modules.

Gibson, Dunn &
Crutcher LLP

Defendants' Opposition to Plaintiffs' Motion for Certification of California and New Mexico Governmental Entity Classes;
Case No. C-06-04333-PJH

## II.    STATEMENT OF FACTS[1]

### A.    Plaintiffs' Proposed Class and Proposed Class Representatives

Plaintiffs have requested that this Court certify a class of governmental entities within the State of California, and another class of governmental entities within the State of New Mexico. *See* Motion for the Certification of California and New Mexico Governmental Entities ("Class Cert. Mot.") at 3. According to the allegations in Plaintiffs' Third Amended Complaint, Plaintiffs seek to recover for alleged overcharges stemming from purchases of a multitude of products containing DRAM, including desktop computers, laptop computers, servers, workstations, supercomputers, networking equipment, printers, and DRAM modules. *See* Third Amended Complaint ("TAC"), ¶ 150 (alleging injury in connection with Plaintiffs' purchases of "DRAM" and "DRAM Containing Products"); *see also* TAC ¶¶ 6, 8, 9, 10, and 34 (defining "DRAM" and "DRAM Containing Products," as those terms are used in the Third Amended Complaint). Plaintiffs' economist, Dr. Flamm, also seeks to include "mainframes" among the categories of products for which Plaintiffs seek recovery here. Flamm Report at 7.

Plaintiffs' proposed class representatives for the proposed California class are the City and County of San Francisco, the County of Santa Clara, and the Los Angeles Unified School District. Far from being "typical" of the government entities they seek to represent, these proposed class representatives are, respectively, the fourth-largest city in California by population, the sixth-largest county in California by population, and the largest school district in California by enrollment. *See* Guerin-Calvert Report ¶14; *id.*, Appendix at 38-53. The large size of these entities affords them procurement options that are not available to small government entities; for example, the City and County of San Francisco has developed its own "Computer Store" comprised of seven resellers who hold master contracts with San Francisco. See Declaration of Naomi Kelly (submitted Nov. 21, 2007 in support of Plaintiffs' Motion for Class Certification), ¶ 4. Moreover, none of these proposed

---

[1]    All deposition excerpts, lettered exhibits and declarations in support of the Defendants' Opposition are attached to the Declaration of G. Charles Nierlich except the Declaration of Defendants' expert Margaret E. Guerin-Calvert ("Guerin-Calvert Report"), which is being submitted separately.

Gibson, Dunn & Crutcher LLP

3

Defendants' Opposition to Plaintiffs' Motion for Certification of California and New Mexico Governmental Entity Classes; Case No. C-06-04333-PJH

1   class representatives has produced adequate documents detailing its purchases as propounded by

2   defendants, nor do any claim to have adequate knowledge of the procurement practices and policies

3   of the entities they seek to represent.

4        The California governmental entities that Plaintiffs seek to represent range from counties to

5   school districts to municipalities and state agencies. The California counties range from about 1,200

6   residents to over 9.5 million residents; the school districts range from one with 133 students to one

7   with more than 700,000 students; and state agencies have budgets ranging from $2.2 million

8   (Veterinary Medical Board) to $14 billion (Department of Transportation). *See* Guerin-Calvert

9   Report, ¶ 14; *id.*, Appendix at 38-65.

10        Plaintiffs' only proposed class representative for the proposed New Mexico class is the

11   County of Sandoval. The County of Sandoval did not produce a single document showing a purchase

12   of DRAM or a product containing DRAM during the class period – because the County of Sandoval

13   admits having destroyed its purchasing records for the class period *after* this litigation started. *See*

14   Nierlich Decl., Exh. A (Deposition of Cassandra Herrera) at 79:10-12; 31:2-32:11. The New Mexico

15   governmental entities that Plaintiffs seek to represent also include counties, school districts,

16   municipalities, and various state and local agencies. New Mexico counties range in population from

17   718 to over 600,000; school districts range from 71 students to more than 93,000; and the budgets of

18   state agencies in New Mexico range from just over $1 million to over $229 million. *See* Guerin-

19   Calvert Report, ¶ 14; *id.*, Appendix at 66-82. These are only a few of the many differences among

20   the proposed class members.

21        Not surprisingly, the methods used by these various entities to purchase DRAM or products

22   containing DRAM also vary widely. Among other options, California and New Mexico entities may

23   avail themselves of contracts through the Western States Contracting Alliance ("WSCA," a multi-

24   state purchasing consortium); they may purchase through various state or federal contracts with price

25   lists that are effective for varying periods of time; they may use other forms of competitive bidding;

26   and they may purchase directly from any number of resellers or retailers. *See* Guerin-Calvert Report

27   ¶ 24; *see also, e.g.,* Declaration of Cassandra Herrera, ¶ 7 (submitted Nov. 21, 2007 in support of

28   Plaintiffs' Motion for Class Certification) (listing methods of procurement available to New Mexico

Gibson, Dunn &
Crutcher LLP

4

Defendants' Opposition to Plaintiffs' Motion for Certification of California and New Mexico Governmental Entity Classes;
Case No. C-06-04333-PJH

1   governmental entities, including use of WSCA contracts); *but see, e.g.*, Nierlich Decl., Exh. A

2   (Herrera Depo.) at 79:18-20 (testifying that the County of Sandoval never used WSCA contracts).

3   Thus, there are wide differences in the prices paid among proposed class members for the same

4   computer (or other products containing DRAM).

5   **B.    Defendants and the Distribution of DRAM**

6          This Court is well familiar with the background of the DRAM litigation. As this Court

7   knows, some but not all of the Defendants entered guilty pleas stating that they engaged in episodic

8   communications with competitors regarding the DRAM prices they charged to six specific OEMs

9   "during certain periods of time" from April 1999 through June 2002, with "varying levels of

10  effectiveness" in raising those prices. *See, e.g.*, Plea Agreement of Infineon Technologies AG,

11  *United States v. Infineon Technologies AG*, No. 04-299 (PJH) (Sept. 14, 2004), at ¶¶ 2, 4; Plea

12  Agreement of Hynix Semiconductor, Inc., *United States v. Hynix Semiconductor, Inc.*, No. CR 05-

13  249 PJH (Apr. 20, 2005), at ¶¶ 2, 4. A large number of manufacturers other than the Defendants here

14  manufactured up to nearly 30% of the DRAM sold in the U.S. during portions of that period. *See*

15  Guerin-Calvert Report at ¶112. Defendants generally sold their DRAM directly to OEMs or to

16  module makers. The module makers then resold DRAM to OEMs, distributors, retailers, and end

17  users. The OEMs, in turn, sold computers to distributors, retailers and end users. Additional layers

18  of distribution included brokers, consultants and resellers of various kinds. *See* Guerin-Calvert

19  Report at ¶93.

20                              **III.    ARGUMENT**

21         Plaintiffs bear the burden of meeting each of the requirements of Rule 23(a) — numerosity,

22  common issues, typicality, and adequacy of representation — along with at least one requirement of

23  Rule 23(b). *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, amended, 273 F.3d 1266

24  (9th Cir. 2001). For monetary relief, Plaintiffs must meet the requirements of Rule 23(b)(3),

25  including proof that common issues predominate and that the proposed class is superior to alternative

26  means of adjudicating the controversy. A court must deny certification if any of the requirements of

27  Rule 23 is not met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 622 (1997).

28

Gibson, Dunn &
Crutcher LLP

Defendants' Opposition to Plaintiffs' Motion for Certification of California and New Mexico Governmental Entity Classes;
Case No. C-06-04333-PJH

1    Rule 23 requires the Court to conduct a "rigorous analysis" and "probe behind the pleadings"

2  to determine whether class treatment is appropriate. *Gen. Tel. Co. of the Southwest v. Falcon*, 457

3  U.S. 147, 160-61 (1982). As this Court has held, matters beyond the pleadings may be considered

4  "to ascertain whether the asserted claims or defenses are susceptible of resolution on a class wide

5  basis." *In re DRAM Antitrust Litig.*, 2006 U.S. Dist. LEXIS 39841, *27 (N.D. Cal., June 5, 2006).

6    Nothing in Rule 23 requires the Court to accept as true the allegations of the complaint. *See,*

7  *e.g., Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) ("The proposition that a

8  district judge must accept all of the complaint's allegations when deciding whether to certify a class

9  cannot be found in Rule 23 and has nothing to recommend it").

10    Similarly, the opinions of Plaintiffs' expert are not "facts" and, when unsupported by

11  evidence, cannot establish the requirements of Rule 23. As the Supreme Court explained: "Expert . .

12  . . . testimony is useful as a guide to interpreting market facts, but it is not a substitute for them."

13  *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993). Expert

14  testimony is of no value when it "is not supported by sufficient facts to validate it in the eyes of the

15  law, or when indisputable record facts contradict or otherwise render the opinion unreasonable."

16  *Weisgram v. Marley Co.*, 528 U.S. 440, 454 (2000) (quoting *Brooke Group*). Courts regularly deny

17  class certification in antitrust cases where the Plaintiffs rely on factually unsupported economic

18  experts.[2]

19  **A.    Plaintiffs Cannot Show That Common Issues Predominate Because The Claims**
20  **Of The Members of the Proposed Class Who Purchased DRAM Indirectly Raise**
     **Individual Issues Of Proof**

21    To obtain certification under Rule 23(b)(3), Plaintiffs must demonstrate that issues subject to

22  common, classwide proof will predominate over issues that involve individualized proof. *Poulos v.*

23  *Caesar's World Inc.*, 379 F.3d 654, 664 (9th Cir. 2004). Here, impact and injury will require

24  individual proof for each class member. Accordingly, class certification should be denied.

25

26  ─────────────

27  [2]    *See, e.g. Weisfeld v. Sun Chem. Corp.*, 84 Fed. Appx. 257, 262 (3rd Cir. 2004) (affirming
     denial of class certification); *In re Agricultural Chems. Antitrust Litig.*, 1995-2 Trade Cas.
     (CCH) P71, 197 (N.D. Fla. 1995) (denying class certification); *Global Minerals & Metals*
28   *Corp. v. Sup. Ct.*, 113 Cal. App. 4th 836, 856-57 (2003) (vacating class certification).

Gibson, Dunn &
Crutcher LLP

6

Defendants' Opposition to Plaintiffs' Motion for Certification of California and New Mexico Governmental Entity Classes;
Case No. C-06-04333-PJH

### 1.   Class Certification Should Be Denied Because Plaintiffs Cannot Show Impact On A Classwide Basis With Common Proof

When injury cannot be shown on a classwide basis with common proof, certification should be denied.[3] Plaintiffs have not demonstrated that injury – sometimes referred to as "impact" or "fact of damage" – can be shown with common proof on a classwide basis. Proof is common only if "the same evidence will suffice for each member to make a prima facie showing." *Blades v. Monsanto*, 400 F.3d at 566.

For indirect purchasers, injury requires proof that Defendants' alleged overcharges were "passed on" to them by intermediate sellers. But the "pass-on" to any particular class member is dependent on the pricing decisions made by the various intermediate sellers between the Defendants and the proposed class members. Courts throughout the country repeatedly have refused to certify indirect purchaser classes because of the lack of common proof of "pass on" through various resellers.[4]

---

[3]  *Amchem*, 521 U.S. at 623-25; *Blades v. Monsanto*, 400 F.3d 562, 566, 572 (8th Cir. 2005) (affirming denial of class certification where plaintiffs "cannot prove classwide injury with proof common to the class"); *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003) ("we have repeatedly held that where fact of damage cannot be established for every class member through proof common to the class, the need to establish antitrust liability for individual class members defeats Rule 23(b)(3) predominance"); *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 144 (D.N.J. 2002) ("Plaintiff must establish that each class member has, in fact, been injured by the alleged conduct."), *aff'd* 84 F.3d.Appx. 257 (3d Cir. 2004) .

[4]  *A&M Supply Co. v. Microsoft Corp.*, 654 N.W.2d 572 (Mich. Ct. App. 2002) (operating system); *Execu-Tech Business Sys., Inc. v. Appleton Papers, Inc.*, 743 So. 2d 19 (Fla. Ct. App. 1999); *Keating v. Philip Morris, Inc.*, 417 N.W.2d 132 (Minn. Ct. App. 1987) (cigarettes); *Melnick v. Microsoft Corp.*, No. CV-99-709, CV-99-752 (Me. Super. Ct.) (operating system); *Derzon v. Appleton Papers*, No. 96-CV-3678, 1998 WL 1031504 14 at 7-8 (Wis. Cir. Ct., July 7, 1998) (fax paper: "Constructing economic models in order to reach generalized conclusion about economic behavior is one thing; using such theories to prove that every class member has suffered a loss and the amount of that loss is quite another." (italics in original)); *Ashley v. Archer Daniels Midland Co.*, No. CV 95-336-R (Ala. Cir. Ct., DeKalb Co., Mar. 13, 1998) (lysine); *Karofsky v. Abbott Labs.*, 1997 Me. Super. LEXIS (Oct. 15, 1997) (prescription drugs); *Wilcox v. Archer-Daniels-Midland Co.*, No. 96- 17 82473-CP (Mich. Cir. Ct., Ingham Co., Sept. 29, 1997) (high-fructose corn syrup and citric acid); *Wood v. Abbott Labs.*, 1997-2 Trade Cas. (CCH) P72,014, 1997 WL 824019 (Mich. 18 Cir. Ct. Sept. 11, 1997) (prescription drugs); *Kerr v. Abbott Labs.*, 1997-1 Trade Cas. (CCH) P71,776, 1997 WL 314419 (Minn. Dist. Ct. Feb. 19, 1997) (prescription drugs); *Durden v. Abbott Labs.*, No. CV 93-663 (Ala. Cir. Ct., Calhoun Co., Jan. 16, 1996) (infant formula); *Harbin v. Johnson & Johnson Vision Prods.*, No. CV 94-2872 (Ala. Cir. Ct., Mobile Co., Sept. 12, 1995) (contact lenses); *Fischenich v. Abbott Labs.*, No. MC-94-6868 (Minn. Dist. Ct., Hennepin Co., May

[Footnote continued on next page]

7

Gibson, Dunn & Crutcher LLP

1    This Court also recently determined in a related case that indirect purchasers of

2    DRAM did not meet the standing requirements enunciated in *Assoc. Gen. Contractors of Cal.*

3    *v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*"), and thus lacked antitrust

4    standing to assert claims under several state laws for claims based on the purchases of

5    products in which DRAM is a component. *See* Order Granting Motion to Dismiss in Part and

6    Denying Motion to Dismiss in Part, MDL No. 1486, *In re Dynamic Random Access Memory*

7    *(DRAM) Antitrust Litigation* (All Indirect Purchaser Actions) (Jan. 29, 2008) at 4-15.

8    Defendants believe that the same conclusion will apply to the claims of all of the Plaintiffs

9    here, and intend to raise the issue at an appropriate time for determination as to all of the

10    Plaintiffs (and not just California and New Mexico, who are the moving parties for the instant

11    motion for class certification). For present purposes, however, there is no need to address the

12    question of whether Plaintiffs satisfy the standing requirement of *AGC* because the

13    requirements of Rule 23 preclude class certification.

14    **2.    Plaintiffs Do Not Provide Any Means to Identify and Exclude Customers**
          **for Whom No Impact At All Can Be Shown**

15

16    In their motion for class certification, Plaintiffs rely heavily on this Court's analysis in

17    the direct purchaser class certification motion in the DRAM MDL litigation. But this Court

18    has not previously certified an indirect purchaser class, for which plaintiffs would be required

19    to establish pass-on on a classwide basis using common proof. As discussed in more detail in

20    the Guerin-Calvert Report, there are many reasons that it is difficult or impossible to use a

21    common methodology to estimate pass-on at any given price. There are also a variety of

22    reasons why pass-on could be zero for substantial portions of the proposed class.

23

24

25    [Footnote continued from previous page]
          26, 1995) (infant formula); *In re Brand Name Prescription Drugs Antitrust Litig.* (*Price v.*

26    *American Home Prods.*), 1994 WL 663590 (N.D. Ill. Nov. 18, 1994) (prescription drugs);
          *McCarter v. Abbott Labs.*, No. CV 9 1-050 (Ala. Cir. Ct., Shelby Co., Apr. 9, 1993) (infant

27    formula); *City of St. Paul v. FMC Corp.*, 1990-2 Trade Cas. (CCH) P69, 283, 1990 WL
          259683 (D. Minn. Nov. 4, 1990) (caustic soda and chlorine); *Borden, Inc. v. Universal Indus.*

28    *Corp.*, 88 F.R.D. 708, 710 (N.D. Miss. 1981) (sugar).

Gibson, Dunn &
Crutcher LLP

Defendants' Opposition to Plaintiffs' Motion for Certification of California and New Mexico Governmental Entity Classes;
Case No. C-06-04333-PJH

1    First, in the direct purchaser DRAM litigation, plaintiffs' expert conceded that there

2    were periods within the alleged conspiracy where prices were competitive and thus no harm

3    was incurred. *See* Nierlich Decl., Exh. E (Expert Report of Roger Noll (8/25/06)) at 5. There

4    often is no way to determine whether a particular PC or other product contains DRAM

5    manufactured during those periods. Indeed, even PCs alone and the DRAM in them are sold

6    through multiple channels, taking varying amounts of time up to months. █████████

7    ███████████████████████████████████████████

8    ███████████████████████████████████ Without an ability to make

9    this determination by common proof, class-wide impact cannot be determined. Dr. Flamm

10   does not explain how one might accurately distinguish products sold over the period of the

11   alleged conspiracy that contained competitively priced DRAM.

12   Second, █████████████████████████████████

13   ███████████████████████████████████████████

14   ███████████████████████████████████████████

15   ████████████████████ *See* Guerin-Calvert Report at ¶ 102; *see also* Flamm Depo at

16   232:17-233:15.

17   Third, certain manufacturers depend upon forecasts rather than actual prices of

18   components in deciding the final price of the computer to the reseller, retailer or consumer

19   depending on the supply chain. *See* Guerin-Calvert Report at ¶ 111. ███████████

20   ███████████████████████████████████████████

21   ███████████████████████████████████████████

22   ████████████████████ *See id.; see also* Nierlich Decl., Exh. F (article dated

23   6/8/01 from the Wall Street Journal) (observing that computer manufacturers other than Dell

24   did not have flexibility to adjust PC prices to reflect changes in component costs).

25   Fourth, ███████████████████████████████████

26   ███████████████████████████████████████████

27   ███████████████████████████████████████████

28   ███████████████████████████████████████████

Gibson, Dunn &
Crutcher LLP

Defendants' Opposition to Plaintiffs' Motion for Certification of California and New Mexico Governmental Entity Classes;
Case No. C-06-04333-PJH



generally remained stable even during periods of dramatic movements in DRAM prices.[5]

Moreover, while the class is defined in terms of sales by the defendants named here,
Defendants did not account for the entire DRAM sales over the period and did not even
account for a constant proportion over the period of the alleged collusion. *See* Guerin-Calvert

---

[5]     Any suggestion by Plaintiffs that pass-on could take place in other ways, *e.g.*, through
changes in configuration and other components, is even less susceptible to class-wide proof.

Gibson, Dunn &
Crutcher LLP

Defendants' Opposition to Plaintiffs' Motion for Certification of California and New Mexico Governmental Entity Classes;
Case No. C-06-04333-PJH

1  Report at ¶ 112. Given the variable proportion of non-defendant sales and the issues

2  discussed concerning variable lags, it would be impossible to determine whether an end-user

3  purchased a computer or module containing DRAM supplied by a defendant or a non-

4  defendant.

5       In short, Plaintiffs have not established that any specific class of purchasers has

6  suffered any injury at all as a result of the purchase of products containing DRAM. To the

7  contrary, by including such a wide variety of products containing DRAM and relying on

8  broad generalizations, Plaintiffs have likely ensured that their proposed class will include

9  claims for which there was no pass on to the end user of any increase in the price of DRAM.

10      **3.    Plaintiffs Cannot Show Pass-on On A Classwide Basis Here Because of the**
        **Vast Differences Among the Products Containing DRAM that Plaintiffs**
11      **Have Placed at Issue Here**

12      Plaintiffs' request for class certification here differs in a number of ways from

13  previous motions by direct purchasers of DRAM and even the indirect purchasers' class

14  certification motion, which was limited to purchasers of personal computers containing

15  DRAM. One key difference is that Plaintiffs here seek to recover based on purchases of a

16  number of different types of products containing DRAM, including personal computers,

17  printers, networking equipment, mainframes, and DRAM modules. *See* TAC, ¶ 150 (alleging

18  injury in connection with Plaintiffs' purchases of "DRAM" and "DRAM Containing

19  Products"); *see also* TAC ¶¶ 6, 8, 9, 10, and 34 (defining "DRAM" and "DRAM Containing

20  Products" to include various products including desktop computers, notebook computers,

21  printers, networking equipment, supercomputers, and DRAM modules). The different

22  products containing DRAM that are at issue would have different pass-on rates (or even zero

23  pass-on), precluding any determination or quantification of classwide impact.

24      The cost of DRAM in a product containing DRAM is generally only a small fraction

25  of the total price of the product, and that fraction varies at different times. Indeed, DRAM

26  accounts for only 0.3% of the cost of a supercomputer on average during 2000-2002, less than

27  4% of the cost of a printer on average during that time period, and no more than 17% of the

28  price on average during that time period for any of the products containing DRAM identified

Gibson, Dunn &
Crutcher LLP

11

Defendants' Opposition to Plaintiffs' Motion for Certification of California and New Mexico Governmental Entity Classes;
Case No. C-06-04333-PJH

1    by Plaintiffs other than DRAM modules. *See* Guerin-Calvert Report, Appendix at 84.



9         But the pass-on rate is not 100% for every product – or perhaps any product – at issue

10   here. Plaintiffs also cannot show that there is any other common figure for all of the various

11   products containing DRAM that are at issue here. Indeed, *any* pass-on rate may not be

12   subject to determination for many of the products at issue here.

17         A brief review of the broad categories of products at issue here shows that pass-on

18   rates vary dramatically across as well as within categories of products containing DRAM. To

19   take one example, supercomputers are more specialized than other types of computers, and

20   are typically designed to solve a single class of problems. *See* Guerin-Calvert Report ¶ 54.

21   As a result, the design and price of one supercomputer may vary substantially from another,

22   and there is no basis to conclude that any two supercomputers – let alone all of them – would

23   have the same pass-on rate. *See id,* ¶ 55. Personal computers also vary in size, design,

24   technological complexity, fault resistance, and end-use requirements, and thus are subject to

25   different supply and demand conditions which will affect the pass-on rates, if any, for

26   different personal computers. *See id.,* ¶ 59. To take yet another two examples, the category

27   of networking equipment includes repeaters, bridges, routers, hubs, switches, and gateways,

28   with prices ranging from under $100 to over $20,000, and the category of printers includes

Gibson, Dunn &
Crutcher LLP

12

Defendants' Opposition to Plaintiffs' Motion for Certification of California and New Mexico Governmental Entity Classes;
Case No. C-06-04333-PJH

1    almost 2,000 different products with prices ranging from about $10 to over $30,000. *See id.*

2    ¶75 and ¶¶ 80-82. Dr. Flamm does not explain – and there is no reason to believe – that these

3    myriad different products would be subject to similar (or any) pass-on, especially given the

4    small portion of the overall product cost attributable to DRAM.[6] *See id.*, ¶ 99.

5          Indeed, even in the category of DRAM modules, where DRAM accounts for a

6    substantial portion of the total price of the product, the rate of pass-on is dependent on supply

7    and demand conditions in the downstream markets and thus cannot be applied broadly across

8    or within categories. As Ralph Kaplan, Executive Vice President and General Manager of

9    DRAM module manufacturer Viking Interworks has testified, "The price at which Viking

10   sold its modules, and thus whether and to what extent Viking recovered any increases in its

11   DRAM costs, depended on competitive conditions in the module market, including demand

12   for modules, changes in prices of other materials, and the terms of contracts (purchase orders)

13   under which Viking sold modules to OEMs and other customers." Nierlich Decl., Exh. G

14   (Declaration of Ralph Kaplan) at ¶ 11. In other words, even when DRAM is a substantial

15   portion of the cost of a product containing DRAM, the amount of any pass-on (or even

16   whether there was any pass-on at all) depends on the supply and demand conditions at any

17   given time in the downstream market. The ability of a fluctuation in the price of DRAM to

18   affect the price of a product containing DRAM would, of course, be even more reduced for

19   those products where the portion of the price of the product containing DRAM that is

20   attributable to DRAM is lower.

21         Plaintiffs' class certification expert, Dr. Flamm, concedes that the different categories

22   of products require *at least* six separate analyses: "A separate analysis would be undertaken

23   for each category of computer equipment – to which the plaintiffs have limited their claims –

24   _____

25   [6]   This analysis is complicated further by the fact that the supply chain to manufacture many of
         these products include multiple levels (which also vary within and across product categories).
26       Each level of the supply chain adds a time lag that may affect any pass-on of any increase or
         decrease of the price of DRAM. Moreover, as one multiplies the pass-on at any given level
27       with the pass-on at another level (assuming that each level in the supply chain does not pass
         on 100% of any increase or decrease in the cost of DRAM), the ultimate pass-on rate to the
28       end user will be even smaller. *See* Guerin-Calvert Report ¶ 97.

Gibson, Dunn &
Crutcher LLP

13

Defendants' Opposition to Plaintiffs' Motion for Certification of California and New Mexico Governmental Entity Classes;
Case No. C-06-04333-PJH

1    i.e., mainframes and supercomputers, servers and workstations, desktop and notebook

2    computers, networking equipment, printers, and DRAM modules." Flamm Report at 42-43.

3    In fact, as Dr. Guerin-Calvert explains in her report, there are likely hundreds, if not

4    thousands, of potential combinations to consider.  For example, if one considers a simple

5    example with six different product groups (assuming one could combine the groups together

6    as Plaintiffs claim), five channels for sales, five brands of products, and three models, there

7    would be 450 combinations to consider (6 products x 5 channels x 5 brands x 3 models).  *See*

8    Guerin-Calvert Report ¶33.  As one expands the number of products, channels,  brands, and

9    models to be consistent with the real world, the number of combinations becomes

10    overwhelming to any kind of potential classwide approach.

        **4.    The Wide Variety of Customers and Their Methods of Acquiring DRAM or Products Containing DRAM Contradict Plaintiffs' Broad Generalizations About Procurement and Pass-on**

13    The proposed class members here vary dramatically in size and scope – from counties

14    of about 1,000 residents to counties of more than 1 million, cities of fewer than a hundred

15    people to cities of more than half a million, and state agencies with budgets of one or two

16    million dollars up to state agencies with budgets of hundreds of millions or billions of dollars.

17    Given these differences, it should come as no surprise that these various state and local

18    governmental entities used a variety of methods to purchase DRAM and products containing

19    DRAM, from multi-state long-term contracts to various forms of competitive bidding to

20    purchases from retail stores.  Notwithstanding this heterogeneity of customer and buying

21    method, Plaintiffs assert that pass-on rates for DRAM price increases experienced by these

22    proposed class members should be "very similar."  But the facts belie this simple assertion:

23    different entities pay different amounts for the same product depending on their size and

24    method of procurement, and even under a similar purchasing method such as long-term

25    contracts, the prices actually paid (and thus the potential for pass-on) vary substantially.

26    The California governmental entities that Plaintiffs seek to represent range from the

27    very small to the very large, and thus have substantially different buying and bargaining

28    power.  For example, the smallest county in California by population is Alpine County, which

Gibson, Dunn &
Crutcher LLP

14

Defendants' Opposition to Plaintiffs' Motion for Certification of California and New Mexico Governmental Entity Classes;
Case No. C-06-04333-PJH

1  has about 1,180 resident. *See* Guerin-Calvert Report ¶ 14. The largest county in California

2  by population is Los Angeles County, which has nearly 10 million residents. *See id.* The

3  range for the size of public colleges and universities is similarly dramatic, from 700 students

4  at Lassen College to more than 38,000 at UCLA. *See id.* There should be no dispute that

5  Lassen College and UCLA would purchase different volumes of products containing DRAM,

6  and thus may receive different pricing and other terms. The New Mexico entities that

7  Plaintiffs seek to represent are similarly diverse, ranging from Harding County with 718

8  residents to Bernalillo County with over 615,000, and school districts with enrollments

9  ranging from fewer than 100 students to more than 90,000. *See id.* Again, it strains credulity

10 to argue that these varying entities will necessarily experience the same (or any) rate of pass-

11 on of any increase in the price of DRAM. In addition, these varying entities use a variety of

12 methods to purchase DRAM or products containing DRAM, ranging from the multi-state

13 contracts through the Western States Contracting Alliance (WSCA) to the local competitive

14 bidding to individual purchases from retail stores like Office Max. *See id.*, ¶ 24.

15     Plaintiffs' expert, Dr. Kenneth Flamm, opines that "an economist would conclude that

16 prices for computer equipment purchased by all other government entities in both California

17 and New Mexico were determined by comparable market conditions and should be quite

18 comparable, and therefore that pass through rates for DRAM price increases into computer

19 equipment prices paid by state and local government entities would also be very similar."

20 Flamm Report at 47. Dr. Flamm does not support these broad generalizations, and the

21 testimony suggests otherwise. For example, the Chief Procurement Officer for the Los

22 Angeles Unified School District testified that, not surprisingly, different school districts may

23 have paid different prices for the same product depending on their method of procurement.

24 Nierlich Decl., Exh. D (Deposition of Duane Johnson) at 84:24-85:11.

25     That these differences preclude classwide proof is confirmed by the undeniable

26 empirical fact that different Plaintiffs paid different prices for the same product, depending on

27

28

Gibson, Dunn &
Crutcher LLP

15

Defendants' Opposition to Plaintiffs' Motion for Certification of California and New Mexico Governmental Entity Classes;
Case No. C-06-04333-PJH

1  the procurement method selected. *See* Guerin-Calvert Report ¶¶ 26-28. Plaintiffs' argument

2  that pass-on may be demonstrated by common proof flies in the face of the facts.[7]

3      **5.    Plaintiffs' Reliance on the *Microsoft* Cases Is Misplaced**

4          Plaintiffs seek to avoid the many cases refusing to certify indirect purchaser classes

5  due to the lack of common proof of pass on through various resellers by analogizing to state

6  court rulings in the follow-on private antitrust actions brought against Microsoft after

7  judgment in a federal enforcement action. *See* Class Cert Mot. at 13. In those cases, plaintiffs

8  filed antitrust class actions on behalf of consumers who had bought Windows indirectly, by

9  buying a personal computer that incorporated Windows as the operating system. Here,

10  plaintiffs argue that the state courts in those actions "predominately determined that impact

11  could indeed be demonstrated to prove impact on a class-wide basis" and conveniently

12  dismiss those state court decisions which denied certification. *Id.* at 13-15. In support of

13  their arguments, plaintiffs rely on a 2005 article from the Journal of Competition Law &

14  Economics. *Id.* at 15 (citing William H. Page, *Class Certification in the Microsoft Indirect*

15  *Purchaser Litigation*, J. Comp. L. & Econ. (June 2005) 303, 310) ("Page"). This article is

16  helpful, but not for the reasons plaintiffs cite.

17          First, the author of the article points out that state courts have shown striking

18  differences in their approach to the certification inquiry associated with the *Microsoft* indirect

19  purchaser actions. *Id.* at 306. The many differences in these approaches – a product of

20  differences in state laws as well as different states' approaches to the class certification

21  inquiry generally – underscore that the conclusions of these state courts provide little insight

22  for the purposes of a federal court applying federal law regarding class certification.

23          Second, the author of the article notes that the *Microsoft* litigation is not necessarily

24  instructive for indirect purchaser actions generally because the unique factual circumstances

25

26  [7]   The wide variety of prices paid by different customers, the methods of purchasing, the types
        of products purchased, and the amount of pass-on (if any) of any alleged overcharges to any
27      customer would make it impossible for any purported class representative, including the
        purported class representatives here, to be "typical" of the members of the putative class, and
28      thus class certification should be denied for this reason as well. *See* Fed. R. Civ. P. 23(a)(3).

Gibson, Dunn &
Crutcher LLP

16

Defendants' Opposition to Plaintiffs' Motion for Certification of California and New Mexico Governmental Entity Classes;
Case No. C-06-04333-PJH

1   are unlikely to be present in other indirect purchaser actions. *Id.* at 332. Specifically, the

2   author states that certification of Microsoft indirect purchaser classes by some state courts,

3   and particularly the conclusions of some of those courts that it was possible to adequately

4   show proof of impact on a classwide basis, was likely rooted in three factors: (1) there was

5   only a single seller of Windows; (2) a relatively small number of intermediate levels of

6   distribution that were generally competitive; and (3) relatively few purchases of software by

7   each class member. *Id.* In contrast, here, (1) they are many sellers of DRAM, not all of

8   which are defendants in this case; (2) there are a large number of intermediate levels of

9   distribution; and (3) many class members likely made large numbers of purchases. Moreover,

10  the Plaintiffs here do not necessarily have a direct relationship with the Defendants, unlike the

11  plaintiffs in the *Microsoft* cases, who were licensees of Microsoft's software. These stark

12  differences between the facts presented by the *Microsoft* indirect purchaser actions and this

13  case underscore why plaintiffs cannot use common proof to prove classwide impact for their

14  proposed class of indirect purchasers.

15      Finally, plaintiffs rely on the article for their contention that this Court should consider

16  the fact that California and New Mexico are "sanguine" states which adopt the view of the

17  dissent in *Illinois Brick* and, as such, would be more likely to grant certification of this

18  indirect purchaser action. Class Cert Mot. at 15. For the reasons discussed above, a state

19  court's decision on certification in the context of the facts presented in *Microsoft* is of little

20  utility in analyzing plaintiffs' ability to prove classwide impact with common proof in this

21  case, as required by Rule 23 of the Federal Rules of Civil Procedure. Indeed, the author of the

22  article plaintiffs rely on for this "skeptical/sanguine" distinction posits that the state court

23  decisions granting certification in the *Microsoft* indirect purchaser actions appeared to be

24  caused by "a kind of snowball effect – later cases cited earlier ones as precedent, and

25  characterized the contrary decisions in *A&M* and *Melnick* as aberrations." Page at 325. As to

26  New Mexico, Plaintiffs' suggested "shortcut" is particularly inappropriate because that state's

27  courts have certified only one indirect purchaser class – in the *Microsoft* action.

28

Gibson, Dunn &
Crutcher LLP

17

Defendants' Opposition to Plaintiffs' Motion for Certification of California and New Mexico Governmental Entity Classes;
Case No. C-06-04333-PJH

1    **B.    The Proposed New Mexico Class Representative Is Not Adequate Because the
          County of Sandoval Admits Destroying Its Only Records of Purchases of DRAM
2         or Products Containing DRAM During the Class Period**

3    The proposed New Mexico class representative is also inadequate under Rule 23(a)(4)

4    because it destroyed all of its remaining records of purchases of DRAM *after* filing this action.  Rule

5    23(a)(4) of the Federal Rules of Civil Procedure requires that the named parties "will fairly and

6    adequately protect the interests of the class."  Fed R. Civ. P. 23(a)(4); *see also Amchem Products,*

7    *Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  "The adequacy inquiry under Rule 23(a)(4) serves to

8    uncover conflicts of interest between named parties and the class they seek to represent."  *Amchem*,

9    521 U.S. at 625.  Because all members of the class are bound by the res judicata effect of the

10   judgment, a principal factor in determining the appropriateness of class certification is "the

11   forthrightness and vigor with which the representative party can be expected to assert and defend the

12   interests of the members of the class."  *Mersay v. First Republic Corp. of America*, 43 F.R.D. 465,

13   470 (S.D.N.Y. 1968).  Indeed, in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 549

14   (1949), the Supreme Court characterized the responsibility that a putative class representative has to

15   the members of the class as "one of a fiduciary character" that is "dependent on his diligence,

16   wisdom and integrity."  Accordingly, the Court explained that a class representative must meet

17   "standards of responsibility, liability and accountability" to protect the class he seeks to represent.

18   *Cohen*, 337 U.S. at 550.

19   The only class representative for the proposed New Mexico class is the County of Sandoval.

20   At a deposition on December 20, 2007, the designated witness for the County of Sandoval testified

21   that as of December 2006 – several months after the plaintiffs including the County of Sandoval filed

22   their original complaint in this action – the County of Sandoval maintained "requisition forms,

23   purchase orders, invoices, quotes, and contracts" relating to purchases by the County of Sandoval of

24   products containing DRAM.  Nierlich Decl., Exh. A (Herrera Dep.) at 78:4-11.  However, the County

25   of Sandoval no longer maintained these documents as of December 2007.  *Id.* at 76:10-17 (testifying

26   that documents are currently maintained only back to the 2002-03 fiscal year, which started on July 1,

27   2002).  Cassandra Herrera, the designated deponent for the County of Sandoval, admitted that she

28

Gibson, Dunn &
Crutcher LLP

18

Defendants' Opposition to Plaintiffs' Motion for Certification of California and New Mexico Governmental Entity Classes;
Case No. C-06-04333-PJH

1    ordered that the documents for the 2001-02 fiscal year, including requisition forms, purchase orders,

2    and invoices showing purchases of products containing DRAM, be destroyed. *Id.* at 79:10-12.

3          As a result of the destruction of requisition forms, purchase orders, invoices, quotes, and

4    contracts showing purchases of DRAM or products containing DRAM by the County of Sandoval,

5    the entire production of documents by the County of Sandoval was limited to a total of fifteen pages:

6    a document entitled General Financial Management Policies and Procedures that was not operative

7    during the class period, and a general description of Ms. Herrera's job responsibilities. Plaintiffs

8    produced no documents whatsoever from which they could assess whether any purchases of DRAM

9    or products containing DRAM by the County of Sandoval even occurred, let alone whether those

10   purchases were in some way typical of the proposed class.

11         Where, as here, the putative class representative has destroyed documents that are

12   undoubtedly relevant and central to the claims it seeks to bring on behalf of its proposed class, such

13   destruction raises a host of issues regarding that class representative's adequacy to represent the class.

14   First, without these documents, there is no way for the Court to determine that the named plaintiff's

15   claim and the class claims are "so interrelated that the interests of the class members will be fairly

16   and adequately protected in their absence." *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147,

17   157, n.13. This raises serious issues as to whether the claims asserted by the County of Sandoval are

18   typical or common with those of the class members it seeks to represent. Second, if the County of

19   Sandoval were allowed to represent the proposed New Mexico class, its destruction of relevant

20   documents after the filing of the complaint in this action would raise "serious concerns as to [the

21   County's] credibility at trial." *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998)

22   (holding that district court did not abuse its discretion in denying certification on the grounds that

23   proposed representative would be inadequate because of questions regarding his integrity).

24         Third, and relatedly, the County of Sandoval's admitted destruction of these relevant

25   documents will likely subject it to unique defenses that would not necessarily be applicable to other

26   class members. *Weinstein v. American Biomaterials Corp.*, 123 F.R.D. 442, 466 (S.D.N.Y. 1988)

27   (denying motion for class certification, in part, because putative class representative was subject to

28   defenses unique to him). At a minimum, the County's actions could result in the Court applying an

Gibson, Dunn &
Crutcher LLP

19

Defendants' Opposition to Plaintiffs' Motion for Certification of California and New Mexico Governmental Entity Classes;
Case No. C-06-04333-PJH

1  adverse inference sanction against the County. *See, e.g., Clark Construction Group, Inc. v. City of*

2  *Memphis*, 229 F.R.D. 131, 141 (W.D. Tenn. 2005) (imposing adverse inference sanction against party

3  who negligently destroyed documents directly relevant to the claims at issue). The Court might also

4  determine that the action should be dismissed based on the County's actions. *White v. Office of the*

5  *Public Defender of the State of Maryland*, 170 F.R.D. 138, 152-153 (D. Md. 1997) (dismissing suit

6  with prejudice based on plaintiff's destruction of documents clearly relevant to the litigation).

7  Because the destroyed documents constitute a significant portion of the proof the County would be

8  required to prove its damage claim, either of these outcomes would be detrimental the interests of the

9  proposed class members and underscores an irreconcilable conflict between the interests of the

10  proposed class representative and the proposed class. Under these circumstances, the County of

11  Sandoval does not meet the "standards of responsibility, liability and accountability" set out by the

12  Supreme Court and class certification of the New Mexico class should be denied on the grounds that

13  the proposed class representative is inadequate to protect the class he seeks to represent. *Cohen*, 337

14  U.S. at 550.

15  **C.    The Proposed Class Presents Significant Manageability Issues**

16      Courts routinely reject indirect purchaser classes because the plaintiffs failed to demonstrate

17  that the proposed class action would be manageable.[8] Given the inherent difficulties in class actions

18  with numerous individual issues of fact, courts often require putative class representatives to present

19  a realistic trial plan. *See Zinser*, 253 F.3d at 1189; *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227,

20

21

22  [8]  *Godden v. Marigold Foods, Inc.*, No. C8-97-932, at 2-4 (Minn. Dist. Ct., Ramsey Co., Mar. 20, 2000) rejected a proposed class of consumers who bought milk at retail stores, emphasizing the complexity of the state's milk markets and distribution system. *Ludke v.*

23  *Philip Morris, Inc.*, No. MC 00-1954, 2001 WL 1673791 (Minn. Dist. Ct., Hennepin Co., Nov. 21, 2001) refused to certify a class of retail purchasers of cigarettes because, the

24  frequency of purchases of cigarettes, and absence of records of the purchases, made it impossible to determine damages by common proof or administer a claims process. *See also*

25  *Fish v. Microsoft Corp.*, Case No. 00-031126-NZ (Mich. Cir. Ct., Wayne Co., Apr. 8, 2004) (regressions using retail data rejected as not adequately capturing market realities and only

26  proving average harm to the class); *see also Ren v. Philip Morris, Inc.*, No. 00-004035-CZ, 2002 WL 1839983 (Mich. Cir. Ct., Wayne Co., Jun. 11, 2002). Similarly, the court in *In re*

27  *Methionine Antitrust Litig.*, No. 00-1311, 2003 WL 22048232, at 10 (N.D. Cal. Aug. 26, 2003) decertified an indirect purchaser class because the plaintiffs' expert was unable to offer

28  a damages model that reflected the market dynamics.

Gibson, Dunn &
Crutcher LLP

20

Defendants' Opposition to Plaintiffs' Motion for Certification of California and New Mexico Governmental Entity Classes;
Case No. C-06-04333-PJH

1    1234 (9th Cir. 1996). Plaintiffs submitted no such plan here, and have not shown that treatment is

2    superior to other alternatives. *See* Fed. R. Civ. Proc. 23(b)(3)(D).

3        This opposition brief highlights the dizzying array of claims that would be presented by

4    Plaintiffs. DRAM makes its way from the Defendants to end users through a wide array of

5    resellers from module makers to computer makers to distributors to retailers and, at each of these

6    stages, to governmental purchasers. The proposed class members purchased under widely divergent

7    and varying methods. The prices of these various products did not move in concert. And the

8    proposed class period encompasses nearly five years, including long periods when prices were not

9    affected.

10        Compounding all of these problems, only a tiny fraction of the purchases can be documented

11    at this point – up to ten years after the fact. The California Court of Appeal in *B.W.I. Custom Kitchen*

12    *v. Owens-Illinois* permitted certification of an indirect purchaser class over an objection of

13    unmanageability only because the class consisted of businesses who would have records of their

14    purchases. 191 Cal. App. 3d 1341, 1354 (Cal. Ct. App. 1987). If this class even has records, they

15    have refused defendants' repeated requests to produce them – and, indeed, the putative class

16    representative for New Mexico affirmatively destroyed what records they had, after this litigation

17    started.

18                                **IV.    CONCLUSION**

19        Defendants request that this Court deny plaintiffs' motion for class certification or, in the

20    alternative, certify only a narrowly tailored class of California governmental entities who indirectly

21    purchased DRAM modules during the class period.

22

23

24

25

26

27

28

DATED:  February 20, 2008          GIBSON, DUNN & CRUTCHER LLP
                                   JOEL S. SANDERS
                                   G. CHARLES NIERLICH
                                   JOSHUA D. HESS
                                   REBECCA JUSTICE LAZARUS


                                   By:/s/  G. Charles Nierlich
                                   _____
                                            G. Charles Nierlich

                                   Attorneys for Defendants
                                   MICRON TECHNOLOGY, INC. AND MICRON
                                   SEMICONDUCTOR PRODUCTS, INC.

DATED:  February 20, 2008          O'MELVENY & MYERS LLP
                                   KENNETH R. O'ROURKE
                                   STEVEN H. BERGMAN


                                   By: /s/  Kenneth R. O'Rourke
                                   _____
                                            Kenneth R. O'Rourke

                                   Attorneys for Defendants
                                   HYNIX SEMICONDUCTOR, INC. AND HYNIX
                                   SEMICONDUCTOR AMERICA, INC.


DATED:  February 20, 2008          KAYE SCHOLER LLP
                                   JULIAN BREW
                                   ATON ARBISSER
                                   JOSHUA STAMBAUGH


                                   By: /s/  Julian Brew
                                   _____
                                            Julian Brew

                                   Attorneys for Defendants
                                   INFINEON TECHNOLOGIES NORTH AMERICA
                                   CORP. AND INFINEON TECHNOLOGIES AG


DATED:  February 20, 2008          THELEN REID BROWN RAYSMAN &
                                   STEINER LLP
                                   ROBERT B. PRINGLE
                                   PAUL R. GRIFFIN
                                   JONATHAN SWARTZ

Gibson, Dunn & Crutcher LLP

Defendants' Opposition to Plaintiffs' Motion for Certification of California and New Mexico Governmental Entity Classes;
Case No. C-06-04333-PJH

1

By: /s/ Robert B. Pringle
                            Robert B. Pringle

2

Attorneys for Defendant
NEC ELECTRONICS AMERICA, INC.

3

4

5    DATED: February 20, 2008          ORRICK HARRINGTON & SUTCLIFFE LLP
                                       ROBERT E. FREITAS
6                                      HOWARD ULLMAN

7

8                                      By: /s/ Howard M. Ullman
                                            Howard M. Ullman
9

Attorneys for Defendant
10                                     NANYA TECHNOLOGY CORPORATION USA AND
                                       NANYA TECHNOLOGY CORPORATION
11

12

13
     DATED: February 20, 2008          HELLER EHRMAN LLP
14                                     STEPHEN V. BOMSE
                                       DAVID C. BROWNSTEIN
15                                     SCOTT E. MORGAN

16

17
                                       By: /s/ Stephen V. Bomse
18                                          Stephen V. Bomse

19                                     Attorneys for Defendant
                                       MOSEL VITELIC INC. AND MOSEL VITELIC
20                                     CORPORATION

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

DATED: February 20, 2008

SIMPSON THACHER & BARTLETT LLP
JAMES G. KREISSMAN
HARRISON J. FRAHN
GABRIEL N. RUBIN


By: /s/ Harrison J. Frahn
       Harrison J. Frahn

Attorneys for Defendants
ELPIDA MEMORY (USA) INC. AND
ELPIDA MEMORY, INC.

## ATTESTATION OF FILING

Pursuant to General Order No. 45, Section X(B) regarding signatures, I, G. Charles Nierlich, hereby attest that concurrence in the filing of Defendants' Opposition to Plaintiffs' Motion for Certification of California and New Mexico Governmental Entity Classes has been obtained from Defendants Infineon Technologies AG, Infineon Technologies North America Corporation, Hynix Semiconductor Inc., Hynix Semiconductor America Inc., Mosel Vitelic Corporation, Mosel Vitelic Inc., Nanya Technology Corporation, Nanya Technology Corporation USA, Elpida Memory, Inc., Elpida Memory (USA) Inc., and NEC Electronics America, Inc. that have provided conformed signatures above.

/s/ G. Charles Nierlich
     G. Charles Nierlich

100388165_6 (Revised Draft DRAM AG Class Cert Opposition).DOC

Gibson, Dunn &
Crutcher LLP

24

Defendants' Opposition to Plaintiffs' Motion for Certification of California and New Mexico Governmental Entity Classes;
Case No. C-06-04333-PJH