**United States District Court**
For the Northern District of California

1
2
3                          UNITED STATES DISTRICT COURT
4                          NORTHERN DISTRICT OF CALIFORNIA
5
6
7    STATE OF CALIFORNIA, et al.,
8              Plaintiffs,                    No. C 06-4333 PJH
9         v.                                  **ORDER GRANTING IN PART AND
                                              DENYING IN PART DEFENDANTS'**
10   INFINEON TECHNOLOGIES AG,                **MOTION TO DISMISS**
     et al.,
11
               Defendants.
12   _____/
13         Defendants' motion to dismiss plaintiffs' complaint came on for hearing before this

14   court on February 27, 2008.  Plaintiffs, numerous individual states acting through their

15   Attorneys General, and certain named government entities (collectively "plaintiffs" or

16   "plaintiff States"), appeared through their respective counsel, Lizabeth Leeds (FL), Ronald

17   Ockey (UT), Emilio E. Varanini (CA), John Tennis (MD), Victor Domen (TN), and Sondra

18   McLemore (MS).  Defendants appeared through their counsel, Steven Bergman, Tim

19   Martin, Joel S. Sanders, Joshua Hess, David C. Brownstein, Jonathan Swartz, and

20   Catherine Lui.  Having read all the papers submitted and carefully considered the relevant

21   legal authority, the court hereby GRANTS defendants' motion to dismiss in part and

22   DENIES the motion to dismiss in part, for the reasons stated at the hearing, and as follows.

23                                     **BACKGROUND**

24         This action is related to the larger In re DRAM litigation currently pending before this

25   court.  Plaintiff States generally allege a horizontal price-fixing conspiracy in the U.S.

26   market for dynamic random access memory ("DRAM"), carried out by numerous

27   manufacturer defendants.

28         Plaintiff States filed their original complaint on July 14, 2006, and a first amended

United States District Court

For the Northern District of California

1  complaint on September 8, 2006.  The first amended complaint alleged three causes of

2  action:  (1) violation of the Sherman Act § 1; (2) violation of California's Cartwright Act; and

3  (3) violations of various state antitrust and consumer protection laws.  See generally First

4  Amended Complaint ("FAC").  Each cause of action, however, contained various sub-

5  claims, and sub-groupings of plaintiffs.  Generally, however, the claims were asserted by

6  and on behalf of 40 individual states and state government entities, and in various

7  alternative capacities – e.g., proprietary actions, class actions, and/or parens patriae

8  actions alleged by the states' Attorneys General on behalf of varying states' political

9  subdivisions, state agencies, and/or natural persons residing in those states.  See, e.g.,

10  FAC at ¶¶ 4, 12, 114-15.  The first amended complaint also stated claims by both direct

11  and indirect purchasers.

12      On February 7, 2007, defendants moved to dismiss the second and third causes of

13  action, alleging Cartwright Act violations and violations of state antitrust and consumer

14  protection laws, respectively.  Defendants sought dismissal of the former on grounds that

15  standing to sue is generally lacking for non-California persons and entities.  Defendants

16  sought dismissal of the latter based on myriad procedural and substantive grounds.  The

17  court granted defendants' motion in part, and denied it in part, on August 31, 2007.  See

18  generally Order Granting in Part and Denying in Part Defendants' Motion to Dismiss

19  ("August 31, 2007 Order").  With respect to the Cartwright Act claim, the court dismissed all

20  claims on behalf of non-California Attorneys General seeking relief on behalf of non-

21  California residents and government entities.  With respect to plaintiffs' third claim for relief,

22  the court dismissed some claims and denied dismissal as to others, based on various

23  procedural and substantive grounds.  The court permitted amendment as to some of these

24  claims.

25      On September 28, 2007, plaintiff States duly filed their second amended complaint.

26  They subsequently sought leave, however, to file a third amended complaint, which

27  defendants did not oppose.  The court accordingly granted the request and the third

28

United States District Court

For the Northern District of California

1    amended complaint was filed on November 7, 2007.  See generally Third Amended

2    Complaint ("TAC").

3         Defendants once again seek dismissal of certain claims alleged in the TAC.  This

4    time around, they limit their arguments to plaintiff States' third claim for relief, and target

5    claims brought pursuant to six different plaintiff States' antitrust and consumer protection

6    laws.  Defendants also move to strike certain portions of plaintiffs' requests for relief under

7    various state laws.

**DISCUSSION**

8

9    A.   Legal Standards

10        1.   Motion to Dismiss

11        In evaluating a motion to dismiss, all allegations of material fact are taken as true

12   and construed in the light most favorable to the nonmoving party.  See, e.g., Burgert v.

13   Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)(citations omitted).

14   In order to survive a dismissal motion, however, a plaintiff must allege facts that are

15   enough to raise his/her right to relief "above the speculative level."  See Bell Atlantic Corp.

16   v. Twombly, --- U.S. ---, 127 S. Ct. 1955, 1964-65 (2007).   While the complaint "does not

17   need detailed factual allegations," it is nonetheless "a plaintiff's obligation to provide the

18   'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions,

19   and a formulaic recitation of the elements of a cause of action will not do."  Id.  In short, a

20   plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," not

21   just conceivable.  Twombly, 127 S. Ct. at 1974.

22        2.   Motion to Strike

23        A court may strike any "insufficient defense or any redundant, immaterial,

24   impertinent or scandalous matter."  Fed. R. Civ. Proc. 12(f).  A motion to strike may be

25   granted where plaintiff has made an improper demand or prayer for relief as a matter of

26   law.  See, e.g., Bureerong v. Uvawas, 922 F. Supp. 1450, 1479 n.34 (C.D. Cal. 1996).

27   Notwithstanding, motions to strike are regarded with disfavor because of the limited

28

3

United States District Court

For the Northern District of California

1   importance of pleadings in federal practice.  See, e.g., Colaprico v. Sun Microsystems, 758

2   F. Supp. 1335, 1339 (N.D. Cal. 1996).

3   B.      Defendants' Motion to Dismiss

4          Defendants' motion to dismiss demands resolution of the following issues: (1)

5   whether the Illinois Brick doctrine bars Louisiana's and Utah's state antitrust and consumer

6   protection claims; (2) whether Tennessee and New Mexico's parens patriae claims for

7   damages on behalf of natural persons are barred; and (3) whether plaintiffs' claims

8   pursuant to the state antitrust statutes of Maryland and Mississippi are barred for failure to

9   properly allege the requisite intrastate conduct.

10          1.      Dismissal of Louisiana and Utah Claims under Illinois Brick

11          Raising a now familiar issue, defendants assert that plaintiff States Louisiana and

12  Utah have alleged claims under their consumer protection and antitrust statutes,

13  respectively, that are barred to the extent they seek damages on behalf of indirect

14  purchasers.  This results, say defendants, from the fact that both states follow Illinois Brick

15  in explicitly prohibiting indirect purchaser claims.  See, e.g., Illinois Brick Co. v. Illinois, 431

16  U.S. 720 (1977).

17          a.      Louisiana

18          Defendants target plaintiff State Louisiana's claim on behalf of indirect purchasers

19  brought under the state's consumer protection statute, the Louisiana Unfair Trade Practices

20  and Consumer Protection Act ("UTPCPA").  See TAC, ¶¶ 264-65.  Defendants argue that

21  the vast majority of Louisiana's state courts have ruled that any action brought under the

22  UTPCPA applies only to direct consumers or to business competitors of the defendant –

23  which precludes any action here on behalf of indirect purchasers.[1]  Plaintiffs oppose this

24  ———————————

25          [1]      The court previously granted defendants' motion to dismiss plaintiffs' indirect
    purchaser claim under Louisiana's Monopolies Act.  See August 31, 2007 Order at 30-32.
26  Significantly, in moving for dismissal of that claim, defendants did not appear to dispute that
    indirect purchasers do, in fact, have standing under the UTPCPA.  Accordingly, and based on
27  the parties' arguments, the court's August 31 Order specifically adopted the premise that
    indirect purchasers have standing under the UTPCPA, and ultimately held that it was not
28  inconsistent "to hold that the [Monopolies Act] does not allow for indirect purchaser standing,

                                                        4

United States District Court

For the Northern District of California

1    argument on grounds that the UTPCPA expressly defines trade or commerce to include

2    trade or commerce that "directly or indirectly" affects the people of the state, and has been

3    construed broadly enough to include state agencies and indirect purchasers.

4         Beginning, as always, with the statutory language, the UTPCPA states that "[u]nfair

5    methods of competition and unfair or deceptive acts or practices in the conduct of any trade

6    or commerce are hereby declared unlawful." See La. Rev. Stat. Ann. § 51:1405.  The

7    statute further defines "trade or commerce" as "any trade or commerce directly or indirectly

8    affecting the people of the state."  Id. at § 51:1402(9).  Under its plain language, therefore,

9    the UTPCPA covers unlawful conduct with respect to trade or commerce that affects

10   Louisiana residents either directly or indirectly.  This supports plaintiffs' argument that

11   indirect purchaser claims are covered.

12        By contrast, defendants' reliance on Louisiana case law interpreting the UTPCPA as

13   covering actions brought by "direct consumers or business competitors" – to the exclusion

14   of indirect purchasers – is ultimately unavailing.  See, e.g., Vermillion Hosp., Inc. v. Patout,

15   906 So. 2d 688, 692 (La. App. 2005); Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv.

16   Corp., 292 F.3d 471, 480 (5th Cir. 2002).  At first blush, these cases do seem to restrict

17   interpretation of the UTPCPA to direct purchaser claims.  However, the cases are

18   interpreting the personal right of action provision of the UTPCPA – which allows "any

19   person who suffers any ascertainable loss of money or movable property" to bring an action

20   for money damages.  See La. Rev. Stat. Ann. § 51:1409.  This is distinguishable from the

21   Attorney General enforcement provision that is at play here.  See id. at § 51:1407.  Second,

22   and more importantly, it is not actually clear whether the reference to "direct consumers or

23   business competitors" can be read to support a direct purchaser requirement.  While true

24   enough that the language of some cases contains this precise phrase, other cases omit the

25   word "direct," and state only that the UTPCPA's private right of action applies to simply

26   ――――――――――――――――――

27   even if the [UTPCPA] does."  See id. at 32:15-17 (noting that Louisiana's consumer protection
     statute "expressly defines trade or commerce covered under the statute to include indirect
28   purchasers").

United States District Court

For the Northern District of California

1  "consumers or business competitors."  <u>See, e.g., Vermilion</u>, 906 So.2d at 692 ("Louisiana

2  courts, both state and federal, have uniformly held the personal right of action granted

3  under [UTPCPA] applies only to direct consumers or to business competitors"); <u>Tubos de</u>

4  <u>Acero de Mexico</u>, 292 F.3d at 480; <u>cf. Monroe Med. Clinic, Inc. v. Hosp. Corp. of Am.</u>, 522

5  So. 2d 1362, 1365 (La. App. 1988)(language of UTPCPA "has been held to confer the

6  private right of action on both consumers and business competitors"); <u>Gil v. Metal Serv.</u>

7  <u>Corp.</u>, 412 So. 2d 706, 707 (La. App. 1982)("this statute has been construed to give

8  protection only to consumers and business competitors").  Accordingly, the only consistent

9  rule to be garnered from these cases is that actions under the UTPCPA must be brought,

10  at a minimum, by consumers or business competitors.  Indeed, even <u>Vermillion</u> itself – the

11  case most heavily relied on by defendants – may be viewed as suggesting that indirect

12  purchaser standing is available under the UTPCPA.  <u>See, e.g., Vermillion</u>, 906 So.2d at

13  692 ("to satisfy the standing requirement of [UTPCPA]," plaintiff must furthermore "establish

14  it engages in business that competes directly *or indirectly* with the defendants as a

15  business competitor")(emphasis added).

16       On balance, defendants have failed to persuade the court that, contrary to the clear

17  definition provided by the UTPCPA, indirect purchaser claims cannot be brought under the

18  statute by Louisiana's Attorney General.  Therefore, as the court stated on the record at the

19  hearing on this matter, defendants' motion to dismiss indirect purchaser claims asserted by

20  plaintiff State Louisiana under the UTPCPA is DENIED.

21            b.     Utah

22       Defendants also target plaintiff State Utah's claim on behalf of indirect purchasers,

23  brought pursuant to the Utah Antitrust Act ("UAA").  <u>See</u> TAC, ¶¶ 362-63.  Specifically,

24  defendants note that the Utah legislature only recently – on May 1, 2006 – amended its

25  antitrust statute to explicitly repeal <u>Illinois Brick</u>, and the amendment does not apply

26  retroactively.  Since the conduct here is alleged to have taken place between 1998 and

27  2002, defendants contend that the statute does not actually authorize any indirect

28

United States District Court

For the Northern District of California

1 purchaser claims.  Plaintiffs respond that the amendment issue is essentially irrelevant,

2 since indirect purchasers have always had standing to sue under the UAA.  Plaintiffs also

3 assert that the UAA's harmonization provision requires the court to follow other states that

4 have allowed indirect purchasers to bring suit under comparable antitrust statutes, and that

5 doing otherwise would violate Utah state and constitutional law.  Finally, plaintiffs contend

6 that, even if the court is persuaded by defendants' assertions that the 2006 amendment is

7 controlling on the question of indirect purchaser standing, the amendment should be

8 applied retroactively to cover plaintiffs' claims.

9       Defendants have the better argument here.  First, neither party disputes that the

10 UAA was amended in May 2006 to expressly state that actions may be brought under the

11 UAA by the Utah Attorney General on behalf of natural persons or government entities,

12 regardless whether stated on behalf of direct or indirect purchasers.  See Utah Code Ann. §

13 76-10-918 ("Actions may be brought under this section regardless of whether the plaintiff

14 dealt directly or indirectly with the defendant").  Far from proving irrelevant, the obvious

15 implication of this Illinois Brick repealer amendment is that, prior to its passage, indirect

16 purchaser standing was *not* available under the UAA.  The legislative history recited by

17 defendants in their brief provides further support.  See, e.g., 2006 Ut. ALS 19 ("This bill

18 gives consumers and others the right to obtain judicial relief for violations of the Utah

19 Antitrust Act even though they have not dealt directly with the wrongdoer").

20       Second, while plaintiffs hold fast to the contrary assertion that indirect purchasers

21 have long had standing to bring suit under the UAA, they have not actually relied on any

22 authority that explicitly addresses the question of indirect purchaser standing under the

23 UAA.  Rather, plaintiffs have relied on authorities generally allowing "persons" – defined as

24 individuals and government entities – to bring suit under the UAA.  These authorities make

25 no distinction between direct and indirect purchasers; they simply assert that qualifying

26 persons and individuals may bring suit, without stating whether an indirect purchaser *is* a

27 qualifying person or individual.  To the extent that plaintiffs contend that the court should

28

United States District Court

For the Northern District of California

construe the term "persons" in the UAA's pre-2006 statutory version to *mean* indirect

purchasers, this is also misguided.  Plaintiffs rely on the UAA's harmonization provision,

which states that courts should be guided by interpretations given by other state courts to

comparable state antitrust statutes, as well as  numerous decisions of other state courts

purportedly "allowing indirect purchaser suits under analogous state antitrust statutes..".

See Opp. Br. at 19:5-7; id. at n. 26; see also Utah Code Ann. § 76-10-926 ("The legislature

intends that the courts, in construing this act, will be guided by interpretations given by the

federal courts to comparable federal antitrust statutes and by other state courts to

comparable state antitrust statutes.").  However, plaintiffs conveniently ignore the

harmonization provision's equally weighted statement that the court should also be guided

by *federal courts*' interpretation of comparable *federal* antitrust statutes, in interpreting the

UAA.  See id.  And as defendants point out, this means that the harmonization provision

could just as easily be construed consistently with judicial decisions regarding the Sherman

Act, which prohibits indirect purchaser standing.  Since plaintiffs propose no meaningful

way of determining which courts' interpretation of "person" should govern – either in favor

or against indirect purchaser standing – the argument is less than convincing.

Moreover, even plaintiffs concede that there is only one pre-2006 Utah case that

directly considered indirect purchasers standing under the UAA – and concluded that

indirect purchasers did *not* have standing under the UAA.  See, e.g., State of Utah v. Daicel

Chem. Indus., Ltd., Civil No. 020910931 (3rd Dist. Utah 2004)(unpublished)(denying

indirect purchaser standing under UAA) .  While plaintiffs correctly note that an unpublished

state district court decision has no precedential value under Utah law, and the court should

therefore not rely on the case exclusively, Daicel does support the observation that the

2006 amendment to the UAA changed existing law with respect to indirect purchasers, and

clarified that indirect purchaser standing was affirmatively being granted.  Logically, then,

the court concludes that indirect purchaser standing was not available prior to 2006.

In view of the fact that the 2006 amendment affirmatively altered the legal landscape

8

United States District Court

For the Northern District of California

1   with respect to indirect purchaser standing, the only real dispute is whether the amendment

2   applies retroactively to conduct alleged to have occurred before 2006.  Preliminarily, both

3   parties agree that the 2006 amendment applies retroactively if the statute expressly calls

4   for it, or if the statute can be classified as "procedural."  See, e.g., Brown & Root Indus.

5   Service v. Industrial Com'n of Utah, 947 P.2d 671, 675 (Utah 1997)("The general rule is

6   that statutes are not applied retroactively unless retroactive application is expressly

7   provided for by the legislature;" however, "[a]mendments that are purely procedural may be

8   given retrospective effect").  Both parties also agree that the 2006 amendment in question

9   does not expressly provide for retroactive applicability.  Thus, the only question is whether

10  the amendment should be classified as procedural, or substantive.

11       On balance, the court concludes that the 2006 amendment is substantive, not

12  procedural.  As stated by the Utah Supreme Court in Brown & Root Indus. Service, the

13  procedural exception to non-retroactivity is a narrow one, and "only procedural changes

14  'which do not enlarge, eliminate, or destroy vested or contractual rights' may be applied

15  retroactively."  See id.  A substantive change, by contrast, may not be applied retroactively

16  and is defined as "the positive law which creates, defines and regulates the rights and

17  duties of the parties and which may give rise to a cause of action."  Id.  Here, the

18  amendment at issue served to enlarge the rights of parties under the UAA, and created an

19  entire cause of action for indirect purchasers.  This is a substantive change.

20       In sum, and based on the above, the court finds that indirect purchaser status is

21  lacking under the UAA, since the conduct alleged in the third amended complaint pre-dates

22  the 2006 amendment to the UAA that allows indirect purchaser claims to go forward.  The

23  court therefore GRANTS defendants' motion to dismiss plaintiffs' claim for damages on

24  behalf of indirect purchasers under the UAA.  The dismissal is with prejudice.

25       2.       Parens Patriae Authority for New Mexico and Tennessee AGs

26       Defendants next move to dismiss New Mexico's and Tennessee's parens patriae

27  claims, on grounds that neither of these plaintiff States empowers their Attorneys General

28

9

United States District Court

For the Northern District of California

to assert parens patriae claims for damages on behalf of natural persons.  Defendants note that the court's August 31 Order already considered whether New Mexico and Tennessee granted their Attorneys General the right to assert parens patriae claims for damages under the same or similar statutes, and answered this question in the negative.  Accordingly, defendants contend that for the same reasons as those set forth in the August 31 Order, plaintiffs' parens patriae claims for damages under New Mexico and Tennessee law continue to falter.

    a.  New Mexico

  Defendants seek dismissal of New Mexico's parens patriae claim for damages brought under the state's consumer protection act – the New Mexico Unfair Trade Practices Act ("NMUPA").  Defendants point out that, in the August 31, 2007 order, the court dismissed plaintiff State New Mexico's parens patriae damages claim under the state's antitrust act, but the court was silent with respect to the corresponding parens patriae claim brought under the consumer protection statute.[2]  Plaintiffs, for their part, assert that the consumer protection statute's reach is distinct from that of the state antitrust statute's, in that it expressly permits the Attorney General to bring suit on behalf of all victims of defendants' unlawful conspiracy, and to seek restitution on their behalf.

  The NMUPA allows the Attorney General to "bring an action in the name of the state alleging violations of the Unfair Practices Act" and to seek "temporary or permanent injunctive relief and restitution," as well as civil penalties.  See N.M. Stat. Ann. §§ 57-12-8(A-B), 57-12-11.  Separately, the provision covering private remedies under the NMUPA allows "[a]ny person who suffers any loss of money or property" under the act to sue for

---

  [2]  Defendants note that they previously sought dismissal of New Mexico's parens patriae claim under the state's consumer protection statute, in addition to the parens patriae claim asserted under the state antitrust statute.  Upon review of the parties' earlier dismissal papers, the court concedes this to be the case.   However, the court's failure to rule on the issue in its order has no bearing on the merits of the issue.  For this reason, the court rejects plaintiffs' argument that the court's silence with respect to the consumer protection statute is analogous to a holding that parens patriae authority to seek damages under the consumer protection statute exists.

**United States District Court**

For the Northern District of California

1  "actual damages."  See N.M. Stat. Ann. §§ 57-12-10(B).  A "person" is defined as "natural

2  persons, corporations, trusts, partnerships, associations, cooperative associations, clubs,

3  companies, firms, joint ventures or syndicates."  See id. at § 57-12-2.  In sum, then, the

4  plain language of the NMUPA states that the Attorney General can act "in the name of the

5  state" to seek equitable relief and civil penalties only – not "actual damages;" damages

6  suits are limited to suits filed by qualifying "persons" only – none of which include the

7  Attorney General.

8       Nor have plaintiffs pointed to any other source that grants such authority.  Plaintiffs'

9  only claim is that the Attorney General can sue for equitable relief on behalf of natural

10  persons – a contention with which defendants do not appear to take issue.  And to the

11  extent that plaintiffs rely on State of N..M. v. Scott & Fetzer Co., 1981 WL 2167 (D. N.M.

12  1981) for support, Scott & Fetzer merely recognizes that parens authority is vested in the

13  New Mexico Attorney General.  It contains no express provision for parens patriae authority

14  for damages actions.  See August 31, 2007 Order at 65.

15       In sum, defendants are correct that parens patriae authority to sue for damages is

16  lacking under the NMUPA.  The court therefore GRANTS defendants' motion to dismiss the

17  NMUPA claim, to the extent that plaintiffs seek monetary damages on behalf of natural

18  persons.  The dismissal is with prejudice.

19            b.    Tennessee

20       Defendants also seek dismissal of plaintiff State Tennessee's claim under the

21  Tennessee Unfair Trade Practices Act ("TPPA"), to the extent this claim seeks monetary

22  damages in a parens patriae capacity on behalf of consumers.  Defendants point out that

23  the August 31 Order dismissed this very same claim, finding that "there is simply no

24  statutory authority relied on by plaintiffs that expressly grants the Attorney General the right

25  to assert a parens patriae claim for damages on behalf of natural persons or consumers."

26  See August 31 Order at 69:21-26.  Nonetheless, defendants note that plaintiffs have in

27  essence pled the exact same claim once again.  Plaintiffs' revised allegations have been

28

United States District Court

For the Northern District of California

duly amended to no longer state that Tennessee is seeking damages "on behalf of itself and on behalf of consumers," instead stating that Tennessee is seeking damages "on behalf of the State, its state agencies, and its political subdivisions." See First Amended Complaint, ¶ 184, cf. TAC, ¶ 360. However, the amendment is a semantic change only, note defendants, for the third amended complaint then goes on to state that even "on behalf of the State," the Attorney General is seeking relief in the form of "damages sustained by the State, local government *and consumers*, including full consideration and/or sums paid....". See TAC, ¶ 360 (emphasis added).

Defendants are correct. The August 31 Order affirmatively dismissed the Attorney General's parens patriae claim under the TPPA on behalf of consumers, to the extent the parens patriae claim sought money damages. See August 31 Order at 68-69. The third amended complaint now before the court, even though it contains slightly different wording, essentially re-states the very same claim. By seeking damages sustained "by consumers," the Attorney General is basically seeking relief for damages on behalf of consumers. See TAC, ¶ 360. In other words, the difference in language changes nothing.

As such, the court need not revisit here the same arguments made previously. The court simply adopts the same reasoning as that set forth in its August 31 Order, and GRANTS defendants' motion to dismiss plaintiff State Tennessee's claim under the TPPA, to the extent it seeks monetary damages in a parens patriae capacity on behalf of consumers. The dismissal is with prejudice.

    3.    Intrastate Conduct Allegations Under Maryland and Mississippi Statutes

Defendants argue that plaintiffs have failed to cure the deficiencies contained in their prior claims under Maryland and Mississippi's antitrust statutes. Specifically, defendants contend that they have still not properly alleged the requisite intrastate conduct, as instructed by the court in its August 31 Order.

        a.    Maryland

As defendants note, the court's August 31 Order dismissed plaintiffs' claim pursuant

United States District Court

For the Northern District of California

1    to the Maryland Antitrust Act ("MATA"), because plaintiffs had failed to adequately allege

2    intrastate activity.  See Order at 44-47.  Specifically, the court found that MATA reaches

3    economic activity that is intrastate in nature and that, while the conduct need not be

4    *exclusively* intrastate in nature, plaintiffs must at least allege that economic activity within

5    the State of Maryland is implicated as a result of defendants' purportedly unlawful conduct.

6    See id.  As such, plaintiffs' prior bare allegation that defendants were engaged "in the

7    business of marketing and selling DRAM throughout the United States," was insufficient

8    under MATA.

9         Plaintiffs have now amended their allegations.  Among other things, the third

10   amended complaint now alleges:  that during the relevant period, DRAM was in the regular

11   continuous and substantial flow of intrastate commerce in Maryland; that State of Maryland

12   government entities, including the University System of Maryland, purchased in excess of

13   $100 million worth of DRAM-containing computers; that defendant Micron, through its

14   subsidiary Crucial Technologies, sold DRAM directly to the University of Maryland and

15   other Maryland government entities; and that the State, its agencies and subdivisions,

16   residents and businesses, paid artificially high prices for DRAM-containing computers and

17   equipment than they otherwise would have in a competitive market.  See TAC, ¶¶ 271-74.

18        These allegations are sufficient to allege the requisite intrastate activity required by

19   MATA.  They allege, at a minimum, that economic activity within the State of Maryland was

20   affected, as contemplated by the court's prior order.  See August 31 Order at 46.

21        Defendants' arguments to the contrary are essentially the same as those raised and

22   dealt with in the court's August 31 Order.  They are premised on their reading of MATA,

23   which defines trade and commerce as "all economic activity within the State," and Maryland

24   Staffing Serv., Inc. v. Manpower, Inc.  See 936 F. Supp. 1494, 1504 (E.D. Wis. 1996).  As

25   the court made clear in its order, however, allegations of conduct or economic activity

26   within the state satisfy MATA, even if interstate conduct is also alleged.  Accordingly, even

27   though defendants are correct that much of the conduct alleged by plaintiffs *is* interstate in

28

1  nature – e.g., defendants' shipment of DRAM products to Maryland originated out of state –

2  this does not impact the court's ultimate finding that intrastate activity has been alleged, in

3  view of plaintiffs' allegations that *some* unlawful conduct took place in Maryland, via the

4  direct sale of artificially high DRAM to Maryland entities, who bought DRAM at those

5  artificially high prices. <u>See</u> TAC, ¶¶ 271-74.

6       In sum, the court is unpersuaded by defendants' arguments. Accordingly,

7  defendants' motion to dismiss on this ground is DENIED.

8            b.    Mississippi

9       Defendants make a similar argument with respect to plaintiffs' claim pursuant to

10  Mississippi's Antitrust Act. They argue that the Mississippi state courts have consistently

11  interpreted the state's antitrust statute to apply to illegal conduct that occurred, at least in

12  part, wholly within the state, and that plaintiffs' amended allegations still fail to allege any

13  conduct by defendants that took place wholly inside Mississippi. For similar reasons to

14  those expressed above in connection with Maryland's statute, the court also rejects

15  defendants' arguments here.

16       Preliminarily, the August 31 Order covered the same competing case law and

17  arguments as those advanced by the parties here. Specifically, the court considered the

18  Mississippi Supreme Court's opinion in <u>Standard Oil Co. v. State ex rel. Attorney General</u>,

19  as well as subsequent case law from the federal courts. <u>See</u> Order at 47-49; <u>see also</u>

20  <u>Standard Oil</u>, 65 So. 468 (Miss. 1914); <u>Moore ex rel. State of Mississippi v. Abbott Labs</u>.,

21  900 F. Supp. 26 (S.D. Miss. 1995). The court in its August 31 Order noted that, while

22  <u>Standard Oil</u> may be read to suggest that allegations of at least some intrastate activity

23  must be made, this opinion has not been followed by any subsequent state supreme court

24  opinion, and appears to have been based on a largely discredited dual sovereignty view of

25  the Commerce Clause. <u>See</u> August 31 Order at 48. Nonetheless, the court ultimately

26  found that the state antitrust act should be read to require allegations of at least some

27  activity or conduct occurring in intrastate commerce or trade. The court further found that

28

United States District Court

For the Northern District of California

1    <u>Moore v. Abbottt Labs</u>. supports this conclusion.  <u>See</u> 900 F. Supp. at 28.  Finally, the court

2    found that plaintiffs' first amended complaint nowhere alleged any activity of any kind that

3    took place in Mississippi and was related to defendants' conduct.

4         Here, plaintiffs' third amended complaint alleges:  that defendants' unlawful conduct

5    resulted in "wholly intrastate conduct as DRAM and DRAM-containing products were

6    imported into Mississippi and sold within the state;" that defendant Micron sold DRAM

7    directly to the State of Mississippi and its government entities, in transactions which

8    partially took place "wholly within the state of Mississippi;" that defendants shipped DRAM

9    directly into Mississippi; and that Mississippi paid artificially high prices for the DRAM in

10   Mississippi.  <u>See</u> TAC, ¶¶ 288-94.

11        As with plaintiffs' allegations under MATA, the court finds these allegations sufficient

12   to allege that some activity or conduct occurred in intrastate commerce or trade within

13   Mississippi.  Moreover, the court finds defendants' contrary argument that the defendants

14   are not sufficiently implicated in the alleged intrastate activity, unpersuasive.  Defendants

15   are alleged to have sold at least some DRAM directly to plaintiff State Mississippi.  That

16   direct sale – which was allegedly made at artificially high prices as a result of defendants'

17   unlawful conduct – reasonably viewed, constitutes conduct that occurred within the state of

18   Mississippi, even if the contours of the exact sale are not set forth.  Furthermore, this

19   reasonable inference is all that is required at this stage of litigation.

20        Thus, the court concludes that plaintiffs' amended allegations with respect to

21   Mississippi's antitrust statute adequately plead the requisite level of intrastate conduct.

22   Defendants' motion to dismiss on the above ground is accordingly DENIED.

23   C.    Defendants' Motion to Strike

24        Defendants move to strike certain portions of plaintiffs' requests for relief.  First,

25   defendants seek to strike the prayer for treble damages brought by plaintiff State

26

27

28

15

United States District Court

For the Northern District of California

Louisiana,[3] to the extent treble damages are alleged by that state in connection with parens

patriae actions on behalf of natural persons.  Second, defendants seek to strike plaintiff

Mississippi's request for damages pursuant to that state's consumer protection statute.

Third, defendants seek to strike all relief requested by plaintiff State Tennessee, with the

exception of plaintiff State Tennessee's limited request to deny defendants the opportunity

to do business within Tennessee.

### 1.   Treble Damages Sought by Louisiana and New Mexico

Defendants contend that plaintiff State Louisiana cannot recover either actual or

treble damages on behalf of itself, government entities, or citizens, for its claims brought

pursuant to Louisiana's consumer protection statute ("UTPCPA").  Specifically, defendants

assert that the statute only permits the Attorney General to recover for injunctive relief,

restitution, and civil penalties.  Moreover, they note that the statute also prohibits any

attempt to recover any actual damages in actions brought "in a representative capacity," as

is the case here.  Finally, defendants claim that even if the Attorney General could recover

treble damages, the UTPCPA only allows recovery for treble damages where the Attorney

General has first placed defendants on notice of the intent to seek treble damages.

Defendants are correct.  First, the UTPCPA on its face provides that in actions

brought by the Attorney General, only injunctive relief, restitution, and civil penalties are

recoverable.  See La. Rev. Stat. Ann. §§ 51:1407 (allowing Attorney General to seek

injunctive relief and civil penalties); 1408(A)(court may issue such additional orders as

necessary, including restitution); see also Louisiana ex rel. Guste v. Gen. Motors Corp.,

370 So. 2d 477, 486 (la. 1979)(affirming appellate court's holding that damages are not

---

[3]      Defendants originally moved to strike claims for treble damages asserted by plaintiff States Nevada, Vermont, and New Mexico. Plaintiffs' opposition brief makes clear that they are not asserting any claims for treble damages on behalf of natural persons under the laws of Nevada and Vermont. Accordingly, defendants have withdrawn their motion to strike with respect to these treble damages claims.  And with respect to New Mexico's treble damages claim, it is unnecessary for the court to reach this argument, in view of its dismissal of plaintiffs' parens patriae claim for monetary damages on behalf of natural persons.  See discussion, supra; see also Defs. Mot. to Dismiss at 11, fn 7.

1    allowed under UTPCPA, although restitution awards are).  Its plain language therefore

2    expressly omits actual or treble damages sought by the Attorney General.  Plaintiffs *do*

3    correctly note that actual and treble damages may be sought under the UTPCPA.

4    However, the provision granting this relief expressly states that it may only be granted

5    where a plaintiff brings "an action individually but *not* in a representative capacity."  See id.

6    at § 1409(A)(emphasis added).

7        Accordingly, the UTPCPA expressly limits the Louisiana Attorney General to actions

8    seeking only equitable relief, and not actual or treble damages.  As for plaintiffs' invocation

9    of other statutory provisions – §§ 51:1404, 51:1414, and 51:1408 – for support of their

10   position that actual or treble damages may be sought as an "additional order" or pursuant

11   to other duties belonging to the Attorney General, these provisions provide no such

12   support.

13       Defendants are also correct that, even if plaintiffs could properly seek treble

14   damages pursuant to section 1409(A) of the UTPCPA, that same provision requires as a

15   pre-requisite to treble damages, that the Attorney General provide notice of such.  See La.

16   Rev. Stat. Ann. § 51:1409(A)("If the court finds the unfair or deceptive method, act, or

17   practice was knowingly used, after being put on notice by the attorney general, the court

18   shall award three times the actual damages sustained."); see also B & G Crane Service,

19   L.L.C. v. Duvic, 935 So.2d 164, 170 ("since the plaintiff has been unable to prove the

20   issuance of the requisite notice to the defendants mandated by statute, the trial court did

21   not err in granting the defendants' motion to strike the claim for treble damages").  Plaintiff,

22   however, has made no argument, nor offered any exhibits, demonstrating such notice.

23   While they assert that the notice requirement is limited to private actions, they have also

24   failed to provide any actual support for this exact proposition.  As such, plaintiffs' request

25   for treble damages under the UTPCPA is also improper on notice grounds.

26       For the foregoing reasons, the court hereby GRANTS defendants' motion to strike

27   Louisiana's claim for actual or treble damages.

28

United States District Court

For the Northern District of California

2.   <u>Actual Damages Sought by Mississippi</u>

Defendants also seek to strike Mississippi's prayer for damages and restitution pursuant to the Mississippi Consumer Protection Act ("MCPA").  Both parties argue their contrary positions based on their reading of the MCPA.

Turning to the language of the MCPA, it prohibits all "[u]nfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce," and further defines specifically enumerated conduct that is also prohibited.  <u>See</u> Miss. Code Ann. § 75-24-5(1-2).  That same provision also provides that any "[a]ction ... brought under Section 75-24-5(1)" be brought "only under the provisions of Section 75-24-9." <u>See id</u>. at § 75-24-5(1).  Turning to section 75-24-9, this provision expressly allows the Attorney General to seek injunctive relief, which relief may also be accompanied by civil penalties. <u>See</u> Miss. Code Ann. § 75-24-9 (Attorney General "may bring an action in the name of the state against [violators] to restrain by temporary or permanent injunction the use of [any prohibited] method, act or practice."); <u>see also</u> Miss. Cod Ann. § 75-24-19(1)(a, b).  The statute *also* provides, in a subsequent provision, that the court "may make such additional orders or judgments, including restitution, as may be necessary to restore to any person in interest any monies or property, real or personal, which may have been acquired by means of any practice prohibited by this chapter." <u>See id</u>. at § 75-24-11.

Thus, the plain reading of this statutory language is that the Attorney General, in seeking to redress violations under the MCPA, is limited to injunctive relief, although the Attorney General may also seek additional orders or judgments, including restitution. Damages, by contrast, are not provided for in any of these provisions.  To the extent that the MCPA allows for them, they are permissible pursuant to the private right of action provision of the MCPA, which permits "any person who purchases or leases goods or services primarily for personal, family or household purposes" and suffers a loss by reason of any unlawful conduct under the MCPA, to recover "damages." <u>See</u> Miss. Code Ann. § 75-24-15.  The Attorney General, however, is not such a person. <u>See id</u>. at § 75-24-3

1   ("person" defined as "natural persons, corporations, trusts, partnerships, incorporated and

2   unincorporated associations, and any other legal entity").  This conclusion is unaffected by

3   plaintiffs' post-hearing submission of additional case law purportedly establishing the

4   proposition that plaintiffs press upon the court here, as neither of the cases provided

5   expressly hold that monetary damages may be pursued by the Attorney General pursuant

6   to the MCPA.  See Declaration of Sondra S. McLemore ISO Plaintiff's Motion to File

7   Statement of Unpublished Decision, Exs. A-B.

8       Accordingly, the court finds that plaintiffs' request for damages is improper, but that

9   any request for restitution is not.  The court therefore GRANTS defendants' motion to strike

10  plaintiffs' request for monetary damages under the MCPA, insofar as plaintiffs seek

11  monetary damages.

12      3.     Relief Requested by Plaintiff State Tennessee

13      Finally, defendants seek to strike all relief requested by plaintiff State Tennessee

14  pursuant to its antitrust statue ("TTPA"), with the exception of its limited request to deny

15  defendants the opportunity to do business within Tennessee.  Tennessee has requested

16  relief in the form of damages, civil penalties, all available equitable remedies, including

17  injunctive relief and the denial of defendants' ability to do business in the State, and

18  reimbursement of reasonable attorneys' fees, expert fees, and costs.  See TAC, ¶ 360.

19  Defendants, however, contend that the TTPA has two provisions that govern suits brought

20  by the state, neither of which allows for any of this requested relief (with the exception of

21  the request to deny defendants the right to do business in the state).

22      Plaintiffs, by contrast, contend that disgorgement and other equitable relief is

23  available to the state under the Tennessee consumer protection statute ("TCPA"), and that

24  the court should construe these remedies as covered under the TTPA as well.  As for

25  money damages, plaintiffs assert that, pursuant to certain legal principles embraced by

26  Supreme Court precedent, statutory money damages may generally be awarded, despite

27  statutory language limiting relief to injunctive relief.

28

United States District Court

For the Northern District of California

1    Defendants have the more persuasive argument.  As they point out, the TTPA only

2  provides for the institution of two types of actions by the Attorney General – a criminal suit

3  seeking criminal penalties, and an action for forfeiture of a Tennessee corporation's charter

4  or to prohibit foreign corporations from conducting business in the state.  See Tenn. Code

5  Ann. §§ 47-25-103, 47-25-104.  Neither of these enforcement provisions authorizes the

6  relief requested by the Attorney General here, with the exception of the request to prohibit

7  defendants from conducting business in Tennessee.  Furthermore, while there *is* a

8  separate private right of action provision under the TTPA that allows "any person" to bring

9  suit for "full consideration" of any ill-gotten sum under the act, neither the Attorney General

10  nor the state is defined as such a "person."  See Tenn. Code Ann. §§ 47-25-106 (private

11  right of action provision), 1-3-105(3)("person" defined to include "a corporation, firm,

12  company or association").  Accordingly, the plain reading of the TTPA is that plaintiff may

13  not seek the remedies requested here, with the exception of that already noted.

14    Moreover, plaintiffs  provide no affirmative authority for the proposition that the

15  TPPA should be construed consistently with the TTPA insofar as remedies are concerned.

16  Nor does this make inherent sense, for it stands to reason that the legislature, by providing

17  each statute with a different remedial scheme, meant those schemes to be different.  As

18  such, the fact that the TCPA may allow for equitable remedies broader than that which is

19  allowed under the TPPA, is not relevant to the analysis here.

20    Furthermore, plaintiffs' suggestion that the Supreme Court has previously held that

21  the court may authorize equitable relief, notwithstanding statutory requirements to the

22  contrary, is misguided.  The case relied on by plaintiffs for this proposition, Porter v. Warner

23  Holding Co., 328 U.S. 395 (1946), is wholly inapposite, since it dealt with the separate

24  equitable and damages provisions of a single statute – not the inherent equitable powers of

25  a court to override a statutory damages provision.  See id. at 403.

26    In conclusion, plaintiffs have provided no basis for supporting the request for relief

27  made pursuant to the TTPA.  To that end, the court hereby GRANTS defendants' motion to

28

strike plaintiffs' request for relief, with the exception of the request to deny defendants the

right to do business in the state.

D.      Conclusion

        For the foregoing reasons, and as stated on the record at the hearing on this matter,

the court hereby GRANTS defendants' motion to dismiss in part, and DENIES it in part, as

stated herein.  The court furthermore GRANTS defendants' motion to strike.

**IT IS SO ORDERED**.

Dated: April 15, 2008

_____
PHYLLIS J. HAMILTON
United States District Judge